# GUYER DECL EX. 1

**IRWIN COUNTY DETENTION CENTER**

**OPERATION, MANAGEMENT AND MAINTENANCE AGREEMENT**

**THIS OPERATION, MANAGEMENT AND MAINTENANCE AGREEMENT** is made and entered into as of the 2nd day of December, 2013, by and among the **COUNTY OF IRWIN, GEORGIA** (the "*County*"), a political subdivision of the State of Georgia, **LASALLE SOUTHEAST, LLC**, a Georgia limited liability company ("*Manager*"), and **CGL/LASALLE IRWIN PROPERTIES, LLC**, a Delaware limited liability company ("*Owner*").

## RECITALS

**WHEREAS**, County is a political subdivision of the State of Georgia governed by a duly elected Board of Commissioners;

**WHEREAS**, Owner is the owner of that certain approximately 1,200-bed detention facility known as the "Irwin County Detention Center" located at 132 Cotton Drive, Ocilla, Georgia 31774, including the Land and all improvements thereon and appurtenances thereto and all furniture, fixtures and equipment located thereon, and together with that certain contiguous parcel located at 126 Cotton Drive, Ocilla, Georgia 31774 containing a warehouse that services such facility (collectively, the "*Facility*");

**WHEREAS**, County is authorized by the State of Georgia to detain, house and /or control any detainees referred to the Facility, pursuant to a Prisoner Detention Agreement or Intergovernment Agreement ("*IGA Contract*") and Manager is hereby authorized by the County to detain, house and /or control any detainees referred to the Facility pursuant to this agreement;

**WHEREAS**, the law of the State of Georgia allows County to enter into contracts with private vendors to operate, manage and maintain the Facility; and

**WHEREAS**, County has requested Manager to enter into an Operation, Management and Maintenance Agreement to operate and manage and maintain the Facility;

**NOW, THEREFORE**, in consideration of mutual promises and covenant contained herein, and subject to the conditions hereinafter set forth, County, Owner, and Manager hereby agree as follows:

## DEFINITIONS

As used herein, the following terms shall have the meanings set forth below:

"*Agent*" initially means CGL Irwin Properties, LLC, a Delaware limited liability company, and thereafter any person or entity which shall be appointed by the Owner to serve as the Agent hereunder.

"*Code*" shall mean the Internal Revenue Code of 1986, as amended.

1

**EXHIBIT**

tabbies

2

_____

"*Corrections Contract*" shall mean each IGA Contract or other agreement, which Manager, on behalf of the County, may enter into with any local, state, or federal agency, as described in Section 3.01 of this Agreement, whereby Prisoners will be housed at the Facility, and specifically including that certain IGA Contract with the United States Marshall Service designated as Agreement Number 20-07-0058, as amended or modified.

"*County*" or "*Lessee*" shall mean the County of Irwin, Georgia, a political subdivision of the State of Georgia.

"*Facility Revenues*" shall mean for any period all gross payments or transfers to Manager, County and/or the Sheriff, from any sources whatsoever, arising from the operation of the Facility for any period, including, without limitation, payments received for the incarceration, detention, or housing of inmates in the Facility, gross revenues generated from the provision of goods and services to inmates and other persons at the Facility, and all other moneys or fees generated by the operation of the Facility for the period, determined on an accrual basis in accordance with generally accepted accounting principles, and all appropriations made by the Lessee, at its option, for the Facility.

"*Fiscal Year*" means that period beginning on January 1 of each year and ending on December 31 of that year or such other fiscal year as shall be designated as its annual accounting period.

"*GDC*" shall mean the Georgia Department of Corrections of the State of Georgia.

"*Irwin County Detainee*" shall mean a Prisoner arrested pursuant to warrants issued by Irwin County and incarcerated at the Facility.

"*Lease Agreement*" or "*Lease*" shall mean that certain Lease Agreement, dated as of date hereof, between the Owner, as lessor, and the County, as lessee, as the same may be amended from time to time.

"*LLC Operating Agreement*" shall mean that certain Limited Liability Company Agreement by and among Owner, Manager and CGL Irwin Properties, LLC, dated as of December 2, 2013.

"*Management Fee*" shall mean the monthly fee due and owing to Manager, more particularly described in Section 4.05 hereof.

"*Manager*" shall initially mean LaSalle Southeast, LLC, a Georgia limited liability company, and thereafter any person or entity which shall, with the prior written consent of Owner and Lessor, be substituted as the Manager under this Agreement.

"*Operating Expenses*" means, in the aggregate, for any period, all current expenses of the ownership, operation and maintenance of the Facility for such period, as determined on an accrual basis, including but not limited to fees and expenses of the Manager under this Agreement, but excluding however, (w) all Debt Service Costs, (x) all Funding Costs, and (y) depreciation, amortization and other non-cash expenses with respect to such period.

"*Prisoner*" shall mean any person incarcerated at the Facility or who is traveling to or from the Facility as a part of such incarceration.

"***Prisoner Day***" shall mean a twenty-four (24) hour time period as described in <u>Section 4.09</u> of this Agreement.

"***Prisoner Transfer Sources***" shall mean those sources of Prisoners described in <u>Section 3.01</u> of this Agreement.

"***Rental Payment***" shall mean any payment due from the Lessee to the Owner under <u>Section 5.1</u> of the Lease Agreement.

"***Revenue Fund***" means the fund created in <u>Section 4.02</u> of this Agreement and administered by the Agent.

"***Sheriff***" shall mean County Sheriff of Irwin County, Georgia.

## ARTICLE I
## REPRESENTATIONS, COVENANTS AND WARRANTIES

**SECTION 1.01** <u>**Representations, Covenants and Warranties of County**</u>.

County hereby represents, warrants and covenants to the Owner and Manager as follows:

(a)  County is a duly formed and validly existing political subdivision of the State of Georgia, and is governed by the laws of the State of Georgia.

(b)  The laws of the State of Georgia authorize County to establish, acquire, construct, operate and maintain the Facility, to enter into this Agreement and the transactions contemplated hereby and to carry out its obligations under this Agreement.

(c)  The officers of County executing this Agreement have been duly authorized to execute and deliver this Agreement under the terms and provisions of a resolution of County's governing body or by other appropriate official notion,

(d)  County has complied with all open meeting laws, all public contracting laws and all other suite and federal laws applicable to this Agreement.

(e)  The County will not amend or modify the terms of this Agreement or enter into a new management contract with Manager or any other entity providing for the management of the Facility without first having received written permission from the Owner.

(f)  County shall diligently process and enter into all lawful Corrections Contract(s) with such Prisoner Transfer Sources as may be necessary to facilitate the receipt and incarceration of eligible high-risk and non-high-risk Prisoners in the Facility.  However, County specifically agrees that it will not enter into any Corrections Contract with any Prisoner Transfer Source for the housing of Prisoners at the Facility until after County has received written Consent from Manager to each of the terms of such Corrections Contract. Upon presentation of all such Corrections Contract(s) by Manager and Owner, County shall execute and enter into any such Corrections Contract(s).

3

(g)    No member of the governing body of County is now or will be an employee or officer or director of Manager.

(h)    County is authorized to detain, house, and/or control any Prisoner referred to the Facility. County hereby authorizes Manager, pursuant to this Agreement, to detain, house, and/or control any Prisoner referred to the Facility.

(i)    The laws of the State of Georgia allow County to enter into contracts with private vendors such as Manager to operate, manage and maintain the Facility.

## SECTION 1.02  Representations, Covenants and Warranties of Manager

Manager hereby represents, covenants and warrants to County and the Owner as follows:

(a)    Manager is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Texas; is duly authorized and qualified to transact business and hold property in the State of Georgia and in every jurisdiction in which the nature of its activities requires it to be so qualified; has full and complete power to enter into this Agreement and to enter into and carry out the transactions contemplated hereby, and to carry out its obligations under this Agreement; and has duly authorized the execution and delivery of this Agreement.

(b)    Neither the execution and delivery of this Agreement nor the fulfillment of or compliance with the terms and conditions hereof nor the consummation of the transactions contemplated hereby conflicts with or results in a breach of the terms, conditions or provisions of any restriction of any agreement or instrument to which Manager is now a party or by which Manager or its property is bound, or constitutes a default under any of the foregoing, or results in the creation or imposition of any lien, charge or encumbrance whatsoever upon any of the property or assets of Manager.

(c)    No officer or member of the Board of Directors or comparable governing body of Manager is now or will be an employee or member of the governing body of County.

(d)    Any modification or amendment of this Agreement by Manager must receive the prior written approval from the Owner.

(e)    Manager does not have, nor will it enter, any other contract or have obligations, duties or responsibilities to any other person or entity that would impair its full participation and undivided responsibility hereunder to the County. Subject in the above, Manager may pursue opportunities that do not conflict with Manager's obligations to Owner or the County under this Agreement.

(f)    For a period of three years after the expiration or earlier termination of Manager's responsibilities hereunder, neither Manager nor any affiliate of Manager shall within a radius of one hundred miles from the Facility, alone or in association with others, manage or operate a Prisoner detention facility which competes with the services provided in or by the Facility; or alone or in association with others, induce or attempt to induce, directly or indirectly, any current or former supplier of detainees to the Facility to cease supplying or doing business with the

4

Facility. In the event of a breach or a threatened breach by Manager, or its principal, of the provisions hereof, Owner shall be entitled to an injunction restraining Manager or its principal from violating the provisions of this paragraph. Nothing in this subparagraph shall be construed as preventing Owner from pursuing any other remedies available to it for such breach, or threatened breach.

**ARTICLE II**
**DUTIES OF MANAGER**

**SECTION 2.01  Management. Operation and Maintenance of Facility.**

(a)    Manager shall manage, operate and maintain the Facility in a good and workmanlike manner.  In connection with the management, operation and maintenance of the Facility, Manager shall provide the following:

(1)    all necessary furniture, fixtures and equipment not currently provided at the Facility including but not limited to computers, fax and copy equipment, radios, televisions, uniforms and linens and basic office furniture and administrative phone systems, which are necessary or prudent for operation and management of the Facility and the housing of Prisoners;

(2)    intake facilities and Prisoner accounting which shall encompass booking, record-keeping, billing, system of controls, identification systems and records, computerized communication interface with law enforcement agencies, and such statistical records as may be required by law or are generally accepted Prisoner-locator practices;

(3)    adequate staffing in compliance with applicable federal, state and local requirements necessary to maintain the requisite level of security within the Facility and sufficient to monitor the activities of the Prisoners confined within the Facility, including attendants to control ingress and egress at the Facility;

(4)    Food and beverage services;

(5)    Clothing and uniforms;

(6)    Procurement and purchasing;

(7)    Engineering and maintenance (subject to Section 2.05(b));

(8)    Recreational, vocational, counseling, education and exercise programs, and other program requirements required by law or Prisoner housing contracts;

(9)    Bookkeeping and accounting;

5

(10)    Medical care as set forth in greater detail in Article V;

(11)    Training of all personnel to be employed at the Facility;

(12)    All routine, non-structural, non-capital, ordinary repair, upkeep and maintenance required for the Facility (subject to Section 2.05(b));

(13)    Facility commissary;

(14)    All telephone, facilities;

(15)    All vending machines;

(16)    All other Operating Expenses;

(17)    All utilities and refuse services consumed at the Facility;

(18)    All other services necessary or proper for the efficient and safe operation of the Facility, and secure custody, care and housing of Prisoners, in compliance with this Agreement and all applicable federal, state and local laws, and

(19)    All requirements of Owner pursuant to the Lease Agreement, as such requirements may be determined by Owner from time to time.

(b)    All extraordinary, unusual, structural and capital repairs and improvements to the Facility, the cost of which shall be paid solely from the Facility Revenues, shall be the sole responsibility of County but only as required by Article VI of the Lease Agreement.  If an irreconcilable dispute arises between County, Owner and/or Manager regarding the responsibility to pay any costs or expenses for repair to or maintenance of the Facility, such dispute shall be resolved solely by arbitration pursuant to the rules and procedures of the American Arbitration Association.

(c)    It shall be the sole obligation of Manager to pay any and all Facility Ad Valorem Taxes and all other taxes directly related to or assessed against any equipment or property, owned, installed or placed in or upon the Facility by Manager pursuant to Section 2.01(d) hereof, accruing after the date of execution of this Agreement.

(d)    Pursuant to Manager's obligations under this Section 2.01 to manage, operate and maintain the Facility, and in connection with all of Manager's obligations pursuant to this Agreement, during the term of this Agreement, Manager shall have the sole and exclusive right, in its sole discretion and at its own expense, to install items of movable machinery and equipment in or upon the Facility, which items shall be identified by tags or other symbols affixed thereto as property of Manager not included in the Facility.  All such items so identified shall remain the sole property of Manager, in which Owner and County shall have no interest, and all such items may be modified or removed by Manager at any time, provided that Manager shall repair and restore any and all damage to the Facility resulting from the installation, modification or removal of any such items. Nothing in this Agreement or in the Lease

6

Agreement shall prevent Manager from purchasing or leasing items to be installed pursuant to this Section 2.01(d) under a conditional sale or lease with option to purchase contract, or subject to a vendor's lien or security Agreement as security for the unpaid portion of the purchase price thereof, provided that no such lien or security interest shall attach to any part of the Facility.

(e)     County hereby assigns to Manager for and during the term of this Agreement, all of its interest in all warranties and guarantees, express or implied, issued on or applicable to the Facility. County hereby authorizes Manager to obtain the customary services furnished in connection with such warranties and guarantees.

(f)     No improvements, alterations or repair work costing greater than ▓▓▓▓▓▓ shall be made by Manager without Owner's prior written authorization, however, in case of an emergency which requires immediate repairs or alterations or if Manager in good faith determines such expenditures are necessary to protect the Facility from damage, or to prevent injury to persons or loss of life or to maintain services, such limitations shall not apply.

## SECTION 2.02  Independent Contractor.

Manager is and shall be an independent contractor, and subject to the terms of this Agreement and all applicable provisions of Georgia law with respect to police powers and powers detention, shall have the sole right to supervise, manage, operate, control, and direct the performance of the details incident to its duties and obligations under this Agreement.  Nothing contained in this Agreement shall be deemed or construed to create a partnership or joint venture, or create the relationships of an employer/employee or principal/agent, or to otherwise create any liability for County or the Owner, whatsoever with respect to the indebtedness and obligations of Manager or any other party. Manager shall be solely responsible for (and neither County nor Owner shall not have any obligation with respect to) the interviewing, hiring, training, assignment, control, management, compensation, promotion, or termination of Manager's employees, which constitute the Facility's administration and staff.  However, such activities of Manager shall be subject to monitoring by County and Owner, and Manager shall furnish reports on such matters to County and Owner when and as so requested.

## SECTION 2.03  Acceptance of Prisoners.

Subject to the provisions of Sections 3.03 and 3.04 hereof, Manager shall accept and properly incarcerate all eligible Prisoners assigned by County to the Facility for whom there is space available at the Facility within the statutory and regulatory limits of the Facility. High risk Prisoners are defined in this Agreement to mean and be the same as high-risk inmates as defined by the applicable Prisoner transfer source.

## SECTION 2.04  Certification of Facility.

Manager shall obtain, and thereafter maintain, such certification(s), if any, necessary to incarcerate at the Facility high-risk and non-high-risk Prisoners of whatever source, whether local, state, federal, and whether from inside or outside the State of Georgia.

**SECTION 2.05  Subcontractors; Maintenance.**

(a)     County acknowledges and agrees that Manager may subcontract any portion of the operation, maintenance or management services to be performed hereunder, but shall not thereby be relieved of any of its obligations set forth herein.  Manager shall bind each subcontractor to the terms hereof as far as applicable to such subcontractor's work, and shall require that each subcontractor perform its work in conformance with the terms and conditions of this Agreement.  In the event Manager enters into subcontracts as provided for in this paragraph, then any such subcontractor shall be subject to  the provisions of insurance pursuant to Section 9.01 hereof and indemnification pursuant to Section 10.01 hereof.  The County and the Owner must be notified in writing of any proposed sub-contracting arrangement.

(b)     Manager may subcontract with an affiliate of the Owner (as designated by the Owner from time to time, "*Maintenance Sub*") to assume all or any part of Manager's responsibility for upkeep, maintenance and repair of the Facility required by this Agreement. Maintenance Sub's costs of performing such upkeep, maintenance and repair will not be considered an Operating Expense of the Facility unless Owner directs otherwise.  Such upkeep, maintenance and repair shall include, but shall not be limited to, performing (or causing to be performed) (i) cleaning, plumbing, janitorial, carpentry, decorating, roof, parking areas, HVAC and electrical and other mechanical systems and such other normal maintenance and repair work as may be necessary; (ii) all necessary preventative maintenance; (iii) and supplying supplies, materials and services in connection with such services; provided, however, that such upkeep, maintenance and repair shall not include upkeep, maintenance or repair of any vehicles, equipment or machinery, which shall remain the responsibility of Manager.

**SECTION 2.06  Non-Assumption of Existing Agreements.**

Manager shall have the sole responsibility and authority to enter into agreements with vendors, subcontractors or others, to provide such services and products at the Facility as Manager shall, in its sole discretion, deem reasonable or proper. It is specifically agreed, that any agreement between County and any vendor, subcontractor or service provider relating to any detention or other facility operated by County, or over which County has any operational or supervisory control or responsibility, shall not be binding upon Manager in any way.

**ARTICLE III**
**DUTIES OF COUNTY**

**SECTION 3.01  Prisoner Transfer Sources.**

County hereby covenants and agrees to transfer to the Facility all eligible Prisoners under the jurisdiction of County from those Prisoner Transfer Sources set forth below. County further covenants and assures Manager that all Agreements between County and the below-listed Prisoner Transfer Sources shall contain provisions allowing for such transfer of Prisoners to the Facility. Possible Prisoner Transfer Sources include, but are not limited to, the following:

(a)     County Sheriff of Irwin County;

(b)     County Sheriff of any other Georgia County or county sheriffs of any other state;

8

(c)     The GDC or any other state department of corrections pursuant to an agreement between County and the GDC or the County and any other state department of corrections;

(d)     Subject to Manager's approval, and subject to the limitations set forth herein including, but not limited to, any other state (including the District of Columbia) or political subdivision thereof which may lawfully transfer Prisoners to County and with whom County has contracted to accept Prisoners; and

(e)     Subject to the limitations set forth herein including, but not limited to, Section 1.01(f),  and the limitations set forth in the Lease Agreement, the United States Government or any department or agency thereof, pursuant to the agreement between such governmental entity and County; and

(f)     Any other source of State or Federal inmates.

## SECTION 3.02  Designation and Transfer of Prisoners.

(a)     Prior to transfer of any Prisoner to the Facility, the designation of such Prisoner as a "high-risk" or "non-high-risk" Prisoner shall be agreed upon by Manager and the applicable Prisoner Transfer Source, and such designation shall be made in accordance with the classification plan approved by County for the Facility, as well as applicable laws, rules and regulations as well as the procedures and standards promulgated by any Prisoner Transfer Source identified in Section 3.01 hereof with whom County contracts, all of which are incorporated herein by reference.

(b)     To the extent not provided by a Prisoner Transfer Source, Manager shall be solely responsible for all transportation, security, and other requirements of whatever nature related to the transfer of Prisoners to and from the Facility.  Manager shall be responsible for the transportation, security and other requirements of whatever nature related to the Prisoners while they are incarcerated in the Facility, the costs of which shall be considered Operating Expenses under this Agreement.

## SECTION 3.03  Reclassification and Reassignment of Prisoners.

If at any time Manager finds that the capacity of the Facility, the demonstrated behavior of any Prisoner or group of Prisoners, or the mix of Prisoners incarcerated in the Facility requires or warrants reassignment or reclassification of any Prisoners, Manager will notify County and the applicable Prison Transfer Source, and make a reasonable recommendation concerning reassignment and/or reclassification of any Prisoners.  Manager will notify County and the applicable Prisoner Transfer Source, and make a reasonable recommendation concerning reassignment and/or reclassification of said Prisoner or Prisoners. This determination shall be made by Manager in accordance with all applicable laws, rules, regulations and procedures. County, to the extent necessary, shall assist and cooperate with Manager in the reclassification and transfer of said Prisoner or Prisoners to the appropriate responsible party.  However, Manager shall be timely responsible for such transportation.

**SECTION 3.04  Communication and Cooperation**

County shall cooperate with Manager in all matters of law enforcement, security and communications.  County shall assist Manager, at the request of Manager, in the training, at Manager's expense, of Manager's employees hired to operate the Facility. County shall assist and cooperate with Manager for purposes of obtaining such licensing as may be required by any applicable State of federal law for the aforementioned Manager employees.  County shall assist and cooperate with Manager in providing information requested by Manager in the screening of candidates for employment to the extent such information may be lawfully obtained or released under federal or State law.  County may verify that all Manager employees or Facility employees undertaking detention officer duties at the Facility are certified, as may be required, by law.  Manager must deliver to the County and the Owner all appropriate certifications of the employees undertaking detention officer duties at the Facility, and Manager must ensure that all employees undertaking detention officer' duties at the Facility have the appropriate and required certifications.

**SECTION 3.05  Maximum Utilization of Facility.**

County and Manager agree it shall be to their mutual benefit and interest for the Facility to be fully utilized by maintaining the maximum Prisoner population within statutory and regulatory limits.  County understands and agrees that the actions to be performed by Manager to seek maximum utilization of the Facility are not intended by Manager and should not be construed by County as any type of warranty or guarantee by Manager that its best efforts to promote the maximum utilization of the Facility will result in any specified level of utilization of the Facility or in any specified amount of Prisoner population being incarcerated the Facility.

**SECTION 3.06  Prisoner Escape.**

In the event a Prisoner confined in the Facility escapes from the Facility, Manager will immediately notify appropriate public law enforcement officers, including Sheriff, of such Prisoner's escape.

**ARTICLE IV**
**BUDGET; DISBURSEMENT OF FACILITY REVENUES;**
**MANAGER'S COMPENSATION; COUNTY ADMINISTRATION FEES**

**SECTION 4.01  Annual Budget.**

On or before December 1 of each year for the succeeding calendar year, Manager shall prepare and submit to Owner for its approval a proposed budget for the operation of the Facility in such form and detail as Owner shall request, setting out anticipated revenues, expenses and capital expenditures for the year (the "*Annual Budget*").   Manager shall use all reasonable efforts to operate the Facility in accordance with the provisions of the Annual Budget as submitted to Owner.  In the event Owner shall not approve all or any portion of the Annual Budget, Manager shall promptly revise same in accordance with Owner's request and shall resubmit the proposed budget or applicable portions thereof to Owner for its approval.  In no event shall any Annual Budget be effective prior to receipt of the written approval of Owner. Owner hereby acknowledges and agrees that it has approved the form and substance of the

budget for the Facility from the date of this Agreement through December 31, 2013 as the initial Annual Budget.

**SECTION 4.02  Deposit of Facility Revenues; Funding of Operating Account.**

(a)      The Owner shall direct the Agent to open and, thereafter, maintain a separate bank account or accounts (collectively, the "***Revenue Fund***") in one or more banks exclusively for the deposit by County and Manager of all Facility Revenues received by County or Manager in connection with the operation of the Facility under this Agreement.  County and Manager shall deposit in the Revenue Fund all Facility Revenues collected or otherwise received in connection with the operation of the Facility, as required by Section 5.2 of the Lease.  Facility Revenues shall not be commingled with any other funds of County or Manager.

(b)      Manager shall open and, thereafter, maintain a separate bank account or accounts (collectively, the "***Operating Account***") in one or more banks and having as signatories at least three (3) officers and/or employees of Manager (whose names shall be provided to the Agent), each of whom will have signing authority with respect to the Operating Account in accordance with the check signing procedures and approvals agreed to by the Agent from time to time, exclusively for the payment of Operating Expenses, Management Fees, Rental Payments, Administrative Fees and other obligations of County and Manager as described herein.  Manager shall maintain such control over accounting and financial transactions as is required to protect the Facility Revenues and funds in the Operating Account from theft, error or fraudulent activity.

(c)      On a monthly basis, or more frequently as the Agent and Manager may from time to time agree, the Agent shall disburse funds, solely out of Facility Revenues held in the Revenue Fund, to the Operating Account in an amount determined by the Annual Budget then in effect to fund Operating Expenses, Management Fees, Rental Payments, Administrative Fees and other obligations of County and Manager.  The Agent may disburse additional funds from the Revenue Fund to the Operating Account as it may consider necessary or appropriate from time to time in consultation with Manager.  Manager shall use the funds deposited in the Operating Account strictly in accordance with the terms of this Agreement.

(d)      The Agent shall be responsible for disbursing funds from the Revenue Fund to fund Debt Service Expenses and all other Funding Costs.

**SECTION 4.03  Adherence to Approved Annual Budget.**

Manager shall use all efforts reasonable and necessary to ensure that the actual costs of maintaining and operating the Facility shall not exceed the Annual Budget pertaining thereto, whether by line item or cumulative expense.  If, at any time, the Annual Budget shall not have been approved by Owner, then unless otherwise directed in writing by Owner, Manager may only make (a) those expenditures that would have been permitted under the most recent Annual Budget approved by Owner, and (b) Necessary Expenditures.  As used herein, "***Necessary Expenditures***" shall mean expenditures not otherwise provided for or not adequately provided for in the Annual Budget, and reasonably deemed by Manager to be immediately necessary to (i) cure any Emergency Situation, and (ii) comply with all applicable rules, regulations and requirements of applicable law or of Prisoner Transfer Sources now or hereafter in force which

shall be applicable to all or any part of the Facility, and the operation and management thereof (including the making of capital expenditures required for such compliance) if the failure to comply would (A) expose any party to the risk of criminal prosecution, (B) entitle any enforcing entity to take any action which could materially and adversely affect the business, operation or value of the Facility, or (C) invalidate or impair any of the insurance maintained by Manager, County or the Owner with respect to the Facility. As used herein, "*Emergency Situation*" means any situation where, in Manager's reasonable business judgment, after consultation with County and Owner, if practicable, Manager concludes that the expenditure of funds (whether to make an emergency repair or replacement or otherwise) is immediately necessary (i) to avoid imminent threat to public safety or material damage to all or any material portion of the Facility, or (ii) to protect the safety of any person from imminent harm, or (iii) to avoid the imminent unforeseen and unforeseeable suspension of any necessary material service in or to the Facility, the failure of which service would affect public safety or have a material adverse effect on the Facility.

**SECTION 4.04  Payment of Operating Expenses; Ad Valorem Taxes.**

(a)  Manager shall pay in a timely manner all Operating Expenses of the Facility from the Operating Account; provided, however, that: (i) all such expenses must have been included within the approved Annual Budget; and (ii) any expenses which are not included within the approved Annual Budget shall not be paid until receipt of the prior written approval of the Owner unless the same shall have arisen in an Emergency Situation. Manager shall continuously endeavor by its best efforts to inform the Owner of the condition and necessity of such expenditure if it was impracticable to consult with the Owner prior to the expenditure of funds. If Manager determines that there will not be sufficient funds in the Operating Account to cover the anticipated expenses of the Facility, Manager shall promptly notify the Agent of the amount of such additional funds required and the purpose(s) for which such funds shall be required, as well as an explanation for any material variance from the approved Annual Budget then in effect, and may request that the Agent promptly deposit into the Operating Account from the Revenue Fund an amount sufficient to pay such anticipated expenses.

(b)  Manager shall be responsible for the payment of all ad valorem taxes assessed against the Facility (including any personal property thereon) on and after the date hereof by the County or by the City of Ocilla, Georgia (collectively, "*Facility Ad Valorem Taxes*"), as an Operating Expense payable from Facility Revenues. The parties agree that notwithstanding any prior assessment or valuation, the Facility Ad Valorem Taxes due with respect to the Facility for the remainder of calendar year 2013 shall be the aggregate sum equal to ▮▮▮▮▮▮. Manager shall not be responsible for the payment of any Facility Ad Valorem Taxes, penalty or interest, assessed against the Facility prior to the date hereof. County hereby assigns to Manager any and all right which County, as Lessee, may have to contest the appraisal of the Facility for purposes of assessing Facility Ad Valorem Taxes.

**SECTION 4.05  Manager's Compensation.**

(a)  Manager shall be paid, from Facility Revenues available in the Revenue Fund, a Management Fee as provided in this Section 4.05 each month during the Initial Term or any renewal term of this Agreement. Commencing upon the Effective Date until the end of the Term hereof, Manager shall be entitled to an annual management fee from available Facility Revenues

in an amount equal to ██ percent (██%) of the Operating Expense Base for each Fiscal Year, as determined on an accrual basis (the "*Management Fee*").  The Management Fee shall be payable monthly in arrears in monthly installments which are estimated based upon the budgeted Operating Expense Base for the month as reflected in the approved Annual Budget.  On or before the 15th day of each month, Manager shall submit an invoice with such estimated amount and budgeted Operating Expense Base to the Agent.  A "true-up" adjustment of the Management Fee shall be made within ninety (90) days after the end of each calendar year to reflect the actual Operating Expense Base for the Fiscal Year reflected in the annual financial statements of the Facility.  As used in this Agreement, "*Operating Expense Base*" shall mean, for the Facility for any period, total Operating Expenses incurred or expended to operate and manage the Facility during the period in accordance with this Agreement and the approved Annual Budget in effect for such period, but excluding the following expenses:  (i) all Administration Fees paid or accrued for the period to the County or the Sheriff pursuant to Section 4.08 of this Agreement; (ii) all Facility Ad Valorem Taxes paid or accrued for the period with respect to the Facility; (iii) all capital expenditures and extraordinary expenses paid or accrued for the period; and (iv) all Debt Service Expenses and other Funding Costs paid or accrued for the period, all determined on an accrual basis in accordance with generally accepted accounting principles.

(b)     On or before the 15th day of each calendar month Manager shall prepare and send an invoice to the Agent for the Management Fees due Manager for the immediately preceding month or other appropriate billing period, together with supporting documentation showing the Operating Expenses and Operating Expense Base for such period, copies of which shall be provided to County.  The form of the invoice and supporting material shall be agreed upon by the Agent and Manager.

### SECTION 4.06  Limitation of County's Obligations.

It is specifically agreed that except for those funds made available by the Agent to the Operating Account for such purpose, County shall have no liability whatsoever for payment of the Management Fee due and owing to Manager, any Operating Expenses, or any other cost, fee or expense relating to the Facility.

### SECTION 4.07  LLC Operating Agreement.

The Owner and Manager have entered into the LLC Operating Agreement which provides, among other things, for the payment of Debt Service Expenses and other Funding Costs out of Facility Revenues.  County shall have no responsibilities or obligations under such Funding Agreement.  As used herein, "*Debt Service Expenses*" includes all principal, interest, fees and other expenses incurred or payable by the Owner to finance the purchase of the Facility, as the same may be modified, extended or refinanced by the Owner, and "*Funding Costs*" shall mean such other costs related to such financing other than Debt Service Expenses, including any equity or return on equity component, any profit share arrangements or other costs or allocations provided for in the Operating Agreement.

**SECTION 4.08  County Administration Fees; Closing Fee.**

(a)     The County shall be entitled to the following administration fees (collectively, the "*Administration Fees*") from Manager as Operating Expenses payable solely out of Facility Revenues:

A.     An annual fee in the amount of ▮▮▮▮ (the "*Annual Fee*"), payable in twelve (12) equal monthly installments, with the first installment payable on the date hereof (to be prorated for the partial month), and subsequent installments due on the first day of each month following during the term of this Agreement, as payment for services to be rendered pursuant to this Agreement by County and the Sheriff.

B.     Commencing with periods on or after January 1, 2014, a per diem fee (the "*Per Diem Fee*"), payable monthly in arrears within 45 days following the end of each calendar month, based on the number of Prisoners (other than No-Charge Detainees) housed at the Facility for each Prisoner Day, as follows:

- First 650 Prisoners (excluding No-Charge Detainees) housed at Facility – ▮▮▮▮ per Prisoner per Prisoner Day

- For between 651 to 999 Prisoners (excluding No-Charge Detainees) at Facility – ▮▮▮▮ per Prisoner per Prisoner Day for each Prisoner in excess of 650 but less than 1,000

- For 1,000 or more Prisoners at Facility  (excluding No-Charge Detainees) – ▮▮▮▮ per Prisoner per Prisoner Day for each Prisoner in excess of 1,000

(b)     During the Initial Term, the aggregate annual Administration Fees payable hereunder for any Fiscal Year shall be reduced, dollar for dollar, by the amount, if any, by which the Facility Ad Valorem Taxes for such Fiscal year exceed the corresponding amount shown as the Annual Cap in the following chart:

| Fiscal Year Ending December 31 | Annual Cap |
|---|---|
| 2014 | ▮▮▮ |
| 2015 | ▮▮▮ |
| 2016 | ▮▮▮ |
| 2017 | ▮▮▮ |
| 2018 | ▮▮▮ |

If the Administration Fees are reduced pursuant to this Section, the Manager shall deduct such excess amount from each installment of the Annual Fee and amounts due in payment of the Per Diem Fees until the entire amount of such excess has been offset and accounted for, which offset may continue into future Fiscal Years until fully recovered.

(c)     The Owner shall pay County a one-time closing fee and expense reimbursement in an amount equal to ▇▇▇▇▇▇, payable on the date of this Agreement.

## SECTION 4.09  Calculation of Prisoner Days.

For the purposes of this Agreement, a "**_Prisoner Day_**" shall mean a twenty-four (24) hour time period beginning with twelve (12) o'clock midnight and ending twenty-four (24) hours later.  A Prisoner assigned to the Facility for any portion of a day shall be deemed to be included in that day's Prisoner population for purposes of calculating the amounts payable pursuant to this Agreement, or as provided by contracts County has entered into with any Prisoner Transfer Source as provided for in this Agreement.

## SECTION 4.10  County Detainees.

Manager shall furnish to County detention of up to thirty (30) Irwin County Detainees per Prisoner Day at no cost to County other than the cost for medical care of such detainees (the "**_No-Charge Detainees_**").  County shall fully reimburse Manager or its designee for all medical costs incurred by Manager for medical care provided to any and all Irwin County Detainees (including No-Charge Detainees).  For Irwin County Detainees in excess of thirty (30), County shall pay a per diem rate per Prisoner Day equal to the prevailing rate charged for federal Prisoners at the Facility.  As used herein, "**_Irwin County Detainees_**" means Prisoners arrested pursuant to warrants issued by Irwin County and incarcerated at the Facility.

## SECTION 4.11  Obligation of Specific Performance.

(a)     In the event a dispute arises between County, Manager or the Owner regarding this Agreement or any of the provisions hereof, County and Manager shall be required to continue performance of their respective obligations during the pendency of any such dispute. County shall continue to make all transfers to the Agent, payments to Manager, and any other actions required hereunder in a timely manner as set forth in this Agreement and the Lease Agreement.  Likewise, Manager shall continue to perform its obligations in accordance with the terms of this Agreement notwithstanding the existence of any dispute between the parties.  The County, Manager and Owner shall each have the right to compel specific performance by the other party of its respective contractual obligations and to institute any legal action necessary to compel such specific performance.  The obligation of either party to perform its respective obligations hereunder may only be terminated as provided for in Article VIII of this Agreement or applicable law.

(b)     To the extent specifically authorized by any Prisoner Transfer Source, Manager may make separate and independent agreements with any agency or organization for the education or training of Prisoners so long as such agency or organization has the legal right, capacity and authority to enter into a contract with Manager for the education or training of such Prisoners.  The reimbursement of costs or fees for these additional services shall be payable directly to Manager by the appropriate assignor of the Prisoners being educated or trained. County shall be provided by Manager, free of cost, copies of all such contracts or agreements. Said contracts shall be separate and independent of this Agreement and shall not constitute

15

obligations of any type on behalf of County; except insofar as County is the responsible assignor of Prisoners who are educated or trained pursuant to such contracts.

## SECTION 4.12  Reports to Owner; Meetings.

(a)      Manager shall prepare and deliver to Owner, within thirty (30) days after the close of each calendar month, unaudited financial statements covering the prior month and containing a balance sheet and statement of income and expenses in reasonable detail. Manager shall also provide any required assistance to the independent accountants for the Facility in the preparation of annual financial statements for the operation of the Facility.  Such financial statements shall be prepared in accordance with generally accepted accounting principles consistently applied and delivered to Manager and Owner within 120 days after the end of each calendar year.

(b)      Manager shall schedule periodic management meetings to be attended by representatives of Manager and the Owner no less frequently than quarterly and shall furnish to the Owner quarterly written progress reports concerning the operation of the Facility.  Such meetings shall at the request of the Owner be in person at the Facility or may be telephone, videoconference or other electronic means specified by the Owner from time to time.

## SECTION 4.13  Access to Books and Records; Audit.

Manager shall maintain at the Facility segregated from any records not related to the Facility, accurate, complete, and separate books and records for funds disbursed and received and for the operation of the Facility.  Such books and records shall be maintained for each calendar year on both a cash basis and accrual basis in accordance with generally accepted accounting principles, consistently applied.  At any time during normal business hours and upon reasonable advance notice to Manager, Owner and its accountants and authorized representatives shall have the right to examine, copy, inspect and audit said books and records.

## ARTICLE V
## FACILITY MEDICAL CARE

## SECTION 5.01  Basic Medical Care.

Manager shall provide the medical, psychiatric and dental services required by any Prisoner Transfer Source to be furnished to any Prisoner, Manager shall, to the extent permitted, seek from each Prisoner Transfer Source, reimbursement for its medical, psychiatric and dental expenditures.  Manager shall be entitled to any reimbursement for medical, psychiatric or dental costs from County, as County and Manager may agree in writing with regard to medical and dental care provided by Manager to any Irwin County Detainee.

## SECTION 5.02  Reimbursement of Medical and Dental Costs.

Manager specifically acknowledges its obligation to provide the medical, psychiatric, and dental services required in each contract with any Prisoner Transfer Service.  Manager shall bear the cost of all such medical, psychiatric, and dental care.  County agrees to assist Manager in requesting reimbursement for the costs associated with such medical/psychiatric/dental care from all Prisoner Transfer Sources.

16

Execution Copy

## ARTICLE VI
## COMPLIANCE WITH STANDARDS

### SECTION 6.01  Procedures Manual.

Manager shall prepare and adopt a procedures manual for the operation of the Facility so as to assure that the Facility is operated in compliance with all applicable laws, rules, procedures, regulations and court orders including those of any Prisoner Transfer Source.  Manager shall make such modifications and corrections in said procedures manual as are necessary to keep the Facility in compliance with such applicable laws, rules, procedures, regulations and court orders including those of any Prisoner Transfer Source, and the rules, procedures, policies and standards promulgated by the Georgia Peace Officer Standards and Training Council (P.O.S.T.). In the operation of the Facility, Manager shall comply in all material respects with such Procedures Manual.

### SECTION 6.02  Training of Employees.

Manager, with such assistance and cooperation as may be reasonably necessary from County and Sheriff as requested by Manager, shall ensure that all employees at the Facility are adequately trained to perform at the requisite levels and standards required by applicable law and the rules, procedures, policies and standards promulgated by the Georgia Peace Officer Standards and Training Council (P.O.S.T.).

## ARTICLE VII
## TERM OF AGREEMENT

### SECTION 7.01  Initial Term.

The term of this Agreement shall commence on the date hereof and shall terminate only pursuant to the terms of **Section 8.01** or as otherwise agreed by the parties.

## ARTICLE VIII
## TERMINATION

### SECTION 8.01  Termination by County, Owner or Manager.

(a)  Notwithstanding anything to the contrary contained in this Agreement, the Owner or the County (with Owner's prior consent) may terminate this Agreement (i) immediately upon written notice to Manager and the other party hereto, for "cause," as defined below, or (ii) upon thirty (30) days' prior written notice to Manager, upon the occurrence of any failure by Manager to observe or perform any of the material covenants and provisions of this Agreement, and such failure is not cured within thirty (30) days after written notice of such default is delivered to Manager (or, if such default is not susceptible of cure within thirty (30) days, within such longer period of time as may be reasonably required to cure such default, so long as Manager begins to cure such default within said thirty (30) day period and thereafter diligently prosecutes such cure to completion).  For purposes of this section, the term "**cause**" shall mean (a) the occurrence of any act of fraud, gross negligence or willful misconduct by Manager that results, or is likely to result, in material injury or loss to the County, the Owner or the Facility, or (b) Manager's failure

17

to operate, maintain or manage the Facility in compliance in all material respects with the terms of this Agreement and applicable laws, rules, procedures, regulations and any order of a court or regulatory body with jurisdiction over the Facility.

(b)     If at any time during the term of this Agreement (including without limitation during the Initial Term or any renewal term), Manager shall no longer hold any equity interest in Owner representing a Percentage Interest (as defined in the Owner's limited liability company agreement) greater than or equal to 25%, Owner shall have the right to terminate this Agreement in its sole discretion without any penalty or fee by giving Manager at least one hundred twenty (120) days prior written notice of termination.

(c)     In the event County or Owner properly terminates the Lease Agreement, this Agreement shall terminate at the same time County's termination of the Lease Agreement becomes effective.  County agrees however, to provide Manager as much notice as may be reasonably possible of County's intent to terminate the Lease Agreement.

(d)     If for any reason, the Facility becomes uninhabitable, unfit, or unusable as a detention facility, Manager may, at its option immediately terminate this Agreement upon providing written notice to County and Owner.

(e)     In the event County's right to occupy the Facility as a Lessee is terminated for any reason, this Agreement shall immediately terminate.

(f)     In the event this Agreement is terminated, pursuant to any provision hereof, Manager shall leave the Facility in good condition, reasonable wear and tear excepted.

## SECTION 8.02  Bankruptcy of Manager.

In the event of the filing of a petition in bankruptcy, by or against Manager or any principal of Manager owning 10% or more of Manager (the "*Principal*"), or if instituted against Manager or Principal, if consented to or acquiesced in by Manager or Principal, or if said petition in bankruptcy is not dismissed within sixty (60) calendar days after the filing of same, County and Owner shall have the right to terminate this Agreement with Manager upon the same terms and conditions set forth in Section 8.01 hereof.  If County or Owner terminates this Agreement due to Manager and/or Principal's bankruptcy, then Owner shall be entitled to immediately take over and assume the operation, maintenance and management of the Facility or immediately contract with a replacement contractor for such services for the Facility.

## SECTION 8.03  Termination by Manager for Insufficient Funds.

Manager may, at its option, terminate this Agreement (a) if funds are not made available in the Operating Account sufficient to pay Operating Expenses to the extent approved in the Annual Budget, and such failure to make funds available is not cured within thirty (30) days after the date notice of such failure is delivered to the Agent and Owner, or (b) as a result of non-payment of Management Fees or other compensation payable to Manager pursuant to the  terms of this Agreement, and such non-payment of fees is not cured within thirty (30) days after the date notice of such default is delivered to County and the Owner, or (c) as a result of any other material default hereunder by County, if such default is not cured within thirty (30) days after the

date notice of such default is delivered to County and the Owner (or, if such material default is not susceptible of cure within thirty (30) days, within such longer period of time as may be reasonably required to cure such default, so long as County begins to cure such default within said thirty (30) day period and thereafter diligently prosecutes such cure to completion). The payment of money by County under any provisions hereof is contingent upon the receipt of Facility Revenues for Prisoners assigned to the Facility, including the availability of additional funds appropriated by County (if any) to cover the provisions hereof. Neither County, nor its elected officials, officers, employees, agents, attorneys, or other individuals acting on behalf of County, make any representations or warranty as to whether any appropriation will, from time to time during the Initial Term or any extension hereof, be made by County to cover the provisions hereof. Likewise, neither County, nor its elected officials, officers, employees, agents, attorneys, or other individuals acting on behalf of County, make any representations or warranty as to the sufficiency or amount of Facility Revenues, if any, which County may be able to receive from potential Prisoner Transfer Sources pursuant to any Agreements for Prisoners to be transferred to the Facility.

**SECTION 8.04  Termination by Owner.**

Upon an Event of Default by County under the Lease Agreement, the Owner may, after any applicable cure periods specified in the Lease Agreement have expired, terminate this Agreement by providing notice to County and Manager in accordance with Section 12.12 hereof.

**SECTION 8.05  Operation After Notice of Termination.**

(a)  Notwithstanding the receipt of notice from County, the Owner or Manager terminating this Agreement, the parties agree to use their best efforts in the management and operation of the Facility and the performance of this Agreement until the effective date of the termination of this Agreement. However, notwithstanding any other provision of this Agreement, except as otherwise agreed with County and the Owner, upon any termination of this Agreement, Manager shall continue to manage and operate the Facility as provided in this Agreement until all Prisoners have been returned to the appropriate Prisoner Transfer Source or until the County has engaged a successor manager approved by the Owner who has taken over control of the operation and management of the Facility and custody of all Prisoners then housed at the Facility. Manager shall, for a period of sixty (60) days after the termination of this Agreement, and, provided the Owner compensates Manager in an amount to be mutually agreed upon by Owner and Manager, for such further period as may be necessary, make itself available to consult with and advise County and the Owner, or such other person or persons as may be designated by County and the Owner, regarding the operation and management of the Facility. The obligations of the parties set forth in this Section 8.05 shall survive the termination of this Agreement.

(b)  On the expiration or earlier termination of this Agreement as provided above, Manager shall:

(i)  Deliver to the Agent, or such other person designated by the Owner, (x) within ten (10) days after the effective date of termination, all books and records related to the operation of the Facility and other documents

19

(including, without limitation, Prisoner records, bills, invoices, warranties, bank statements, plans and specifications and inventories) relating to, the Facility to the extent the same is within Manager's possession or control and (y) on the next business day after the effective date of termination, all Facility Revenues in its possession;

(ii)      Within five (5) days after the effective date of termination, assign, transfer or convey to County, or such other person or entity designated by Owner, Manager's rights pursuant to any service contracts and operation and maintenance agreements between Manager and a third party pertaining to the Facility; and

(iii)      Within thirty (30) days after the effective date of termination deliver to County and the Agent (x) a final accounting, reflecting the balance of income and expenses for the Facility as of the effective date of termination, and (y) a statement outlining any management fees, reimbursements and other amounts due to Manager in connection with the Facility (provided such fees and expenses are incurred prior to the termination of this Agreement and permitted under the approved Annual Budget and in accordance with the terms of this Agreement). Within thirty (30) days after receipt of Manager's statement, the Agent shall either (1) notify Manager that it concurs with same, or (2) if the Agent does not concur with same, promptly authorize the payment of Manager out of Facility Revenues the amount the Agent does not dispute.  The Agent's failure to respond within such 30-day period as set forth in the preceding sentence shall be deemed concurrence.  If the Agent concurs (or is deemed to concur) with Manager's statement, then promptly following the Agent's response or the expiration of such thirty (30) days, as the case may be, the Agent shall, to the extent of Facility Revenues in the Revenue Fund, pay Manager such fees and reimbursements.  If the Agent does not concur with the statement of the amount claimed to be due to Manager, the Agent shall promptly authorize payment of the amount of such fees or reimbursements shown on such statement which is not in dispute and shall thereafter pay any additional amount due to the other upon agreement between the Agent and Manager as to such additional amount or in accordance with the order of a court of competent jurisdiction.

## ARTICLE IX
## INSURANCE

**SECTION 9.01  Liability**

During the term of this Agreement, Manager shall obtain and maintain in force, from Facility Revenues, an adequate plan of insurance sufficient to protect Manager, County, Owner, Sheriff, and their officers, guards, employees, subcontractors, and agents against all claims; including claims based on violations of civil rights, arising from the services to be performed by Manager under this Agreement and to protect County, Owner and Sheriff from actions by a third party against Manager, its officers, guards, employees, and agents as a result of this Agreement. At a minimum, Manager shall obtain and maintain in force a policy or policies of liability insurance in an aggregate amount of no less than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20

(███████) in coverage for any single claim thereunder. Such insurance shall insure against all claims, including claims based upon violations of civil rights (which shall provide coverage of ███████) arising from services performed by Manager pursuant to this Agreement. Manager shall provide fire and extended coverage for the Facility in an amount of at least the value of the physical improvements on the Facility. Manager shall also provide workers compensation coverage to its employees.

**SECTION 9.02  Additional Insured**

The policy or policies of insurance to be obtained and maintained by Manager under the provisions of Section 9.01 of this Agreement shall, where possible, name County and its employees, the Chairman of the Board of Commissioners of County, County Commissioners of County, Owner, and Sheriff as additional insureds.

**SECTION 9.03  Proof of Insurance**

Manager shall provide to County and Owner a certificate. or certificates of insurance as proof of the implementation of an adequate plan of insurance to demonstrate that the required insurance policies have been obtained and are being maintained in accordance with Section 9.01 hereof.   If, through no fault of Manager, such insurance policies are canceled or endorsed in such a way as to limit the insurance coverage provided there under, Manager shall provide County and Owner written notice thereof immediately, and Manager shall obtain, as soon as possible, and from Facility Revenues, adequate replacement insurance policies that are commercially available.

**ARTICLE X**
**INDEMNIFICATION**

**SECTION 10.01  Indemnification Obligations of Manager**

Manager agrees and does hereby assume any and all liability for all claims arising from the services performed by Manager or its subcontractors under this Agreement and operations of the Facility.  Manager further agrees to and does hereby defend, hold harmless and indemnify Owner, County, Sheriff, their officers, directors, employees, agents and representatives (including but not limited to the Chairman of the Board of Commissioners of County, and its County Commissioners), from and against all claims, damages, losses, costs and expenses, including attorneys' fees incurred or suffered by County, Owner, Sherriff, their officers, directors, employees, agents or representatives arising out of or resulting from any occurrence or negligent or wrongful act or failure to act by Manager or its subcontractors or vendors pursuant to the provisions of this Agreement, or the provisions of any contract between County and any Prisoner Transfer Source (which was properly pre-approved by Manager pursuant to Section 12.17 hereof), including all claims arising from any occurrence at the Facility and the services and operations performed by Manager under this Agreement.  Manager specifically agrees to assume and fully perform all of County's obligations to indemnify any party pursuant to the terms of this Agreement, and to fully indemnify County, Owner, Sherriff, and their respective agents, employees, officers, directors and representatives from any loss, cost, damage or expense related thereto.  Further, Manager shall at its sole cost and expense secure the release of any lien

21

placed upon the Facility arising in any way from the operation, maintenance, or management of the Facility, unless such lien arises as a direct result of any act of County.

## ARTICLE XI
## APPROVAL AND MONITORING

**SECTION 11.01  Approval of Conditions of Confinement.**

Within two months of the execution of this Agreement, Manager shall provide County and Owner with written comprehensive standards for conditions of confinement, if the same has not already been provided.  Said standards shall be incorporated as an addendum to this Agreement.

**SECTION 11.02  Monitoring by County.**

County shall have the right to monitor and inspect Manager's operation of the Facility; provided, however, that such monitoring and inspecting rights shall extend only to the operations of the Facility and not to the financial or accounting records of the Facility, Manager or the Owner.  A designated representative of County shall have the right to conduct a thorough on-site inspection of the Facility at such reasonable time as County may request.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**SECTION 12.01  Local Hiring Preferences.**

Manager shall endeavor to hire local personnel as its employees at the Facility. Additionally, Manager shall endeavor to purchase local goods and services in connection with the operation, maintenance, and management of the Facility.  Manager shall also encourage its subcontractors to similarly utilize disadvantaged businesses, hire local personnel and purchase goods and services locally.

**SECTION 12.02  Nondiscrimination.**

Manager shall at all times provide the services required hereunder in compliance with all laws with respect to nondiscrimination in hiring, promoting or pay of employees.  No person will be subjected to discrimination on the grounds of race, sex, color, religion or national origin.

**SECTION 12.03  Binding Nature.**

This Agreement shall not be binding upon the parties until it is approved and executed by all parties, and all conditions of Section 12.16 have been fulfilled.  This Agreement, after properly approved and executed by the parties, shall inure to the benefit of County, Owner and Manager and shall be binding upon County, Owner, and Manager and their respective successors and assigns.  This Agreement may not be assigned by any party hereto without the prior written consent of the Owner.

**SECTION 12.04  Invalidity and Severability.**

In the event that any provision of this Agreement shall be held invalid or unenforceable, the validity and enforceability of the retraining provisions of this Agreement shall not in any way be affected thereby.  The parties hereto acknowledge that if any provision of this Agreement is determined to be invalid or unenforceable, it is their desire and intention that such provision be reformed and construed in such a manner that it will, to the maximum extent practicable, be deemed to be validated and enforceable.

**SECTION 12.05  Terminology and Definitions.**

All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neuter gender, shall include all other genders; the singular shall include the plural shall include the singular.

**SECTION 12.06  Arbitration.**

The parties hereto shall submit any matter in dispute regarding this agreement to binding arbitration before the American Arbitration Association anywhere in the State of Georgia.

**SECTION 12.07  Laws of Georgia.**

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

**SECTION 12.08  Jurisdiction.**

Any and all actions regarding this Agreement shall be instituted and maintained in any court of competent jurisdiction in Fulton County, Georgia.

**SECTION 12.09  Entire Agreement.**

This Agreement, together with the Lease Agreement, incorporates all of the agreements, covenants and understandings between the parties hereto, concerning the subject matter hereof, and all such covenants, agreements and understandings have been merged into this written Agreement.  No other prior agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

**SECTION 12.10  Amendment**

No changes to this Agreement shall be made except upon the written agreement of County, Manager and the Owner.

**SECTION 12.11  Confidentiality.**

To the extent allowed by applicable state and federal laws, any confidential information provided to or developed by Manager in the performance of this Agreement shall be kept

23

confidential and shall not be made available to any individual or organization by Manager or County without prior written approval of all parties to this Agreement.

**SECTION 12.12  Notices.**

All notices called for or contemplated hereunder shall be in writing and shall be valid when actually received by the party to whom such notice is given if sent via a private courier such as Federal Express or Airborne, or by telecopy, or by means other than the United States Mail, or on the date when deposited in the United States Mail, postage pre-paid, and sent by Certified Mail.  Return Receipt Requested and addressed to the party as herein specified below:

(a)      Notices to County shall be delivered or sent as follows:

Chairman
Irwin County Commissioners
P.O. Box 287
Ocilla, Georgia 31774

(b)      Notices to Manager shall be delivered or sent as follows:

LaSalle Southeast, LLC
26228 Ranch Road 12
Dripping Springs, Texas 78620
(512) 858-7202
Attention:  Tim Kurpiewski, CFO

(c)      Notices to Owner shall be delivered or sent as follows:

c/o CGL Management Group, LLC
801 Brickell Avenue, Suite 720
Miami, Florida  33131
Facsimile:  (713) 552-0022
Attention:  Buddy Johns

**SECTION 12.13  Headings.**

The headings used herein are for convenience of reference only and shall not constitute a part hereof or affect the construction or interpretation of this Agreement.

**SECTION 12.14  Execution Authority.**

By his or her signature below, each signatory individual certifies that he or she is the properly authorized agent or officer of the applicable party hereto and has the requisite authority necessary to execute this Agreement on behalf of such party, and each party hereby certifies to the other that any resolutions necessary to create such authority have been duly passed and are now in full force and effect.

**SECTION 12.15  Execution in Counterparts.**

This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall constitute but one and the same instrument.  This Agreement shall be considered fully executed when all parties have executed an identical counterpart, notwithstanding that all signatures may not appear on the same counterpart.

**SECTION 12.16  Condition Precedent.**

This Agreement shall not become effective, regardless of its execution by the parties hereto, unless and until the Lease is entered into by County, whereby County acquires a leasehold or other proprietary interest in the Facility contemplated in this Agreement.

**SECTION 12.17  Assumption of Obligation.**

Manager hereby specifically assumes the obligation of County to fully and wholly perform each term and condition of each agreement between County and any Prisoner Transfer Source, so long as Manager has consented to such agreement prior to execution by County.  Manager agrees to prepare and submit in County all such documents, reports, requisitions, billings and other matters which County may be required to prepare, pursuant to any agreement with any Prisoner Transfer Source (which was approved by Manager before execution) and pursuant to any agreement with the Owner which Manager has approved prior to execution by County.  County agrees to promptly execute, transmit, deliver or otherwise properly process such documentation as may be required and County agrees to otherwise provide to Manager such reasonable assistance in preparing such documentation as may be reasonably requested by Manager from time to time.  County agrees that Manager shall, in the performance of its obligations pursuant to this Section 12.17, with regard to any agreement between County and the Owner (which was approved by Manager prior to execution by County), be reimbursed from the Operating Account for all costs, expenses and fees charged by third parties, (such as accountants or attorneys), reasonably incurred by Manager.

**SECTION 12.18  No Third Party Beneficiaries.**

Other than as set forth in the immediately succeeding sentence, there are no third party beneficiaries to this Agreement and no person or entity, other than the parties hereto, may claim any right or benefit, or corresponding obligation or duty of another party, hereunder.  The rights and benefits of the County hereunder, but not the obligations and duties of that entity, are hereby collaterally assigned to the Agent.  Upon an Event of Default under the Lease Agreement, the Owner (or its designee) shall have all of the rights and benefits, without the obligations and duties, of County hereunder.

**SECTION 12.19  Assignability of Corrections Contract.**

Upon termination of this Agreement, as described in Section 8.01 herein, all Corrections Contracts will be transferred by County or Owner to a new manager.  The parties agree that all Corrections Contracts will expressly permit such assignment.  Failure to include such assignment language in a Corrections Contract entered into after the date hereof could be grounds for termination of this Agreement by Owner.

25

**SECTION 12.20** <u>**Assignability of this Agreement**</u>

Upon termination of this Agreement, Owner may appoint a new manager and assign all rights and interest to a new manager, hereby assigning this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**COUNTY:**

IRWIN COUNTY, GEORGIA

[SEAL]

By: _____
Chairman, Board of County
Commissioners

Attest:

_____
Clerk

_____
Unofficial Witness

**MANAGER:**

LASALLE SOUTHEAST, LLC

[SEAL]

By: _____
Title: _____

_____
Unofficial Witness

**OWNER:**

CGL/LASALLE IRWIN PROPERTIES, LLC

[SEAL]

By: _____
Title: _____

_____
Unofficial Witness

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**COUNTY**:

IRWIN COUNTY, GEORGIA

[SEAL]

By: _____
    Chairman, Board of County
    Commissioners

Attest:

_____
Clerk

_____
Unofficial Witness

**MANAGER**:

LASALLE SOUTHEAST, LLC

[SEAL]

By: _____

Title: _____

*Sandra R. Long #9956*
Unofficial Witness
*Sandra R. Long*

**OWNER**:

CGL/LASALLE IRWIN PROPERTIES, LLC

[SEAL]

By: _____
Title: _____

_____
Unofficial Witness

27

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**COUNTY**:

IRWIN COUNTY, GEORGIA

[SEAL]

By: _____
    Chairman, Board of County
    Commissioners

Attest:

_____
Clerk

_____
Unofficial Witness

**MANAGER**:

LASALLE SOUTHEAST, LLC

[SEAL]

By: _____
Title: _____

_____
Unofficial Witness

**OWNER**:

CGL/LASALLE IRWIN PROPERTIES, LLC

[SEAL]

By: _____
Title: _____ MANAGER _____

Unofficial Witness

27