**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**DAWN WOOTEN,**

*Plaintiff,*

**v.** **CASE NO.: 7:22-cv-00148-WLS**

**LASALLE MANAGEMENT COMPANY, L.L.C., LASALLE SOUTHEAST, LLC, AND DAVID PAULK, AN INDIVIDUAL,**

*Defendants.*

---

**PLAINTIFF DAWN WOOTEN'S OPPOSITION TO DEFENDANT LASALLE MANAGEMENT COMPANY, L.L.C.'S MOTION FOR PROTECTIVE ORDER**

---

Plaintiff Dawn Wooten ("Ms. Wooten") submits this Opposition to Defendant LaSalle Management Company, L.L.C. ("LM") Motion for Protective Order ("Motion") [Doc. 72] in accordance with Fed. R. Civ. P. 26 and Local Rule 7.2. For the reasons set forth herein, the Motion should be denied in its entirety.

## I. INTRODUCTION

Ms. Wooten respectfully submits this response to LM's Motion, firmly contesting LM's self-serving characterization of its involvement as merely providing logistical support to LaSalle Southeast. LM's attempt to distance itself under the principle that minimal involvement weakens the due process justification for asserting in personam jurisdiction is both misleading and unsupported by the facts. Contrary to LM's assertions, Ms. Wooten believes there is a high likelihood that substantial evidence will be developed through depositions indicating that LM exercises significant control over the LaSalle family of businesses, thereby establishing substantial contacts with the State of Georgia that warrant this Court's exercise of jurisdiction.

Firstly, LM's argument hinges on the notion that its involvement is too remote to satisfy due process requirements for personal jurisdiction. However, the deposition notice served to William McConnell, co-founder of the LaSalle enterprises, is based on the belief that Mr. McConnell wields broad control over the LaSalle entities through LM. An entity that holds the power to grant or withhold logistical support inherently maintains a controlling influence over its subsidiaries or related entities. This dependent relationship undermines LM's claim of remoteness and highlights a probable substantial role in the operations that are the subject of this litigation.

Secondly, the deposition of Rodney Cooper is central to uncovering the extent of LM's involvement in the medical abuses that the Second Amended Complaint ("SAC") alleges. Mr. Cooper publicly represents himself as the "Executive Director of LaSalle Corrections" on his LinkedIn profile (see [Rodney Cooper LinkedIn Profile](https://www.linkedin.com/in/rodney-cooper-b591b470/)). Despite "LaSalle Corrections" having been dismissed as a party due to its non-corporate status, Mr. Cooper's self-identification suggests a significant leadership role within the LaSalle entities. It is reasonable to infer that he holds substantial control over LM, further connecting LM to the alleged activities within Georgia. His deposition is essential to ascertain the depth of LM's involvement in the medical services and oversight, and to refute the notion that LM's contacts with Georgia are minimal to incidental.

Next, Dr. Pamela Hearn is self-identified as the Chief Medical Officer of "LaSalle"-- generally-- in her testimony before the U.S. Senate, claiming to play a pivotal role in setting medical policies across LaSalle facilities. In her testimony, which was triggered by Ms. Wooten's claims, Dr. Hearn elaborated to the Committee on her expansive responsibilities, which directly relate to the alleged abuses of detainees' medical rights. Again, this is the central issue in Ms.

Wooten's claims against LM. Dr. Hearn's role signifies LM's direct influence over the policies and practices that have substantial effects within Georgia. Ignoring this connection would overlook critical evidence of LM's significant contacts with the state.

Lastly, the depositions of Mr. McConnell, Mr. Cooper, and Dr. Hearn have been reasonably noticed for durations of two to three hours each. This time frame is well within the scope of the limited jurisdictional discovery authorized by the Court. There is no persuasive basis to view these depositions as exceeding the permitted scope. LM's efforts to prevent these depositions serves to obscure the extent of its involvement. The Court's denial of LM's Motion will ensure that due process is served and that Ms. Wooten’s rights to a fair hearing are preserved.

## II. BACKGROUND AND PROCEDURAL HISTORY

The Court’s Order entered September 10, 2024 [Doc. 71] (“Order”) contemplates allowing Ms. Wooten discovery into LM's contacts with and involvement in Georgia, which is appropriate given the allegations in Ms. Wooten's SAC. Specifically, the Order states that, “[t]he Court will allow limited discovery regarding the factual assertions in Defendant LaSalle Management's 12(b)(2) Motion to Dismiss (Doc. 56); the extent of Defendant LaSalle's relationship to other LaSalle Corrections entities, ICDC facility staff, and ICDC management; and Defendant LaSalle Management's contracts to house detainees.” Doc. 71, p. 3. This broad language encompasses the key issues raised in the SAC. *See* Doc. 55.

The Order also notes that this discovery is necessary because "there is a significant evidentiary asymmetry between Plaintiff and Defendant LaSalle Management, an advantage Defendant LaSalle Management seeks to press by asking the Court not to consider any evidence Plaintiff offers in support of the Court's jurisdiction.” Doc. 71, p. 3. Requiring Ms. Wooten to

establish jurisdiction without discovery related to her protected activity would be fundamentally ineffective in trying to meet the purposes of the Order. As Judge Sands observed, "to the extent that the Court might accept Plaintiff's evidence, there are significant disputes of fact between Defendant LaSalle Management and Plaintiff," that cannot be resolved without discovery. *Id.*

Following the entry of that Order, undersigned counsel for Ms. Wooten promptly communicated with counsel for LM to confer and proceed with discovery as allowed by the Court expeditiously. *See* Declaration of T. Guyer in Support of Opposition to LaSalle Management's Motion for Protective Order ("T. Guyer Decl."). On September 26, 2024, counsel requested available dates in early October to notice the deposition of Mr. McConnell and on October 1, 2024, counsel also requested available dates in the second two weeks of October for Mr. Cooper and Dr. Hearn. *See* T. Guyer Decl., Ex. 1. In response to a follow up request for available dates, on Friday, October 11, 2024, counsel for LM stated their intention to file the presently pending Motion, which was eventually filed on October 24, 2024. *See* T. Guyer Decl., Ex. 2.

As detailed in communications with counsel for LM, under the broad language of the Order detailing the limits of the jurisdictional discovery the Court has decided to allow, Ms. Wooten is entitled to take depositions of representatives of LM with information relevant to her claims and/or LM's jurisdictional defense, including any knowledge, reports, discussions, emails, texts, requests, directives, or involvement or communications that any LM director, manager, employee, in-house counsel or agent (hereafter "LM representative") has had regarding Ms. Wooten's DHS disclosures, including communications with the DHS OIG regarding Ms. Wooten's disclosures or claims, as per se evidence of LM's minimum contacts with Georgia. *See* T. Guyer Decl., Ex. 1.

## III. LAW AND ARGUMENT

Dawn Wooten's Second Amended Complaint (SAC), reviewed with the case law, and this Court's Order demonstrate that she is entitled to limited discovery into LM's involvement in the development and implementation of health care policy and practices, including COVID-19 medical care policies in 2020, at the Irwin County Detention Center (ICDC), which would support the exercise of personal jurisdiction in Georgia. This is especially plausible given LM's nationwide operations and its policy-making authority over LaSalle Southeast (LSE), which may have directly impacted Ms. Wooten's protected whistleblower activity. Courts have repeatedly recognized that such targeted involvement can establish sufficient minimum contacts under the "arises out of or relates to" standard for specific jurisdiction. Accordingly, as further explained herein, there is no good cause or reason for this Court to enter a protective order as requested by LM. This Court's prior Order already clearly limits the scope of discovery to jurisdictional issues and Ms. Wooten's intended discovery does not exceed that scope.

### A. Plaintiff's Intended Discovery is Not Beyond the Scope of this Court's Order.

First, LM does not and cannot articulate why Ms. Wooten's request to depose three LM representatives regarding information relevant to her claims and/or LM's jurisdictional defense, including any knowledge, reports, discussions, emails, texts, requests, directives, or involvement or communications had regarding Ms. Wooten's DHS disclosures, including communications with the DHS OIG regarding Ms. Wooten's disclosures or claims, exceeds the scope of the allowable jurisdictional discovery, which expressly includes the factual assertions in LM's 12(b)(2) Motion to Dismiss, such as that LM only provides virtual accounting and administrative services to LaSalle Southeast, LLC. *See* Doc. 56-2, p. 4. As discussed below, LM's level of

involvement, as to be determined and established in discovery, would likely satisfy the jurisdictional tests articulated by the Supreme Court and the Eleventh Circuit.

Specifically, under *Ford Motor Co. v. Montana Eighth Judicial District Court,* 592 U.S. 351, 141 S.Ct. 1017 (2021) ("*Ford Motor Co.*"), LM's promulgation of policies affecting detainees and staff could qualify as systematically serving the market in a way that relates to Ms. Wooten's claims, thereby satisfying the minimum contacts required for the exercise of jurisdiction. This is further supported by *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) ("*Louis Vuitton*"), where the Eleventh Circuit Court of Appeals held that personal jurisdiction is proper when the plaintiff's claims arise out of or relate to the defendant's activities in the forum state, which suggests that directing tortious communications or conduct into the forum creates jurisdiction.

Likewise, in *Skyhop Technologies, Inc. v. Narra*, 58 F.4th 1211 (11th Cir. 2023) ("*Skyhop Technologies*") the Court found the exercise of personal jurisdiction to be appropriate where the claim arose from the defendant's communications into the forum state. *Compare Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010) ("*Fraser*") (rejecting the exercise of personal jurisdiction over defendants whose only contacts with the forum state were incidental and related to general business operations, such as occasional travel or logistical support).

Here, discovery may reveal that LM directed or ratified unlawful or retaliatory actions against Ms. Wooten at ICDC, thereby satisfying the minimum contacts required for the court's exercise of personal jurisdiction over LM under the applicable case law. Similarly, any of LM's communications that foreseeably endangered detainee health or staff working conditions in Georgia could create jurisdiction. While mere logistical support is insufficient, substantive involvement in policy-making can justify jurisdiction. As such, discovery into LM's role and

involvement in Ms. Wooten's disclosures is patently relevant to LM's jurisdictional defense and plainly within the scope of discovery allowed under the Court's Order, especially in light of the "significant evidentiary asymmetry" between Ms. Wooten and LM.

***1. Case Law on Minimum Contacts and Purposeful Availment.***

Recent case law from the Supreme Court and the Eleventh Circuit demonstrates that the discovery Ms. Wooten presently seeks is highly relevant to the Court's analysis of LM's purposeful availment and minimum contacts with the state of Georgia.

The U.S. Supreme Court's ruling in *Ford Motor Co.*, *supra*, emphasizes that a defendant does not need to have caused the alleged harm in the forum state directly for personal jurisdiction to be established. *Ford Motor Co.*, 592 U.S. at 361 (rejecting argument that jurisdiction attaches "only if the defendant's forum conduct gave rise to the plaintiff's claims."). Instead, the Court held that a defendant's contacts with the forum state must simply "relate to" the plaintiff's claims. *Id.* at 362. This means that even indirect involvement in policies or practices that affect the forum state can satisfy minimum contacts. In Ms. Wooten's case, LM's direct involvement in formulating and overseeing health care to detainees, and COVID-19 medical care policies in particular, for the Irwin County facility could tie them to Georgia and to Ms. Wooten's claims of retaliation and whistleblower misconduct.

This is further strengthened by the Eleventh Circuit's decision in *Louis Vuitton*, *supra*, which held that personal jurisdiction is proper when the plaintiff's claims arise out of or relate to the defendant's activities in the forum state. *Louis Vuitton*, 736 F.3d at 1355-56. In *Louis Vuitton*, the court emphasized that there need only be a sufficient connection between the defendant's contacts with the forum and the cause of action. *Id.* In this case, LM's development, funding, implantation, and support of medical care policies directly or indirectly affecting

medical care for detainees in Georgia would create the necessary connection to Georgia. Ms. Wooten's claims arise directly from how those policies were implemented or ignored at ICDC, leading to her protected disclosures and subsequent retaliation.

The discovery Ms. Wooten intends to seek regarding LM's knowledge of and involvement in the underlying claims is clearly relevant to the issue of personal jurisdiction. *See SkyHop Technologies*, 58 F.4th at 1228 (emails from defendant sent to forum state that triggered plaintiff's claim under the CFAA sufficient to establish personal jurisdiction over defendant).

***2. Substantive Involvement Beyond Logistical Support.***

The necessity and relevance of the discovery Ms. Wooten seeks is even more apparent given recent case law finding a defendant's incidental, general business contacts with the forum state insufficient to support the exercise of personal jurisdiction. For example, in *Fraser, supra*, the court rejected personal jurisdiction over defendants whose only contacts with the forum state were incidental and related to general business operations, such as occasional travel or logistical support. *Fraser*, 594 F.3d at 850-852. However, LM's role may be far more than mere logistical oversight. The SAC clearly alleges that LM's policies and decisions on how to handle health care, especially COVID-19 health care, protective equipment, and pandemic response, were implemented at ICDC in Georgia, directly impacting detainees and employees like Ms. Wooten. Doc. 55 at ¶¶ 39-55, 66-68.

Ms. Wooten's discovery of whether LM was involved in deliberate policies on how detainees and staff were to be treated during the pandemic—including the failure to provide adequate PPE, improper isolation procedures, and deficient testing protocols—would demonstrate substantive involvement. The Eleventh Circuit has held that such targeted activities, particularly those influencing health and safety policies within the forum state, are sufficient to

establish personal jurisdiction. This Court has already ordered that Ms. Wooten is entitled to discovery to determine whether LM's involvement goes beyond logistical support and reaches the level of purposeful availment required by *Ford Motor Co.*, and *Skyhop Technologies*.

***3. Nationwide Operations and Policy-Making as Basis for Personal Jurisdiction.***

The discovery sought by Ms. Wooten does not exceed the bounds of the Court's Order because LM's nationwide support operations may further support the argument for personal jurisdiction. LM operates multiple facilities across the U.S., including Georgia. As such, it is reasonable to assume that LM has some involvement in policy-making, staffing, and logistical support decisions, such as those affecting how detention facilities like ICDC handle medical care for detainees, and Ms. Wooten is explicitly entitled to discovery of this information under the Court's Order. In *Ford Motor Co.*, the Court suggested that a company's nationwide activities, especially when it intentionally engages in policy-making or decision-making that impacts specific states, creates a basis for personal jurisdiction. *Ford Motor Co.*, 592 U.S. at 366-368.

LM's involvement in the implementation of COVID-19 policies at ICDC, which allegedly led to dangerous conditions for detainees and retaliation against Ms. Wooten for exposing these conditions, is also relevant to LM's jurisdictional defense and appropriate for Ms. Wooten to explore within the limits of the jurisdictional discovery allowed under the Court's Order. As the SAC alleges, LM entities failed to implement CDC guidelines, resulting in exposure to COVID-19, insufficient PPE, and substandard medical care. Doc. 55 at ¶¶ 39-68. These actions may be directly tied to Ms. Wooten's claims of retaliation after she disclosed these failures to the DHS OIG and the media. Doc. 55 at ¶¶ 79-84.

LM's direct or indirect influence on how COVID-19 policies were developed and enforced at ICDC could create a sufficient connection between their actions and the harm alleged

in Georgia. The *Louis Vuitton* decision highlights that even indirect involvement in a forum state's activities, when directly tied to the cause of action, is sufficient to establish personal jurisdiction. Here, LM's acts or omissions in addressing COVID-19 risks allegedly impacted Ms. Wooten's whistleblower claims and, accordingly, may form the basis for the exercise of personal jurisdiction.

***4. The "Arises Out Of" and "Effects Test" and LM's Role in Policy Implementation.***

Under the "arises out of" test, courts consider whether the defendant's activities in the forum state relate to the cause of action. In *Ford Motor Co.*, the Supreme Court held that the connection need not be a direct cause but must show that the defendant's contacts with the forum state are related to the claims being litigated. In this case, LM's involvement in the policy-making process for COVID-19 health care at ICDC, and its oversight of how those policies were implemented, may relate to Ms. Wooten's claims of retaliation after she exposed those policies, thereby justifying the court's exercise of jurisdiction.

This conclusion is further supported by *Skyhop Technologies*, where the Eleventh Circuit emphasized that a business relationship between the defendant's activities and the forum state can establish jurisdiction. LM's actions in shaping and overseeing the health policies that allegedly failed to protect detainees and staff in Georgia may provide a legally sufficient relationship, satisfying the "arises out of" test for specific jurisdiction. Accordingly, evidence of LM's involvement in the underlying claims, even if that involvement did not occur physically in Georgia, is relevant to assessing its "relationship to other LaSalle Corrections entities, ICDC facility staff, and ICDC management" for purposes of jurisdiction. *See Louis Vuitton*, 736 F.3d at 1356 (under the "effects test," a single tortious act by the defendant can establish purposeful availment even if the defendant has no other contacts with the forum state).

LM's involvement in creating and implementing policies that may have led to unsafe conditions for detainees and retaliatory actions against Ms. Wooten could satisfy the "arises out of" test established by cases like *Ford, Louis Vuitton*, and *Skyhop Technologies*. These actions may show purposeful availment of the forum state's laws and justify the exercise of personal jurisdiction in Georgia.

### B. LM Has Not Shown Good Cause for a Protective Order Under Fed. R. Civ. P. 26(c).

In addition to the fact that the intended discovery is not disproportionate or beyond the scope of the jurisdictional discovery allowed under the Court's Order, for the reasons discussed, LM also fails to demonstrate good cause for the entry of the requested protective order by failing to provide any specific facts demonstrating burden. *See Doe (K.B.) v. Hare Krishna Savannah Hotel, LLC*, 346 F.R.D. 150, 153 (N.D. Ga. 2024) (the party seeking a protective order must support its motion with a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements").

"Good cause" requires balancing the interests in obtaining the information against the movant's proffer of harm. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Here, Ms. Wooten has a strong interest in obtaining jurisdictional discovery to oppose LM's motion to dismiss, which the Court has acknowledged involves a "significant evidentiary asymmetry," while LM has not articulated any specific harm beyond conclusory assertions that the discovery sought is beyond the scope of the jurisdictional issue. This is insufficient to establish good cause. *See Gen. Motors, LLC v. Buchanan*, 313 Ga. 811, 821, 874 S.E.2d 52, 63 (2022) (to justify a protective order, one or more of the statutorily enumerated harms must be established through a specific demonstration of fact). The failure to articulate any

specific facts demonstrating any statutorily cognizable burden or harm from Ms. Wooten's requests to depose three LM representatives further justifies the denial of LM's Motion.

## IV. CONCLUSION

For the foregoing reasons, Ms. Wooten respectfully requests the Court deny LM's Motion and order such further and other relief as necessary to effectuate the Court's Order granting Ms. Wooten's motion for limited jurisdictional discovery and account for the unnecessary delay of the completion of that discovery by the filing of LM's Motion.

Dated: November 5, 2024

Respectfully submitted,

/s/ Thad M. Guyer
Thad M. Guyer (pro hac vice Oregon No. 821443)
T.M. Guyer and Ayers & Friends, PC
Government Accountability Project, Inc.
116 Mistletoe Street
Medford, OR 97501
(206) 954-1293
thad@guyerayers.com/tmguyer@tmguyer.com

and

John P. Batson
Georgia Bar No. 042150
THE LAW OFFICE OF
JOHN P. BATSON
1104 Milledge Road
Augusta, GA 30904
Cell 706-373-6108
Landline still out 706-737-4040
jpbatson@aol.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2024 I electronically filed the foregoing **OPPOSITION TO DEFENDANT LASALLE MANAGEMENT COMPANY, L.L.C.'S MOTION FOR PROTECTIVE ORDER** with the Clerk of the Court using the CM/ECF system, which will send notice of filing and a copy of same to ALL COUNSEL ON RECORD.

/s/ Thad M. Guyer
Thad M. Guyer