**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| DAWN WOOTEN, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 7:22-CV-00148 (WLS) |
| | : | |
| LASALLE MANAGEMENT | : | |
| COMPANY LLC, LASALLE | : | |
| SOUTHEAST LLC, and | : | |
| DAVID PAULK, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendant LaSalle Management Company, LLC's ("Defendant LaSalle Management" or "LaSalle Management") Motion to Dismiss Pursuant to Rule 12(b)(2) and Rule 12(b)(6) ("the Motion to Dismiss") (Doc. 56). After review, the Court grants the Motion as made under Rule 12(b)(2).

## I.   BACKGROUND

On December 29, 2022, Plaintiff Dawn Wooten ("Plaintiff") filed the above-captioned action. (Doc. 1). The operative complaint, the Second Amended Complaint ("SAC") (Doc. 55), was filed on November 16, 2023. The only remaining claim is Plaintiff's Whistleblower Protection Act Retaliation claim under 41 U.S.C. § 4712, seeking equitable relief and damages. (*Id.* ¶¶ 114–30); (Doc. 71 at 20). Plaintiff also seeks attorneys' fees and costs under 41 U.S.C. § 4712. (*Id.* at 32–33).

### A.   Motions to Dismiss

On December 8, 2023, Defendant LaSalle Southeast ("Defendant LaSalle SE" or "LaSalle SE") and Defendant Warden Paulk ("Defendant Warden Paulk" or "Warden Paulk") filed a Motion to Dismiss under Rule 12(b)(6). (Doc. 57). The same day, Defendant LaSalle Management filed the instant Motion to Dismiss (Doc. 56). In its Motion to Dismiss, LaSalle Management, specially appearing to contest jurisdiction, joined the other Defendants' 12(b)(6) Motion to Dismiss and also moved under Rule 12(b)(2) to dismiss the case for lack of personal

jurisdiction. Plaintiff filed Responses (Docs. 64 & 65) on February 5, 2024. All Defendants filed Replies (Docs. 69 & 70) on March 4, 2024.

The Court resolved both Motions to Dismiss, as made under Rule 12(b)(6) in an Order (Doc. 71) entered on September 10, 2024. In that Order, the Court granted-in-part, and denied-in-part the Motions to Dismiss to the extent made under Rule 12(b)(6). (Doc. 71 at 20). Specifically, the Court dismissed Plaintiff's First Amendment Claim with prejudice as to all Defendants. (*Id.*) This left only the § 4712 claim. (*Id.*) However, the Court declined to resolve Defendant LaSalle Management's Motion to Dismiss as made under Rule 12(b)(2) ("the Rule 12(b)(2) Motion"). (*Id.* at 2–3). Instead, the Court granted Plaintiff's motion to allow limited discovery into the jurisdictional issues raised in LaSalle Management's Rule 12(b)(2) Motion and allowed for supplemental briefing. (Doc. 71 at 2–3). The instant Order resolves the Rule 12(b)(2) arguments raised by LaSalle Management in its Motion to Dismiss (Doc. 56).

### B.    Jurisdictional Discovery

In the first Order (Doc. 71) addressing the Motions to Dismiss, the Court explained that it would allow limited jurisdictional discovery "regarding the factual assertions in Defendant LaSalle Management's 12(b)(2) Motion to Dismiss (Doc. 56); the extent of Defendant LaSalle's relationship to other LaSalle Corrections entities, [Irwin County Detention Center ("ICDC")] facility staff, and ICDC Management; and Defendant LaSalle Management's contracts to house detainees." (Doc. 71 at 3). The Court allowed Plaintiff and LaSalle Management four depositions, ten interrogatories and ten requests for admission. (*Id.*) Jurisdictional discovery was to be completed no later than Monday, December 16, 2024. (*Id.*) The Court also set a supplemental briefing schedule, allowing Defendant LaSalle Management to file a supplemental brief, Plaintiff to file a supplemental response, and LaSalle Management to file a reply to the supplemental response. (*Id.*)

During the discovery period, the Court denied two Motions (Docs. 72 & 76) filed by Defendant LaSalle Management attempting to limit the scope of jurisdictional discovery. First, on October 24, 2024, LaSalle Management filed a Motion for Protective Order (Doc. 72) objecting to an email Plaintiff's Counsel had sent to Defense Counsel broadly outlining the jurisdictional discovery sought. The Court denied the Motion for Protective Order on November 15, 2024, (*see generally* Doc. 75), and ordered Defendant LaSalle Management "to

comply with Plaintiff's requested discovery, as described in [Plaintiff's Counsel's email], **immediately**." (*Id.* at 3).

Next, Defendant LaSalle Management filed a Motion to Quash (Doc. 76). The Motion asked the Court to "enter a protective order quashing . . . the deposition of Mr. McConnell as an improper attempt to immediately depose a high-level executive[.]" (Doc. 76-1 at 6). The Court again denied LaSalle Management's motion, and ordered it to "produce Mr. McConnell for Plaintiff's deposition no later than the expiry of the discovery period or no later than **Monday, December 16, 2024**, for a minimum of three (3) hours or as may be agreed to by the Parties[.]"(Doc. 78 at 6).

Despite the broad latitude and favorable rulings, Plaintiff appears to have conducted little discovery. (*See* Docs. 71 at 3); (Doc. 75 at 1–3); (Doc. 78 at 1–6). As best the Court can tell, Plaintiff deposed only three employees of LaSalle Corrections entities—without employing any other available discovery tool. (Docs. 79-1, 79-4 & 79-5). Plaintiff's Counsel terminated William McConnell's deposition after less than thirty minutes of the three hours allowed stating:

> MR. GUYER: What we're gonna do now is we're gonna go ahead and recess this - - this deposition. I find this deposition to be a farce, a sham, and with obstructions by counsel. And I'm going to ask the Court to appoint a master to - - to preside over the rest of this deposition.
> So we'll be going off the record now unless you want to put something on the record.

(Doc. 79-5 at 26–27). No such motion to appoint a master, or any other objection to the deposition or motion to compel was filed.

Plaintiff has placed barely any documentary evidence in the Record that she obtained from jurisdictional discovery, if any. She provides only an opening statement given by Dr. Pamela R. Hearn at a congressional hearing which is attached to her deposition. (Docs. 79-2 & 79-3), an incomplete record from the Georgia Department of Labor explaining Plaintiff's unemployment compensation, (Doc. 81-1 at 1–2), and a 2021 letter from the LaSalle Management Director of Human Resources verifying Plaintiff's employment status at ICDC. (Doc. 81-2 at 1). All told, a meager showing.

### C.    Supplemental Briefing

On January 15, 2025 Defendant LaSalle Management filed its Supplemental Brief (Doc. 79). Plaintiff filed her Supplemental Response in Opposition (Doc. 80) on February 5, 2025. On February 10, 2025, Plaintiff filed a Motion to Amend (Doc. 82) her Supplemental Response which the Court granted. (Doc. 83). Plaintiff filed an Amended Response (Doc. 84) on February 11, 2025. Defendant LaSalle Management filed its Supplemental Reply (Doc. 85) on February 19, 2025. The Motion to Dismiss under Rule 12(b)(2) is thus fully briefed and ripe for ruling.

## II.    <u>STANDARD OF REVIEW</u>

"Generally, '[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (alteration in original) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Even so, "[w]hen a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, the district court must hear and decide the issue 'before trial unless the court orders a deferral until trial." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021) (quoting Fed. R. Civ. P. 12(i)). A district court has the discretion to hold an evidentiary hearing under Rule 12(i) to adjudicate the issue of personal jurisdiction. *N. Am. Sugar*, 124 F.4th at 1333 (quoting *AcryliCon*, 985 F.3d at 1364–65). Without an evidentiary hearing, however, the district court must apply a "prima facie standard." *Id.* (evaluating Rule 12(b)(2) motion on a prima facie standard after jurisdictional discovery when no evidentiary hearing was held) (quoting *AcryliCon*, 985 F.3d at 1364–65).

Even under the prima facie standard, "a defendant challenging jurisdiction may submit 'affidavit evidence in support of its position.'" *N. Am. Sugar*, 124 F.4th at 1333 (quoting *Mazer*, 556 F.3d at 1274). If the defendant does so, the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). Once the burden has shifted to the plaintiff:

> [it] meets its burden if it presents enough evidence to withstand
> a motion for judgment as a matter of law. *Stubbs v. Wyndham*
> *Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th

Cir. 2006). The Court accepts as true all unchallenged facts in plaintiff's complaint, and then considers all affidavit evidence proffered by the parties. To the extent that "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal [Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)].

*AcryliCon*, 985 F.3d at 1365.

## III.  LAW AND ANALYSIS

Turning to the substance of the Parties' arguments, Defendant LaSalle Management moves the Court to dismiss it from the action, contending that the Court lacks personal jurisdiction over it. (Doc. 56 at 1). After addressing the Parties' arguments, the Court finds, at least upon this Record, that it may not assert personal jurisdiction over LaSalle Management.

### A.  Evidentiary Objections

Defendant LaSalle Management lodges a number of objections to Plaintiff's proffered evidence. (Doc. 69 at 3–4, 6–8); (Doc. 85 at 2–3). These objections fall into two groups, which the Court addresses in turn.

#### 1.  Documents Supported by Affidavits

Defendant LaSalle Management objects to the documents attached to Plaintiff's briefing. (Doc. 69 at 3–4, 8–9); (Doc. 85 at 2–3). Plaintiff submits two Declarations (Docs. 64-1 & 81) both executed by Plaintiff's Counsel, Thad Guyer. Both Declarations aver that Mr. Guyer has personal knowledge of the matters contained within. (Doc. 64-1 ¶ 2); (Doc. 81 at 1). The first Declaration (Doc. 64-1), attached to Plaintiff's initial Response (Doc. 64), incorporates three exhibits which it declares are copies of the original documents: (1) a copy of LaSalle SE's Operations Agreement (Doc. 64-2) with Irwin County to operate ICDC, (2) a copy of a Deposition Transcript (Doc. 64-3) in another case, *Moncus v. LaSalle Mgmt. Co.*, No. 7:19-CV-75, (M.D. Ga. April. 6, 2020), and (3) an Application for Bill of Costs (Doc. 64-4) from the same case. (Doc. 64-4).

The second Declaration (Doc. 81), filed in support of Plaintiff's Amended Response (Doc. 84), incorporates two exhibits which it declares are "accurate cop[ies]" of the original documents: (1) an incomplete Georgia Department of Labor Record (Doc. 81-1) concerning

Plaintiff's pandemic-related unemployment benefits, and (2) a Letter (Doc. 81-2) verifying that Plaintiff was employed at ICDC.

### a.    Personal Knowledge

Defendant LaSalle Management first argues that because the assertions in Plaintiff's Counsel's Affidavits as to a particular document's authenticity are not made on the affiant's personal knowledge, the Court should decline to consider them. (Doc. 69 at 3–4); (Doc. 85 at 2–3). The Court generally agrees with LaSalle Management that affidavits filed in relation to a Rule 12(b)(2) motion may be considered only if based on personal knowledge. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1351 (11th Cir. 2013) (quoting *Posner v. Essex Ins.*, 178 F.3d 1209, 1216 (11th Cir. 1999)). If portions of an affidavit are not based on personal knowledge, the Court may properly disregard those portions but may still consider the rest of the affidavit. *See Posner*, 179 F.3d at 1215. However, the Court is unpersuaded that Plaintiff's Counsel lacks sufficient knowledge to speak to the proffered documents' authenticity, as he understands it.

The Declarations make clear that Plaintiff's Counsel believes the documents to be accurate copies of the business/public records they purport to be. The Court finds this to be sufficient personal knowledge for it to consider the documents in resolving the instant motion. *See Posner*, 179 F.3d at 1351. Even so, the Court makes clear that only reasonable inferences from these documents will satisfy Plaintiff's prima facie burden, *see N. Am. Sugar*, 124 F.4th at 1333, and the Court declines to adopt Plaintiff's characterizations of the documents in the Declarations as evidence itself, to the extent the characterization plainly contradicts the text of the document. The objection to the documents supported by Plaintiff's Declarations, on personal knowledge grounds, is therefore **OVERRULED**.

### b.    Relevance

Next, Defendant LaSalle Management loosely objects to documents attached to Mr. Guyer's Declarations on relevance grounds. (Doc. 79 at 11–12). Although the Court agrees that some of Plaintiff's proffered documents are barely relevant, if at all, the Court declines to categorically exclude them from its consideration. For example, Plaintiff includes an Application for Bill of Costs (Doc. 64-4) from another case. The document shows nothing save that an attorney representing several LaSalle Corrections entities moved a court for

certain costs related to service in a separate action. (*See generally id.*) It contains no evidence that illuminates the actual relationship of the LaSalle entities or LaSalle Management's contacts with the state of Georgia—the only relevant issue here. (*See generally id.*) Although the Court declines to exclude any documents on relevance grounds alone, only relevant information, and reasonable inferences drawn therefrom, will help Plaintiff carry her prima facie burden. *See N. Am. Sugar*, 124 F.4th at 1333. As such, the objection to the documents on relevance grounds is **OVERRULED**.

### 2.    Documents Unsupported by Affidavits

On the other hand, Defendant LaSalle Management properly objects to the various sources cited in the footnotes of Plaintiff's Response. (*See* Doc. 69 at 7–8). For example, Plaintiff cites myriad news articles, internet webpages, and social media pages in support of her arguments for jurisdiction. (*See generally* Doc. 64). However, as noted, because LaSalle Management supports its Motion with affidavits, Plaintiff has the burden to produce affidavits of her own to counter the assertions of Defendant's affidavits. *See N. Am. Sugar*, 124 F.4th at 1333. The Court therefore need not consider any documents unless those documents are supported by an affidavit. After jurisdictional discovery, there is no reason why Plaintiff would be unable to proffer sworn evidence in opposition to the Rule 12(b)(2) Motion—save inexcusable neglect. Accordingly, LaSalle Management's objection to the various news articles, documents and webpages referenced by Plaintiff that are not supported by a sworn affidavit is **SUSTAINED**.

### B.    Allegations and Factual Summary

Consistent with the standard of review as described above and the disposition of Defendant LaSalle Management's evidentiary objections, the Court considers the Second Amended Complaint (Doc. 55)[1] and the following evidence in resolving LaSalle Management's Rule 12(b)(2) Motion: (1) the Declarations (Doc. 56-2 & 56-3) attached to the Rule 12(b)(2) Motion, (2) the Depositions and exhibits (Docs. 79-1, 79-2, 79-3, 79-4 & 79-6) attached to LaSalle Management's Supplemental Brief, (3) the Declarations (Docs. 64-1 & 81) attached to

---

[1] Only to the extent it is unchallenged by the affidavit evidence in the Record. *See N. Am. Sugar*, 124 F.4th at 1333. ("The Court accepts as true all unchallenged facts in plaintiff's complaint[.]").

Plaintiff's Response and Supplemental Response, and (4) the documents supported by Plaintiff's Declarations (Docs. 64-2, 64-3, 64-4, 81-1 & 81-2).

### 1.    Remaining Allegations

Because the Court has already detailed Plaintiff's allegations in its previous Order (Doc. 71) resolving Defendants' Motions to Dismiss under Rule 12(b)(6), the Court does not provide a full summary here. (*See id.* at 5–9). Instead, the Court incorporates that summary by reference. (*Id.*) However, a brief refresher is appropriate.[2]

As alleged, from October 2019 to July 2020, Plaintiff was employed full time as a Licensed Practical Nurse at ICDC—a detention facility in Ocilla, Georgia. (Doc. 55 ¶¶ 22, 29). ICDC is a detention facility owned by Irwin County and was operated by Defendant LaSalle SE and overseen by Defendant Warden Paulk during the relevant period. (*Id.* ¶ 24). Defendant LaSalle SE operated ICDC, at least in part, under a contract to hold Immigration and Customs Enforcement Detainees. (*See id.* ¶¶ 24–25).

While working at ICDC, Plaintiff observed a number of practices which she believed violated the Performance Based National Detention Standards ("PBNDS") and Center for Disease Control ("CDC") COVID-19 guidelines for private detention facilities which are required practices under LaSalle SE's contract. (Doc. 55 ¶¶ 39, 46–78, 118). Plaintiff alleges that staff at ICDC failed to take adequate steps to protect detainees and staff from COVID-19, violated the human rights of certain detainees through improper gynecological care, and prevented detainees from articulating healthcare concerns through grievance procedures. (*Id.* ¶¶ 46–66, 67–70, 71–72, 73–76).

When Plaintiff became concerned about the practices at ICDC, she complained to fellow nurses, her supervisors, and the Director of Nursing at ICDC. (Doc. 55 ¶¶ 30, 50, 52, 62, 91). Shortly after making these complaints, Plaintiff was reprimanded for not reporting to work, although she asserts that she was excused from work for COVID-19-related reasons. (*Id.* ¶¶ 86–91). When Plaintiff objected to the reprimand, Warden Paulk demoted her to an "as-needed" position. (*Id.* ¶¶ 92, 100). After her demotion, Plaintiff waited to be called for as-needed shifts, but she was not assigned any hours. (Doc. 55 ¶¶ 100–01). Plaintiff grew to

---

[2] Of course, the only pertinent allegations are those that support Plaintiff's § 4712 claim, which is the only claim that remains.

believe that her demotion had been, effectively, a termination. (*Id.*) Having been offered no work by September 8, 2020, she decided to make legal challenges and public disclosures about the practices at ICDC. (*Id.* ¶ 94).

Plaintiff first filed a Complaint with the Office of the Inspector General ("OIG") alleging "violations of laws, rules and regulations, as well as on-going danger to public health and safety, due to mismanagement of COVID-19 issues and other significant matters." (*Id.* ¶ 14). Plaintiff also disclosed the contents of her OIG Complaint to the DHS Office of Civil Rights and Civil Liberties and the ICE Atlanta Field Office. (*Id.* ¶ 82). Next, Plaintiff began to make public disclosures, such as sending a letter to Congress, and disclosing her concerns to national news outlets. These public disclosures generated significant coverage by major newspapers and television networks. (*Id.* ¶ 97). After her public disclosures, Plaintiff was never called back to work, although she nominally remains an employee at ICDC. (*Id.* ¶¶ 4, 102–03).

### 2.    **Jurisdictional Facts**

The Court's task in parsing the relevant facts is significantly impeded by the paucity of evidence in the Record. Plaintiff has adduced no internal records from any LaSalle entity revealing its corporate structure, ownership, operating policies, or relationships with other LaSalle entities. (*See generally* Doc. 81, 81-1, & 81-2). It is clear that LaSalle employees proved to be challenging deponents, although there is no evidence to suggest that those employees testified falsely or did not cooperate with their depositions. (*See generally* Docs. 79-1, 79-4, & 79-5). Their answers were generally evasive, vague, and inconsistent—rendering much of the deposition testimony of little use as substantive evidence. (*Id.*) This problem is compounded by Plaintiff's Counsel's consistent failure to develop the deponents' testimony beyond these initial unhelpful answers. By illustration, when William McConnell ("Billy McConnell") was asked about the number of LaSalle entities, he responded "We have - - facilities with all sorts of names, and some of them have LaSalle in them, some of them don't." (Doc. 79-5 at 14). Plaintiff's Counsel failed to ask any follow up questions on the subject. (*See id.* at 14–15). As

such, the depositions do little to advance Plaintiff's prima facie burden.[3] Nevertheless, the Court does its best to summarize what little relevant Record evidence there is.[4]

### a. LaSalle Corrections

LaSalle Corrections is not, as Plaintiff sometimes suggests, a single legal entity that employed her. (*See e.g.*, Doc. 55 ¶ 22) ("[Plaintiff's] first employment as an LPN was at the ICDC for LaSalle Corrections.").[5] Although LaSalle Corrections, LLC is a business registered in Louisiana, it is disused, with no contacts, employees, or business relationships. (Doc. 56-2 ¶ 13). The name LaSalle Corrections, however, is a trade name, (*id.* ¶¶ 6–7), employed by a number of other business entities affiliated with the LaSalle brand. (Doc. 79-5 at 7–8). LaSalle Management and LaSalle SE are two such business entities. (Doc. 56-2 ¶¶ 6–7).

The LaSalle Corrections web of entities grew from a Louisiana construction company called BAS Construction ("BAS"). (Doc. 79-5 at 8). BAS is named for its founder's children, Billy McConnell, and his sisters Ann and Susan. (*Id.*) BAS began as a sole proprietorship operated by Billy McConnell's father alone for a number of years. (*Id.* at 10). Billy McConnell joined the company in 1985. (*Id.*) After his father's death in 1990, Billy McConnell converted the company into an S-Corporation. (*Id.* at 10–11).

---

[3] Additionally, Mr. Guyer seriously misrepresents the actual facts in the Record throughout his Supplemental Brief—even as amended. (*See generally* Docs. 80 & 84). For this reason, Plaintiff's recitation of the facts adds little. Throughout the factual summary, the Court will note several instances of these serious misrepresentations. However, to address them all would be time consuming and distract from the analysis. Even so, the misstatements are so significant and frequent, that Counsel strays into the realm in which discipline or sanctions might be warranted. The Court declines to take that path here, but advises Mr. Guyer that future filings that misrepresent the underlying record will not be tolerated.

[4] The facts contained herein are parsed consistent with the standard of review explained above. To the extent that the SAC or Plaintiff's proffered evidence, and the depositions; conflict with LaSalle Management's affidavits, the Court construes all reasonable inferences in favor of Plaintiff. *See Diamond Crystal Brands*, 593 F.3d at 1257. Nothing in this section, or the Order more generally, should be construed as a finding of fact as may be determined at a later stage in the proceedings or at trial.

[5] Plaintiff also argues that notwithstanding LaSalle Management and LaSalle SE's separate legal status, the Court should treat them as a single entity for the purposes of its personal jurisdiction analysis. (*See* Doc. 84 at 8–19). The Court discusses, and rejects, this argument below. However, it is important to note at the outset that the LaSalle Corrections entities are legally distinct as a matter of organization.

BAS entered the private corrections business in 1995 when it funded and constructed a juvenile corrections facility in Alexandria, Louisiana. (Doc. 79-5 at 7–8). Shortly after BAS constructed the Alexandria facility, a sheriff approached BAS to construct, fund, and provide equity for a prison facility in Richland Parish, Louisiana. (*Id.* at 8–9). BAS agreed and the company constructed a correctional facility in LaSalle Parish and acquired a majority interest in that facility. (*Id.* at 10–11). This facility was called LaSalle Correctional Center and was operated by the first LaSalle entity, LaSalle Correctional Center, LLC. (*Id.*)

Although the Record evidence paints a clear picture of the founding of BAS construction and the inception of the LaSalle Corrections name, BAS's evolution into the LaSalle Corrections of today is somewhat murky. It appears that since 1995, the LaSalle Corrections name has grown to be associated with 16 correctional facilities, (Doc. 79-5 at 14–15), and "a lot" of employees work at an office in Ruston, Louisiana. (Doc. 79-1 at 14–15). LaSalle is led by a "Corporate Management team" but the identities of the members or the size of the team is unclear. (Doc. 79-1 at 32–33). Likewise, the structure of the LaSalle Corrections apparatus, or even how many LaSalle Corrections entities there are, is not apparent from the Record. (*See generally* Docs. 79-1, 79-2, 79-3, 79-4 & 79-5).[6]

### b.    Operational Entities

There appear to be at least three LaSalle entities which operate correctional facilities: Defendant LaSalle SE, (Doc. 79-4 at 14), LaSalle Southwest Corrections, LLC ("LaSalle SW"), (*id.* at 9), and an unnamed entity which operates in Arizona. (Doc. 79-4 at 14–15).

### i.    LaSalle SW

LaSalle SW is an entity responsible for managing a number of LaSalle-affiliated detention facilities. (Doc. 79-4 at 7–8). It is not a defendant in the action. (*See generally* Doc. 55). It appears that LaSalle SW is owned by a trust or trusts controlled by the McConnell family and the Temple family. (Doc. 79-5 at 23–24). Plaintiff deposed the Executive Director of LaSalle SW, Rodney Cooper, (*see generally* Doc. 79-4), who was hired in 2009 by Billy McConnell and Pat Temple. (*Id.* at 10). Mr. Cooper "doesn't really remember" how long

---

[6] Beyond Plaintiff referring to all LaSalle entities collectively as "LaSalle Corrections[,]" there are no allegations which specifically refer to the relationship among those entities which add to the jurisdictional analysis. Thus, the allegations contribute to the Court's personal jurisdiction analysis only to the extent that they explain Plaintiff's claim.

LaSalle SW has been a corporation. (*Id.*) According to him, he "do[esn't] really report to anybody as executive director." (*Id.* at 10). In 2020, Mr. Cooper worked in the Ruston office. (Doc. 79-4 at 39).

Mr. Cooper describes LaSalle SW as "just a company that helps manage some jails and prisons in the - - throughout several states"—primarily in Texas. (Doc. 79-4 at 7–8). LaSalle SW also provides what Mr. Cooper dubs "advice and mentorship" to facilities outside of Texas. (*Id.*) For example, Mr. Cooper has visited ICDC "maybe four times[,]" although whether those visits overlap with the period relevant to Plaintiff's allegations is uncertain. (*See* Doc. 79-4 at 26). During these visits Mr. Cooper claims he is merely "there to, you know, tell the staff, you know, I appreciate the hard work everybody does in the field because so often that goes unappreciated." (Doc. 79-4 at 18). Mr. Cooper was also responsible for disseminating and explaining CDC and ICE pandemic guidelines to LaSalle Facilities, (*id.*), although the wardens were responsible for their implementation. (*Id.* at 29).

### ii.    Defendant LaSalle SE

LaSalle SE is a Georgia LLC with its principal place of business in Ruston, Louisiana. (Doc. 56-3 at 2).[7] LaSalle SE is also co-owned by the McConnell and Temple families. (Doc. 79-5 at 23). During the relevant time period, LaSalle SE contracted with Irwin County, Georgia to operate ICDC, a 1200-bed detention facility in the county. (*See* Doc. 64-2 at 1).[8] In turn, Irwin County contracted with the federal government to house immigration detainees, a responsibility the county passed along to LaSalle SE to fulfill by housing those detainees at ICDC. (Doc. 56-3 ¶ 8). LaSalle SE seems to be responsible for ICDC alone. (Doc. 79-4 at 20). Its only employees are "[t]he warden and staff at" ICDC. (*Id.*) This included Plaintiff at the relevant times. (Doc. 56-3 ¶ 8).

---

[7] Plaintiff did not depose any employee of Defendant LaSalle SE. (*See generally* Docs. 79-3, 79-4 & 79-5).

[8] The ICDC operating agreement bears the notarized signature of the "Managing Director" of LaSalle SE. (Doc. 64-2 at 28). In inspecting the signature, it is at least possible that the signature belongs to Billy McConnell. (*See id.*) However, the Court lacks the expertise to find that the nearly indecipherable signature on the operating agreement is competent evidence that Billy McConnell is the Executive Director of LaSalle SE and that he signed the ICDC operating agreement. In any event, Plaintiff does not assert that Billy McConnell signed the ICDC operating agreement, and the Court cannot assert as such on her behalf.

LaSalle SE's funding flows from "the operations of the facility, which depends on the customer." (Doc. 79-4 at 21). During Plaintiff's employment, this was a mixture of ICE and the U.S. Marshals Service. (*Id.*) These funds are used to pay ICDC employees. (*Id.* at 23). LaSalle Management contracts with LaSalle SE to perform accounting and payroll. (*Id.* at 25–26). As such, the money distributed to the employees passes through LaSalle Management before being distributed to ICDC employees. (Doc. 26 at 25–26).

LaSalle SW employees exert some direct control over ICDC employees. (*Id.*) For example, Jay Eason is "the regional person that has Georgia[.]" (*Id.* at 20). Mr. Eason has the authority to hire and fire the ICDC warden, (*id.* at 19–20),[9] a position Warden Paulk held during the times relevant to Plaintiff's allegations. (Doc. 55 ¶ 26).[10] Mr. Eason would also pass information he learned from the warden at ICDC up to Mr. Cooper. (Doc. 79-4 at 28–29).

### iii.   Correctmed and LaSalle Medical Oversight

Plaintiff also deposed Dr. Pamela Hearn who is the Medical Director at Correctmed, LLC ("Correctmed"). Correctmed is a Louisiana limited liability company ("LLC"). (Doc. 56-3 ¶ 16). Although it is unclear when Correctmed was organized, "employment of all LaSalle SE

---

[9] Plaintiff asserts that Mr. Eason exercises this hiring/firing power over ICDC Wardens "on behalf of LaSalle Southeast." (Doc. 84 at 10). Although this might be true as a matter of fact, it is not a reasonable inference from the Record evidence cited nor does LaSalle Management admit as such in its briefing—despite Plaintiff representing that it does so. (*Id.*) (citing Doc. 79-4 at 18) and (Doc. 79 at 7)). Indeed, there is no evidence in the Record from which the Court could reasonably infer that Mr. Eason performs any function on behalf of LaSalle SE. (*See e.g.*, Doc. 79-4 at 19) ("Q. But doesn't he work for Southeast? A. No, I believe he works for Southwest.").

[10] Plaintiff asserts that Mr. Cooper and/or Billy McConnell personally demoted Warden Paulk. (Doc. 84 at 10). Again, this is not a reasonable inference and badly misrepresents the Record. In fact, the Record reflects that Warden Paulk asked Mr. Eason if he could "step back, and so they worked out a better fit for David [Paulk] not to have as many pressures and duties as he had as the senior warden." (Doc. 79-4 at 27). Upon this Record, Mr. Cooper played no active role in the reassignment and learned of the conversation and the change in job description only after the decision was made. (*Id.*) ("Q. And how did you find out about that information you just relayed to us? A. Jay [Eason] would've told me about that."). Likewise, there is no evidence that Billy McConnell played any role in Warden Paulk's reassignment—or even knew that it occurred. (*See generally* Doc. 79-5). This misstatement is critical because Mr. Cooper and Billy McConnell occupy significant roles at LaSalle Management.

medical staff was transferred to Correctmed" on March 13, 2021. (*Id.* ¶ 15). Plaintiff was among the employees transferred that day. (*Id.* ¶ 18).[11]

The Record does not reveal which entity employed Dr. Hearn at the times relevant to this lawsuit. (*See generally* Doc. 79-1). However, she was hired as the LaSalle Medical Director in 2019 by Mr. Cooper and still reports to him. (*Id.* at 16). Presently, she works from the Ruston office. (*Id.* at 14). Dr. Hearn is "responsible for the medical operations and deployment of health resources to support a number of medical facilities, including [ICDC]." (Doc. 79-2 at 1). Dr. Hearn has "over[seen] medical care at the Irwin County Detention Center" since January 2020. (Doc. 79-1 at 24). She visited ICDC twice in 2020—once in March and again in September. (*Id.* at 33–34). She directly "communicat[ed] with ICE to establish clinical policy, procedures, and protocols, and analy[zed] audit results to ensure patient care meets the expected standards." (Doc. 79-3 at 1). Dr. Hearn denies having any meetings about Plaintiff. (*See* Doc. 79-1 at 34–35).

### iv.    Defendant LaSalle Management

LaSalle Management is a Louisiana limited liability company that operates from Ruston. (Doc. 56-2 ¶ 19). LaSalle Management is also co-owned by the McConnell family and the Temple family. (Doc. 79-5 at 18–19). This is accomplished through "a couple LLCs[.]"(*Id.* at 16). According to Billy McConnell, the owners do not exercise control over the policies at LaSalle entities. (*Id.* at 24–25). Rather, the owners merely make investment decisions. (*Id.*) While Mr. Cooper participates in management decisions, and advises on policy, Billy McConnell denies that Mr. Cooper exercises any actual control over LaSalle Management. (Doc. 79-5 at 25–26). The entity has between 50 and 100 employees, among which are a number of McConnell and Temple family members. (*Id.* at 21). None of these employees are based in Georgia. (*See* Doc. 52-2 ¶ 21).

According to the LaSalle deponents,[12] LaSalle Management merely "electronically" provides accounting, HR, payroll insurance, and "back-office support" for LaSalle

---

[11] Although by March 13, 2021, she had effectively been terminated. (Doc. 55 ¶¶ 100–01).

[12] The Court uses the collective term LaSalle deponents to refer to Dr. Hearn, Mr. Cooper, and Billy McConnell.

entities—including LaSalle SW and LaSalle SE. (*See e.g.*, Doc. 79-4 at 15–16).[13] Mr. Cooper oversees the employees who perform these services for LaSalle SE. (Doc. 79-4 at 15). A LaSalle Management employee avers that the entity did not make "any decisions related to [Plaintiff's] employment." (Doc. 56-2 ¶ 25). And there is no Record evidence that LaSalle Management had any role in setting policies at ICDC. (*Id.*)

### C.   Personal Jurisdiction

Turning to the arguments raised in the instant Rule 12(b)(2) Motion, Defendant LaSalle Management contends that it lacks sufficient contacts with Georgia to allow the Court to assert personal jurisdiction over it. (Doc. 56 at 2). The Motion, and Plaintiff's briefing (Docs. 64 & 84), raise two questions. First, can the Court exercise personal jurisdiction under the typical statutory authority/minimum contacts analysis? (*See* Doc. 79 at 11–16).[14] Second, if not, should the Court nevertheless find personal jurisdiction proper under an alter-ego theory? (Doc. 84 at 1–2, 16–18). To both questions, the answer is no.

### 1.   Plaintiff's Arguments & the Standard of Review

As an initial matter, Plaintiff's arguments reflect significant misapplications of the controlling standard. Of course, consistent with the standard of review discussed above, the Court resolves all reasonable conflicts between LaSalle Management and Plaintiff's evidence in favor of Plaintiff. *See Diamond Crystal*, 593 F.3d at 1257. Even so, where here, Defendant produces affidavit evidence, Plaintiff bears the burden to meet this evidence with her own affidavit evidence. *See N. Am. Sugar*, 124 F.4th at 1333. Plaintiff makes two notable errors in applying this standard.

---

[13] The Court is skeptical that this is, in fact, an accurate description of the role LaSalle Management plays in the LaSalle Corrections organization. However, Plaintiff has adduced no affidavit evidence that controverts this description and might create a genuine dispute of fact as to the issue—which the Court would be bound to resolve in Plaintiff's favor. *See N. Am. Sugar*, 124 F.4th at 1333. Thus, the Court accepts LaSalle Management's assessment of its role in the LaSalle organization, at least for purposes of the instant Motion.

[14] It appears that Plaintiff effectively concedes that LaSalle Management has insufficient contact with Georgia to support jurisdiction in her Supplemental Response—at least under the traditional analysis. (*See generally* Doc. 84). However, because Plaintiff makes arguments relating to sufficient contacts in her initial Response, (*see* Doc. 64 at 11–17), the Court addresses the issue on its merits.

First, Plaintiff, without citation to authority, incorrectly asserts "[w]here the named corporation can't even articulate what it is and who controls it, the burden never shifts back to the Plaintiff." (Doc. 84 at 9). To be sure, "[t]he burden . . . does not shift back to the plaintiff when 'the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Louis Vuitton*, 736 F.3d at 1350 (quoting *Stubbs*, 447 F.3d at 1360). Yet that is not the case here. LaSalle Management has submitted detailed declarations averring specific facts in support of its argument against personal jurisdiction, (*see generally* Docs. 56-2 & 56-3), and also relies on deposition testimony obtained through jurisdictional discovery. (*See generally* Docs. 79-1, 79-4 & 79-5). This is more than sufficient to shift the burden back to Plaintiff to produce evidence supporting jurisdiction. *C.f. Posner*, 178 F.3d at 1215 (declining to consider the portions of an affidavit which were "in substance legal conclusions" such as reciting the Florida long-arm statute for the conclusion that it did not apply to the defendant).

Second, Plaintiff relies on a deponent's denial of knowledge, as substantive evidence that supports her arguments throughout her Supplemental Brief. (*See e.g.*, Doc. 84 at 15). For example, Plaintiff points to the fact that Billy McConnell could not remember the financial ownership structure of the LaSalle entities, as substantive evidence that the entities lack financial independence. (*See id.*) (citing Doc. 79-5 at 16–21). Billy McConnell's professed lack of knowledge on a particular issue, however, is not competent evidence of anything but his asserted lack of knowledge. Although the Court agrees with Plaintiff that Billy McConnell's denials of knowledge are not particularly credible, credibility has no impact on the Court's analysis. Instead, if Plaintiff hopes to show a lack of financial independence between LaSalle entities, she must adduce evidence of the financial structure and condition of those entities (i.e., financial statements) to meet her prima facie burden. She has not. Plaintiff relies on denials as substantive evidence throughout. But the Court does not make the same error. In other words, the Court includes a fact in its analysis only if there is Record evidence from which that fact can be reasonably inferred. A mere denial of knowledge simply will not do.

### 2.     Traditional Personal Jurisdiction Analysis

Generally, "[i]n analyzing a motion to dismiss . . . under Fed. R. Civ. P. 12(b)(2), [a court] first determine[s] whether the applicable statute potentially confers jurisdiction over the defendant, and then determine[s] whether the exercise of jurisdiction comports with due

process." *Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (citing *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991) and *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th Cir. 1989)).

### a.    LaSalle Management's Contacts

For purposes of the traditional personal jurisdiction analysis, the Court must first assess which contacts with the state of Georgia by LaSalle Management can reasonably be inferred from the affidavit evidence. This Record supports only two contacts.

First, LaSalle Management conducts certain electronic business services under a contract with LaSalle SE, (Doc. 56-2 ¶ 27), a Georgia LLC which operates a detention facility in Georgia. (Doc. 56-3 ¶ 6). The details of what these services entail are hazy at best with most deponents parroting a vague description which provides no concrete details about the nature of the services or the degree of control exerted. (*See e.g.*, Doc. 79-4 at 16) ("Q. What is your understanding as to what LaSalle Management does? [Mr. Cooper:] That's the accountant [sic], the payroll, the back-office support for . . . LaSalle Southeast."); (Doc. 79-5 at 15) (Billy McConnell: "we still via electronically [sic] provide - - what I'll call back office support in the sense that we help them with payroll[,] . . . insurance[,] . . . maybe some HR advice[.]").

Second, a LaSalle Management employee sent a letter verifying Plaintiff's employment. (Doc. 81-2 at 1). Mr. Guyer, in his affidavit, characterizes the letters as "verification showing LaSalle Management as Plaintiff's employer." (Doc. 81 ¶ 2). It does no such thing. In fact, the document merely verifies that Plaintiff was employed at ICDC, and that verification is signed by a LaSalle Management employee who apparently had knowledge of Plaintiff's status. (*See* Doc. 81-2 at 1). Although the letter shows a direct contact with Plaintiff, it is entirely consistent with the electronic administrative services story advanced by the LaSalle deponents. It adds little further evidence of contact between LaSalle Management and the state of Georgia.

### b.    Statutory Basis for Jurisdiction

Turning to the statutory basis for personal jurisdiction, "[w]hen jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs [a court] to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996) (citing *Cable/Home Commc'n Corp. v. Network Prods.,*

*Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). Because the Court's jurisdiction is based on a claim under 41 U.S.C. § 4712, and that statute is silent on service, *see* § 4712(a)-(h), the Court looks to the Georgia long-arm statute. *See Sculptchair*, 94 F.3d at 626–27.

A Georgia court may exercise personal jurisdiction if it "find[s] that at least one prong of the long-arm statute is satisfied. *Diamond Crystal*, 593 F.3d at 1260 (citing *Rudo v. Stubbs*, 472 S.E.2d 515, 516 (Ga. Ct. App. 1996)). One of these prongs allows jurisdiction over a defendant who "[transacts any business within [Georgia.]" O.C.G.A. § 9-10-91. Such jurisdiction exists only "if the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia.]" *Diamond Crystal*, 593 F.3d at 1260 (emphasis and enumeration omitted) (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 736–37 (Ga. 2006)). Transacting business does not require the nonresident's physical presence in Georgia. *Id.* (citing *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 355 (Ga. 2005)). But instead may be shown by intangible conduct that shows that "it can fairly be said that the nonresident has transacted any business within Georgia." *Id.* (citing *Innovative Clinical*, 620 S.E.2d at 355–56).

Although LaSalle Management protests that it "does not perform business services or transact business in the state of Georgia[,]" (Doc. 79 at 11), the Court is unpersuaded. LaSalle Management, in its own affidavits, admits that it "provides virtual accounting and administrative business services to LaSalle SE, LLC, pursuant to a contract between those entities." (Doc. 56-2 ¶ 27). LaSalle SE is a Georgia limited liability company, (Doc. 56-3 ¶ 6), whose sole function is to administer a detention facility in Irwin County, Georgia. (Doc. 79-4 at 20). This business relationship appears to be longstanding, and to have begun before the times relevant to this lawsuit and to have persisted since. (*See* Doc. 56-2 ¶ 27); (Doc. 56-3 ¶ 6); (Doc. 79-4 at 20–21). The Court finds this transaction alone sufficient "to fairly say" that LaSalle Management has transacted business in Georgia, given its longstanding relationship to provide services to a Georgia LLC administering a Georgia detention facility. *See Diamond Crystal*, 593 F.3d at 1260. As such, the Georgia long-arm statute is satisfied.

### c.    Due Process

"Due process requires that a non-resident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair

play and substantial justice." *Meier*, 288 F.3d at 1274 (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) and *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). "The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general." *Consolidated Dev.*, 216 F.3d at 1291.

    **i.**    **General Personal Jurisdiction**

"'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations,' without offending due process 'when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). If a court has general personal jurisdiction over a litigant, it may adjudicate any claim involving that litigant, regardless "of where the cause of action arose." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.27 (11th Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985) and *Meier*, 288 F.3d at 1274). "A corporation's place of incorporation and its principal place of business are 'paradigm all-purpose forums.'" *Carmouche*, 789 F.3d at 1204 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler AG*, 517 U.S. at 137. Other contacts may also suffice in exceptional cases, but those contacts must be "so substantial and of such a nature as to render the corporation at home" in the forum state. *Carmouche*, 789 F.3d at 1201.

Here, LaSalle Management is a Louisiana LLC with its principal place of business in Ruston, Louisiana. (Doc. 56-3 ¶ 19). So, Georgia is not its paradigmatic all-purpose forum. *See Daimler AG*, 517 U.S. at 137. And performing virtual administrative services under a single contract falls well short of a contact that is so substantial so as to render LaSalle Management effectively at home in Georgia. As such, the Court cannot assert general personal jurisdiction over LaSalle Management, and whether the Court may adjudicate a claim against it depends on the claim asserted.

### ii.    Specific Personal Jurisdiction

Specific personal jurisdiction is a more likely candidate. But it likewise falls short of conferring jurisdiction over LaSalle Management. In analyzing specific personal jurisdiction, the Eleventh Circuit applies a three-part test which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum;
>
> (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
>
> (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice.

*Louis Vuitton*, 736 F.3d at 1355 (citing *Burger King*, 471 U.S. at 472–73; *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 413–14 (1984); *Int'l Shoe*, 326 U.S. at 316; *Oldfield*, 558 F.3d at 1220–21; and *Sculptchair*, 94 F.3d at 623–31). A plaintiff bears the burden of satisfying the first two prongs, and if that plaintiff carries this burden "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal*, 593 F.3d at 1267 (quoting *Burger King*, 471 U.S. at 472–73 and *Cable/Home Commc'n*, 902 F.2d at 858–59).

The Court's analysis of specific personal jurisdiction starts, and ends, with the first prong—which is dispositive. "[T]o determine whether a defendant's conduct arose out of its contacts with the forum, '[courts] look to the affiliation between the forum and the underlying controversy, focusing on any activity or occurrence that took place in the forum.'" *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1310 (11th Cir. 2022) (quoting *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021)). The "essential foundation" of specific jurisdiction rests on whether "there is a strong relationship among the defendant, the forum, and the litigation[.]" *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (internal quotations omitted) (quoting *Hall*, 466 U.S. at 433).

As such, LaSalle Management's contacts must arise from Plaintiff's only remaining claim under § 4712. (*See* Doc. 55 ¶¶ 114–30); (Doc. 71 at 20). Section 4712 prohibits government contractors from "retaliating against their employees for reporting evidence of misconduct in certain circumstances." *Fuerst v. Hous. Auth. of Atlanta*, 38 F.4th 860, 869 (11th

Cir. 2022) (citing § 4712). To prevail on a § 4712 claim, a plaintiff must show that she (1) made a protected disclosure, (2) to a person specified in the statute, (3) she suffered a reprisal for making the disclosure, and (4) the disclosure was a "contributing factor" in the personnel action taken against her. *DuPage Reg'l Off. of Educ. v. U.S. Dep't of Educ.*, 58 F.4th 326, 350 (7th Cir. 2023) (citing 5 U.S.C. § 1221(e)). Plaintiff alleges that ICDC employees' failure to comply with PBNDS and CDC guidelines constituted "gross mismanagement and gross waste of federal funds." (Doc. 55 ¶¶ 118–19). Thus, she asserts that § 4712 protected her from retaliation when she reported her concerns about PBNDS and CDC compliance to ICDC management, federal officials, and members of Congress. (*Id.* ¶¶ 123–26). She alleges that her demotion, and subsequent effective termination, were in retaliation for her disclosures. (*Id.* ¶¶ 127–30).

However, the Court finds that the relationship between Plaintiff's § 4712 claim and LaSalle Management's contacts with Georgia is too insubstantial to sustain specific personal jurisdiction for three reasons.

First, there is little connection between LaSalle Management and the misconduct Plaintiff alleges. Specifically, the Record does not support a reasonable inference that LaSalle Management had any role in propagating ICE guidelines to ICDC, or ensuring compliance with those guidelines. Although Dr. Hearn was responsible for "communicat[ing] with ICE to establish clinical policy, procedures, and protocols," (Doc. 79-3 at 1), there is no evidence to suggest that Dr. Hearn was ever employed by LaSalle Management. (*See e.g.*, Doc. 79-1 at 13) ("I'm [the] Medical Director at Correct[m]ed."). Indeed, the Record does not even reflect which entity employed Dr. Hearn before the LaSalle medical employees were transferred to Correctmed, the only time period relevant to the lawsuit. That entity would likely bear significant responsibility for Plaintiff's alleged claims. Yet as this Record stands, LaSalle Management had no role in any policy decision at ICDC, let alone those decisions which relate to mismanagement of federal funds.

Second, LaSalle Management had no apparent role in the alleged reprisal. There is nothing in the Record showing that any LaSalle Management employee exerted control over any ICDC employee, nor made any decisions with respect to Plaintiff's employment. (*See* Doc. 56-3 ¶ 30) ("LaSalle Management Company, L.L.C. was not involved with Ms. Wooten's

work status change or any other aspect of Ms. Wooten's employment during the relevant time period."). Although LaSalle Management performed functions related to Plaintiff's employment, the Court is unpersuaded that those functions are sufficiently related to Plaintiff's § 4712 claim because, unless LaSalle Management exerted control over employees at ICDC, it could not have played a role in the alleged reprisal.

Third, LaSalle Management's contacts with Georgia have little to do with the Government contracts § 4712 regulates. Section 4712 applies only to "a contractor, subcontractor, grantee, subgrantee, or personal services contractor." 41 U.S.C. § 4712. Although the Court must be careful not to conflate its personal jurisdiction analysis with the underlying merits of Plaintiff's claim, the Court still finds it proper to consider that § 4712, on its face, prohibits retaliation by a narrow class of persons who enter into a relationship with a federal government entity. *See* § 4712. Simply put, there is no evidence that LaSalle Management's contacts with Georgia had anything to do with LaSalle SE's responsibilities to DHS or another federal government entity. Instead, upon this Record, it appears that LaSalle Management was performing administrative services that would be typical of any company performing such services for a private employer. There is therefore no apparent overlap between the character of LaSalle Management's contacts with Georgia, and the types of relationships § 4712 regulates.

For these reasons, the relationship between Defendant LaSalle Management, Georgia, and Plaintiff's § 4712 claim is too tenuous to support a finding that Plaintiff's claims arise from or relate to one, or any, of LaSalle Management's contacts with Georgia. Accordingly, the Court cannot assert specific personal jurisdiction over LaSalle Management under a traditional analysis.

### 3.    Alter-Ego Theory

Plaintiff's main contention after jurisdictional discovery is that personal jurisdiction is proper under an alter-ego theory of personal jurisdiction. (Doc. 84 at 8–29). Generally, "[i]t is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Consolidated Dev.*, 216 F.3d at 1293. Even so, "a subsidiary's contacts can be attributed to its parent company for personal-jurisdiction purposes when 'the subsidiary is merely an agent through

which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity.'" *Herederos*, 43 F.4th at 1312 (quoting *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021)), *cert. denied*, - - U.S. - -, 143 S. Ct. 736 (2023). In other words, a subsidiary's contacts can be imputed to a parent when "the subsidiary is a mere 'alter ego' of the parent company." *Id.* (citing *Daimler*, 571 U.S. at 134; *Mortg. Invs. Corp.*, 987 F.3d at 1354; and *Meier*, 288 F.3d at 1272).

The alter-ego inquiry is "heavily fact-specific" and requires a district court to consider whether the totality of the circumstances shows an alter-ego relationship. *See Herederos*, 43 F.4th at 1312. Although no factor is dispositive, relevant considerations include whether the entities share corporate officers or leadership, observe all corporate formalities, and separate their financial statements and taxes. *Id.* In any event, "where the 'subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary.'" *Consolidated Dev.*, 216 F.3d at 1293.

Plaintiff, effectively, argues that all of the LaSalle entities in the Record, specifically, Correctmed, LaSalle SW, and LaSalle SE are alter egos of LaSalle Management, and the Court should therefore impute the contacts of LaSalle SE to the other LaSalle entities, including LaSalle Management. (*See* Doc. 84 at 12). The Record, however, is simply insufficient to show any alter-ego relationship under the relevant factors.

### a.    Corporate Officers or Leadership

Plaintiff makes much of the LaSalle deponents' denials that certain LaSalle entities have traditional corporate leadership (e.g., a CEO, a president of the board, or an executive director). (*See* Doc. 84 at 11–12). This appears to stem from confusion about the characteristics and organization of a Louisiana limited liability company. In Louisiana, an LLC "blends the limited liability of corporation law and the flow-through taxation, flexibility and informality of partnership law." Glenn G. Morris & Wendell E. Holmes, La. Civ. L. Treatise, Bus. Orgs. § 44.1 (July 2024 update). "[A]n LLC may be managed either directly by its members or by managers elected by the members." *Id.* § 44 (citing La. Stat. Ann. § 12:1311). Thus, it is hardly

surprising that the LaSalle deponents deny that the LaSalle LLCs have the traditional leadership of a corporation.

Even in light of the relevant leadership structure for an LLC, the Record lacks sufficient specificity for the Court to make any reasonable inference as to the leadership or control of the LaSalle Entities. It appears that, ultimately, most LaSalle entities are owned by the McConnell and Temple families. (*See* Doc. 79-5 at 23) (Billy McConnell: "Yeah, I don't think there are shareholders. But I would say that, again, it's the - - in general, it's gonna be 50/50. 50 percent McConnell family, and 50 percent the Temple family."). This is so for LaSalle SE and LaSalle SW, which appear to be owned by the families through a trust or trusts. (*Id.*) LaSalle Management is owned by two LLCs, although it is unclear which LLCs. (*Id.*) ("I'm not 100 percent sure. So let me just say that. I'm not sure, but I think it's owned by a couple LLCs.").

Although the ownership of the entities is somewhat homogenous, that is helpful only to the extent it provides insight into the actual operation and control of the entities. According to Billy McConnell, the owning families "make decisions like what we should invest in, but not necessarily what our operations policies need to be." (Doc. 79-5 at 25). Upon the Record, the entities appear to operate independently. For example, Mr. Cooper, as Executive Director of LaSalle SW "do[esn't] really report to anybody as [E]xecutive [D]irector." (Doc. 79-4 at 10). The Executive Director appears to be the functional equivalent of a CEO. Critically, Plaintiff has not adduced any evidence speaking to the leadership of LaSalle Management. (*See generally* Doc. 79-5). The Court is thus left in the dark about whether LaSalle Management shares officers or leadership with any other LaSalle entity. As such, the Court is in no position to evaluate the unity of corporate officers or leadership, although the Record suggests that leadership is distinct.

### b.    Corporate Formalities and Financial Records

With respect to the other relevant factors, the Court is likewise without sufficient evidence to determine whether corporate formalities have been observed or separate records kept. This is largely due to Plaintiff's failure to produce *any* corporate records from a LaSalle entity. For example, there are no secretary of state records, articles of organization, or organizational charts from which an inference about corporate formalities could be made. And

the only mention of financial records at all is Billy McConnell's admission that LaSalle Management has bank accounts—no great revelation—and its primary bank "is probably Guaranty Bank and Trust of Delhi."(Doc. 79-5 at 21–22). Yet Plaintiff did not obtain records from the Delhi bank. Thus, whether the LaSalle entities also use the Delhi bank, and, if so, whether the accounts are kept separately are mysteries. The Court, as a result, is once again in no position to evaluate the observance of corporate formalities or the financial independence of the LaSalle entities.

### c. Independence

On the other hand, there is significant Record evidence that supports a finding that LaSalle SE carries on its own business in Georgia, and that it maintains independence from LaSalle Management. For example, the money for operating ICDC and paying employees flows from the "customers"—namely the U.S. Marshals Service and ICE—on a per diem basis, (Doc. 79-4 at 23), and there is no evidence that the money continues on to LaSalle SE to LaSalle Management—except to the extent necessary for LaSalle Management to process payroll and redistribute it to ICDC employees. (Doc. 79-4 at 23–24) ("[A]s I explained to you, the LaSalle Management [sic] is the accounting piece that would do the back office. So they would take that money and distribute that money back out through the payroll system to the staff that work at that facility."). Although there is evidence that a LaSalle SW employee, Jay Eason, exerts considerable control over ICDC, there is no evidence that this control flows any higher than Mr. Cooper to reach LaSalle Management. (*Compare* Doc. 79-4 at 27–28) ("I'm the one that provides, you know, mentoring and help to Jay or James or Indy to get their job done. So they provide that experience and expertise to the warden."), *with* (*id.* at 10) ("I don't really report to anybody as executive director."). In other words, upon this Record, the buck stops with Mr. Cooper.

### d. Conclusion: Alter-Ego

Taken together, the Court finds that, based on the totality of the circumstances, this Record does not support a reasonable inference that LaSalle SE is an alter ego of LaSalle Management or that generally, any alter-ego relationship exists among LaSalle SW, Correctmed, or LaSalle SE such that a LaSalle entity's contacts with Georgia could be imputed

to LaSalle Management for personal jurisdiction purposes. The Court therefore rejects Plaintiff's alter-ego argument and declines to exercise jurisdiction on that basis.

## IV.  CONCLUSION

In sum, the Court finds that Plaintiff has failed to meet her prima facie burden to show personal jurisdiction over LaSalle Management under either a traditional personal jurisdiction analysis, or Plaintiff's proffered alter-ego theory.[15] As such, the Court cannot exercise personal jurisdiction over LaSalle Management.

Accordingly, Defendant LaSalle Management's Motion to Dismiss Pursuant to Rule 12(b)(2) and Rule 12(b)(6) (Doc. 56), to the extent it relies on Rule 12(b)(2) is **GRANTED**. Defendant LaSalle Management is **DISMISSED**, without prejudice, as a party to the above-captioned action. As such, the final disposition of Defendant LaSalle Management's Motion to Dismiss (Doc. 56) is that it is **GRANTED**, in part, and **DENIED**, in part.

In light of the disposition of LaSalle Management's Motion to Dismiss for lack of personal jurisdiction, the Court must make a small amendment to its findings in the previous Order (Doc. 71) ruling on the Motions to Dismiss under Rule 12(b)(6). Although the previous Order dismissed Plaintiff's First Amendment claim with prejudice as to all Defendants, the Court finds that a dismissal of that claim with prejudice is no longer proper as to Defendant LaSalle Management. This is so because a court should first "determine if [it] ha[s] the power to bind a defendant with a ruling on the merits of the case[,]" before ruling on those merits. *See Republic of Pan.*, 119 F.3d at 940.

Accordingly, the Court's previous Order (Doc. 71) is **AMENDED** to reflect that Plaintiff's First Amendment claim against Defendant LaSalle Management is **DISMISSED**, without prejudice. However, the dismissal of Plaintiff's First Amendment claim against Defendant LaSalle SE remains with prejudice.

Additionally, since all Motions to Dismiss have been resolved, the case is ready to proceed to discovery with respect to the remaining claim against Defendant LaSalle SE. The Court will notice a Scheduling and Discovery Conference by separate notice or Order.

---

[15] Even so, upon another Record or under a different claim, the Court might have found sufficient evidence to support personal jurisdiction over LaSalle Management. But the Court is bound here by the Record in this case, which is insufficient as a matter of law to confer personal jurisdiction over LaSalle Management.

**SO ORDERED**, this 31st day of March 2025.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**