**UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF GEORGIA VALDOSTA DIVISION**

**DAWN WOOTEN,**

*Plaintiff,*

v. NO.7:22-cv-00148-WLS

**LASALLE SOUTHEAST, LLC, and DAVID PAULK**, an individual,

*Defendants.*

---

**OPPOSITION TO MOTION FOR PROTECTIVE ORDER BY DEFENDANTS LASALLE SOUTHEAST, LLC AND DAVID PAULK**

**Table of Contents**


I. PROCEDURAL AND FACTUAL BACKGROUND 3

II. SUMMARY 4

III. THE PATH FORWARD WHEN PARTIES DON'T STIPULATE TO BLANKET PROTECTIVE ORDERS 5

IV. THE DEMOCRATIC STAKES IN PROTECTIVE ORDERS 6

A. Plaintiff Cannot be an Enabler of Anti-Democratic Protective Orders 8

B. Stipulations Waive Appellate Review of Fundamental Rights 9

C. Plaintiffs Will Oppose Almost All Efforts to Seal Exhibits During Summary Judgment Proceedings 10

V. DEFENDANT'S PROPOSED ORDER DOES NOT MEET GOOD CAUSE 10

VI. PUBLIC POLICY AND THE RIGHT OF THE PUBLIC TO REVIEW JUDICIAL PROCEEDINGS CREATES A PRESUPTION AGAINST OBSTRUCTING PUBLIC VIEW 12

VII. DEFENDANTS' MOTION FOR PROTECTIVE ORDER FAILS TO THE STANDARD FOR SEALING JUDICIAL RECORDS 14

VIII. PLAINTIFF HAS ACTED IN GOOD FAITH 16

A. Plaintiff Engaged in Good Faith Negotiation 16

B. Plaintiff's Concerns Are Legitimate and Grounded in Eleventh Circuit Precedent 17

C. Defendants Bear the Burden of Establishing Good Cause 18

IX. CONCLUSION 18

## I. PROCEDURAL AND FACTUAL BACKGROUND

On December 29, 2022, Plaintiff Dawn Wooten, a whistleblower exposing alleged misconduct at a detention facility operated by Defendant LaSalle Southeast, LLC, filed her Complaint, alleging retaliation violating her First Amendment rights and 41 U.S.C. § 4712. [Doc. 1]. She amended her Complaint on August 24, 2023, and November 16, 2023, refining claims and dismissing parties, naming LaSalle Southeast, LLC, David Paulk, and LaSalle Management Company, LLC in the Second Amended Complaint. [Docs. 38, 55]. LaSalle Management was dismissed for lack of personal jurisdiction. [Doc. 86].

The Government Accountability Project (GAP), representing Wooten, is a nonprofit whistleblower advocacy organization founded in 1977, not merely a law firm. GAP promotes government accountability by publishing on its website, engaging with media, and contacting Congress. Wooten and GAP assert strong First Amendment rights to publish articles and contact Congress about materials received in discovery from LaSalle, considered public or judicial records. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001).

Discovery began after a May 21, 2025, Scheduling and Discovery Conference, where GAP opposed a protective order. [Doc. 92]. The Court ordered the parties to confer by June 20, 2025, on a joint protective order or file a motion. [Doc. 92]. Defendants' May 28, 2025, proposed blanket protective order prompted Plaintiff's June 17, 2025, response, agreeing only to specific protections for medical records, tax filings, and personal identifying information. [Exs. B, C]. Related litigation, including an immigrants' class action against LaSalle and Amin (*Oldaker v. Giles*, No. 5:20-cv-00224 (M.D. Ga.)), involved thousands of documents, some potentially

accessible via FOIA. Defendants' June 20, 2025, motion for a protective order led to this opposition, prioritizing public access.

## II. SUMMARY

Defendants LaSalle Southeast, LLC and David Paulk move for a protective order that seeks blanket confidentiality for expansive categories of discovery materials, including trade secrets, medical records, personnel files, and proprietary business information, without the requisite showing of specific harm (Doc. 94-1). Plaintiff Dawn Wooten, in opposing this motion, respectfully submits that Defendants' proposed order fails to meet the stringent requirements of Federal Rule of Civil Procedure 26(c) and Eleventh Circuit precedent, which demand a particularized, document-by-document demonstration of good cause to justify limiting the public's right of access to judicial proceedings. This case, rooted in whistleblower allegations of misconduct at a detention facility during the COVID-19 pandemic, implicates significant public health and safety concerns, amplifying the need for transparency. Plaintiff's declination to stipulate to Defendants' proposed order is not, as Defendants claim, uncooperative, but rather a stand to ensure compliance with legal standards that protect both the parties' legitimate privacy interests and the public's right to scrutinize matters of public concern. By proposing targeted protections for medical records, tax filings, and personally identifiable information, Plaintiff has engaged in good faith to balance confidentiality with openness, consistent with *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1546-47 (11th Cir. 1985) the law's basic presumption is that the public is entitled to every person's evidence), and *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1246 (11th Cir. 2020). Defendants' failure to provide specific evidence of harm, as required by *Chicago Tribune Co.* and their reliance on vague assertions of competitive disadvantage, render their motion deficient. The Court should deny the motion and require

Defendants to justify confidentiality with the precision demanded by law, preserving the integrity of the judicial process and the public's access to it.

Certainly, is not too great an imposition on a government contractor and the Court in view of Rule 26 to require Defendants to present a representative number of documents to the Court with a request for protective order as to those particular documents. In ruling on that protective order, a baseline will have been set by the court as to what is or is not protectable under Rule 26.

## III. THE PATH FORWARD WHEN PARTIES DON'T STIPULATE TO BLANKET PROTECTIVE ORDERS

Rather than accepting or rejecting Defendants' proposed protective order in its entirety, this Court should exercise its almost limitless discretion in discovery matters to take a measured approach that balances legitimate confidentiality interests against the public's right of access. The Court possesses multiple pathways to resolve this dispute beyond simply granted or denied. First, the Court may adopt specific paragraphs of Defendants' proposed order that address genuinely sensitive categories—such as medical records, tax filings, and personally identifiable information—while rejecting overly broad provisions that lack adequate justification. Second, the Court may grant the motion in part and deny it in part, identifying which categories merit protection and which require additional factual development. Third, the Court may defer ruling on certain provisions pending actual discovery disputes, allowing for document-by-document analysis when specific materials are at issue.

This graduated approach would serve multiple interests. It prevents the judicial inefficiencies that arise when parties must relitigate confidentiality determinations during summary judgment proceedings, while simultaneously avoiding the democratic deficit that occurs when blanket orders shield government contractors from legitimate public scrutiny. For

contested categories such as trade secrets and proprietary business information, the Court should require Defendants to present representative documents with specific justifications before granting broad categorical protection. Such an approach respects both parties' positions. Defendants receive immediate protection for genuinely sensitive information while being required to justify broader claims. Plaintiff preserves her ability to challenge overbroad designations while acknowledging reasonable confidentiality needs. Most importantly, the Court maintains its essential role as guardian of both efficient discovery and public access to judicial proceedings.

## IV. THE DEMOCRATIC STAKES IN PROTECTIVE ORDERS

In an age of electronic court records, and private corporations doing the government's business in critical public domains paid by the public purse, the public's right to scrutinize judicial proceedings concerning those contractors teeters between promise and peril. Digital systems enable advocates, like the Government Accountability Project, to share discovery materials with Congress and regulators, illuminating issues of heightened public concern such as immigrant detention. Yet, these same tools risk facilitating issuance of sweeping confidentiality orders before a single specific document is at issue that may choke the flow of information, shielding critical operations from view, making them the on-ramp to sealed court documents and the road to keeping the public in the dark. Defendants LaSalle Southeast, LLC and David Paulk, as government contractors managing detention facilities, wield taxpayer-funded authority over individuals awaiting deportation. Their actions shape immigration policy, a matter of profound consequence in the 47th presidential administration and the 119th Congress, as federal judiciary reports caution that undocumented immigration risks straining the rule of law. It is over immigration detention that in *United States of America v. Chief Judge George L. Russell III*, et

al., No. 1:25-cv-02029 (D. Md.), filed June 24, 2025, the Executive Branch launched an unprecedented attack o[1]n judicial independence by suing every federal judge in United state District Court for the District of Maryland. According to the White House, H.R.1 — 119th Congress (2025-2026), 07/04/2025 signed by the President:

> The Big Beautiful Bill includes tens of billions of dollars in expanded ICE detention and calls for hiring a minimum of 10,000 new ICE agents. The House Judiciary Committee says the bill provides funding for at least 1 million annual removals, 10,000 new Immigration and Customs Enforcement (ICE) personnel, and detention capacity sufficient to maintain an average daily population of at least 100,000 aliens.

Democracy thrives when citizens can monitor and challenge those entrusted with public power. Blanket secrecy, as proposed by Defendants, builds a fortress of opacity around operations that demand transparency, undermining the people's capacity to hold government agents accountable. The public interest in these records, detailing the treatment of detainees during the COVID-19 pandemic, is not abstract but vital, tied to the integrity of humanitarian duties funded by public resources. Sealing such documents normally follows such protective orders and thereby stifles the participatory oversight that sustains a free society, erecting barriers to accountability where openness is essential. Denying Defendants' overbroad protective order upholds the principle that judicial processes must serve the public, ensuring citizens retain their rightful role as guardians of justice and stewards of democratic governance. The Eleventh Circuit in *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC,* 918 F.3d 1161, 1166 (11th Cir.

---

[1] The White House, May 17, 2025, at https://www.whitehouse.gov/articles/2025/05/the-one-big-beautiful-bill-will-crack-down-on-illegal-immigration/. See also https://www.congress.gov/bill/119th-congress/house-bill/1/text/eas

2019) emphasizes that judicial transparency carries special weight when judicial records involve public officials, government contractors, or facilities funded by taxpayers. In such contexts, like detention operations, the public interest in transparency and accountability significantly outweighs general confidentiality concerns.

This principle is particularly forceful in cases involving public health concerns. *In Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363 (11th Cir. 2021) the Eleventh Circuit's most recent pronouncement on confidentiality in public health contexts, the court recognized that public health concerns create a strong presumption in favor of disclosure that outweighs general assertions of competitive harm. Plaintiff's whistleblower allegations regarding detention facility conditions during the COVID-19 pandemic directly implicate public health and safety, triggering this strong presumption against confidentiality. Defendants' vague assertions of competitive disadvantage cannot overcome the heightened public interest in transparency when health and safety are at stake.

**A. <u>Plaintiff Cannot be an Enabler of Anti-Democratic Protective Orders</u>**

The Eleventh Circuit recognizes, and the defendant points out, that parties regularly agree, and courts often order, that discovery information will remain private, this does not mean that parties must resign themselves to an umbrella protective order. In re Alexander Grant & Co. Litigation, 820 F.2d 352, 356 (11th Cir. 1987). Plaintiff Dawn Wooten, cannot in good conscience accede to Defendants' overbroad confidentiality demands. Stipulated protective orders, while judicially convenient, often entrench a system that cloaks the powerful, here, government contractors LaSalle Southeast, LLC and David Paulk, in secrecy, shielding their actions from public scrutiny. Such orders rarely serve whistleblowers, laborers, victims, or marginalized communities; they fortify industry interests, muting those who expose misconduct.

Ms. Wooten wants to prompt Defendants to meet their Rule 26(c) burden of showing specific harm for claimed confidential documents. *Theriot v. Nw. Mut. Life Ins. Co.*, 382 F. Supp. 3d 1255, 1259 (M.D. Ala. 2019). The Eleventh Circuit in *Romero v. Drummond* Co., 480 F.3d 1234, 1242 (11th Cir. 2007) rejected attempts to seal judicial records merely because a corporate defendant denies wrongdoing or seeks to avoid reputational harm. General denials and reputational concerns are insufficient grounds for confidentiality, especially when allegations concern significant public interests such as misconduct or public health.

### B. Stipulations Waive Appellate Review of Fundamental Rights

Stipulating to a protective order risks waiving appellate review, shielding the contractor from appellate scrutiny. In the Eleventh Circuit, stipulated protective orders, treated as contracts, bind parties and may preclude appeals of the order or related decisions. See *Absolute Activist Value Master Fund Ltd. v. Devine,* 998 F.3d 1258, 1268–69 (11th Cir. 2021) (stipulated orders are construed as contracts for enforcement, allowing breach claims in state court post-dismissal). These orders can remain binding on the parties post-proceedings, with courts retaining jurisdiction to enforce or modify them unless a party seeks relief. *Parkway Gallery Furniture*, *Inc. v. Kittinger/Pennsylvania House Group*, Inc., 121 F.R.D. 264, 267 (M.D.N.C. 1988), cautions that courts hesitate to relieve parties from stipulated orders when relied upon for discovery, reinforcing their contractual weight.

Stipulating might waive Plaintiff's right to appeal the order or its downstream effects, as *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993), upholds waivers of rights even in criminal cases if clear and voluntary. Plaintiff and her counsel recognize that the Court may enter a protective order over objections. By declining to stipulate, however, Plaintiff preserves her appellate rights.

### C. Plaintiffs Will Oppose Almost All Efforts to Seal Exhibits During Summary Judgment Proceedings

Confidentiality disputes, inevitable at summary judgment, drain judicial resources and imperil public access to records vital to democratic oversight. Defendants LaSalle Southeast, LLC and David Paulk's blanket protective order invites such battles, as stipulated orders often morph into sealing demands that courts frequently grant. See *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* supra at 1312 (summary judgment exhibits are judicial records presumptively public, requiring specific good cause to seal). Plaintiff wants to avert this time wasting trap. Deferring disputes to summary judgment, where sealing motions burden courts with hearings and filings, yields inefficient gain. *Brown v. Advantage Eng'g, Inc*., 960 F.2d 1013, 1016 (11th Cir. 1992), demands a compelling interest for sealing, best scrutinized document-by-document or by category during discovery.

Addressing confidentiality now allows the Court to issue categorical rulings, resolving issues efficiently and sparing repetitive fights later. Plaintiff's whistleblower claims, exposing alleged misconduct in a taxpayer-funded detention facility, amplify the public's right to scrutinize government contractors. See *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (judicial records require granular justification for sealing).

## V. DEFENDANT'S PROPOSED ORDER DOES NOT MEET GOOD CAUSE

When an umbrella protective order is disputed, the burden of proof justifying the need for a protective order remains on the movant. *In re Alexander Grant & Co. Litigation*, 820 F.2d at 356; *See In re Chiquita Brands International, Inc.*, 965 F.3d at 1248–49. The Defendants' motion for a protective order, seeking blanket confidentiality for broad categories of discovery materials, fails under Eleventh Circuit precedent when Plaintiff refuses to stipulate (Doc. 94-1).

In *In re Chiquita Brands International, Inc.*, the court underscored that When a party disputes a protective order, the plain language of Rule 26(c) applies—the party seeking the protection must establish good cause for the protection. *Id*. Here, the Plaintiff disputes the protective order, placing the burden on showing good cause for confidentiality on the Defendant. *Id.*

Good cause, usually requires a particular and specific demonstration of fact rather than stereotyped and conclusory statements. *In re Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d at 1310–11. The moving party must do this by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality. *Theriot*, 382 F. Supp. 3d at 1259.

Defendants' proposed order, covering broad categories like trade secrets, medical records, and personnel files without particularized justification, violates this standard by delegating confidentiality determinations to the parties, thereby undermining judicial oversight (Doc. 94-1). Parties seeking protective orders should attach actual documents, provide redaction logs, and their supporting declarations should provide a factual basis for their assertions of harm. *Id*.; *Theriot*, 382 F. Supp. 3d at 1255. The proposed order's mechanism allowing parties to contest confidentiality designations still shifts some level of burden to Plaintiff to challenge Defendants' designations rather than requiring Defendants to affirmatively establish good cause for confidentiality at the start. *See Chiquita*, 965 F.3d at 1249 (emphasizing that disputed orders require the movant to show specific harm, not a presumption of confidentiality).

The Eleventh Circuit has rejected the notion that corporate reputational concerns alone can justify confidentiality. In *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) the court established that simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public

access. This precedent is particularly relevant here, where Defendants are likely seeking to shield information based on potential reputational impact rather than specific competitive harm. Under *Wilson*, LaSalle's interest in protecting its corporate image must yield to the public's right to scrutinize the operations of a government contractor managing detention facilities, especially when allegations of misconduct during a pandemic are at issue.

**VI. PUBLIC POLICY AND THE RIGHT OF THE PUBLIC TO REVIEW JUDICIAL PROCEEDINGS CREATES A PRESUPTION AGAINST OBSTRUCTING PUBLIC VIEW**

The Supreme Court has recognized both common law and First Amendment bases for public access to judicial proceedings. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). *In re Petition of Tribune Co.,* 784 F.2d 1518, 1521 (11th Cir. 1986) affirms that third parties, including the press, have standing to challenge protective orders, reinforcing that non-stipulated orders must face heightened scrutiny to preserve the public's right of access to judicial proceedings. Plaintiff's declining to stipulate serves this public interest and Defendants Rule 26(c) burden. Defendants' reliance on *In re Alexander Grant & Co. Litigation*, supra at 356 is misplaced, as that case upheld a stipulated umbrella protective order where parties consented to confidentiality for efficiency. In contrast, *Chiquita*, 965 F.3d at 1249 clarifies that when a protective order is contested, as here, the movant must provide specific and compelling reasons for confidentiality, a standard Defendants' vague assertions of competitive disadvantage and undue harm fail to meet (Doc. 94-1, at 6–7).

The Eleventh Circuit has developed a framework for balancing interests in cases involving detention facilities, which is contexturally relevant here. *In Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019) the court articulated

specific factors courts must consider: whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. This balancing test places significant weight on whether the information concerns public officials or public concerns—a factor that weighs heavily in favor of disclosure when, as here, the information involves a government contractor operating detention facilities. Id. LaSalle's vague assertions of competitive harm cannot overcome this powerful public interest factor, particularly given the whistleblower context of this case.

Additionally, *Farnsworth v. Procter & Gamble Co.,* supra at 1547 requires courts to balance the public's right of access against confidentiality needs, particularly in cases involving public health and safety. Plaintiff's whistleblower claims, alleging misconduct related to detainee treatment and facility conditions during the COVID-19 pandemic, implicate significant public health and safety concerns (Doc. 94-1, at 7). Defendants' broad categories, such as proprietary business information and trade secrets, risk concealing information critical to public interest, violating the common-law right of access articulated in *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983). Defendants' claim that disclosure could violate HIPAA or harm their competitive position lacks specificity and fails to justify blanket protections (Doc. 94-1, at 6). For instance, Defendants do not identify which documents contain trade secrets or how their disclosure would cause competitive harm, nor do they provide evidence of specific HIPAA-protected information requiring confidentiality. *See Chicago Tribune*, 263 F.3d at 1314 (requiring detailed factual findings to support trade secret claims).

Furthermore, *Brown v. Advantage Engineering, Inc.,* supra at 1016 emphasizes that once materials are filed with the court, they become judicial records subject to a presumption of public access, absent a showing of extraordinary circumstances. Defendants' proposed order, which applies to materials potentially filed with the court, fails to demonstrate such circumstances and improperly seeks to shield entire categories of discovery without judicial review (Doc. 94-1, Ex. A, § 6). Again, the blanket confidentiality designations before a single document is at issue is the fast track to sealing disputes.

## VII. DEFENDANTS' MOTION FOR PROTECTIVE ORDER FAILS TO THE STANDARD FOR SEALING JUDICIAL RECORDS

Defendants' motion for a protective order (Doc. 94-1) would set up a failure to satisfy the Eleventh Circuit's rigorous standards for sealing judicial records. In *Brown v. Advantage Engineering, Inc.*, id. the Eleventh Circuit emphasized that sealing court records violates the public's common-law right of access absent extraordinary circumstances. The court vacated a protective order sealing an entire case record, holding that once a matter is brought before a court, it becomes the public's case, and sealing requires a compelling governmental interest narrowly tailored to that interest. *Id.* Defendants' motion, however, relies on vague assertions of competitive disadvantage and undue harm without identifying specific documents or demonstrating particularized harm (Doc. 94-1, at 6-7). This will inevitably result in falling short of the *Brown* standard, which rejects blanket protections absent a showing of extraordinary need. Claims of potential reputational harm alone cannot justify sealing judicial records. In *Wilson v. American Motors Corp.*, supra at 1568 the Eleventh Circuit reiterated the need for precise, particularized evidence demonstrating actual harm.

At the pretrial stage, *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.* id at 1312 clarifies that materials filed with pretrial motions requiring judicial resolution of the merits, such as summary judgment motions, are judicial records subject to the common-law right of access. For discovery materials covered by a protective order, the court must apply a good cause balancing test under Federal Rule of Civil Procedure 26(c), weighing the public's interest in access against the party's confidentiality needs. *Id.* at 1314-15. Defendants' proposed order (Doc. 94-1, Ex. A) would delegate confidentiality designations to the parties without requiring a document-specific showing of good cause, undermining judicial oversight and the balancing test mandated by *Chicago Tribune*. Plaintiff's whistleblower claims, alleging misconduct at a detention facility during the COVID-19 pandemic, implicate significant public health and safety concerns, strengthening the public's interest in access. *See Farnsworth v. Procter & Gamble Co.*, supra at 1547 (noting public interest in health-related litigation).

*FTC v. Watson Pharms., Inc.*, supra at 1309-10 further underscores that judicial records, such as exhibits attached to pleadings, are presumptively public unless the party seeking confidentiality demonstrates good cause through specific factual findings. In *Watson*, the court affirmed unsealing a document because the sensitivity of the information and the potential for competitive harm had significantly diminished over time. Id. at 1310. Here, Defendants must detailed evidence showing current harm from disclosure of documents from at and before 2020. Under *FTC v. Watson Pharms., Inc.*, id confidentiality justifications must be specifically demonstrated. Generalized or stale claims of competitive harm do not justify sealing, particularly when substantial time has elapsed since the events described, significantly reducing sensitivity or potential competitive injury.

The Eleventh Circuit in *Brown,* 960 F.2d at 1016 mandates that any sealing order provide notice and opportunity for public objection, a requirement Defendants' motion ignores. The proposed order's mechanism allowing parties to contest confidentiality designations (Doc. 94-1, Ex. A, § 3(b)) cannot substitute for judicial review or public access, as it would place the burden on the opposing party rather than the movant to justify sealing, contrary to *Chicago Tribune*'s directive. 263 F.3d at 1314. Additionally, Defendants' reliance on *Farnsworth,* 758 F.2d at 1547 for protecting medical records is misplaced, as it is focused on non-party records, but here the Defendants own those medical records. Defendants' argument that disclosure would violates HIPAA or harm non-party employees is speculative without specific evidence tying particular documents to these concerns (Doc. 94-1, at 6). *AbbVie,* 713 F.3d at 70 requires courts to assess the nature and character of the information to determine good cause, a standard Defendants' broad categories fail to meet.

## VIII. PLAINTIFF HAS ACTED IN GOOD FAITH

Defendants assert that Plaintiff's refusal to agree to their proposed blanket protective order is uncooperative and based on unfounded fears, forcing court intervention (Doc. 94-1, at 4-5). This characterization misrepresents Plaintiff's actions and disregards Eleventh Circuit standards for protective orders. Plaintiff's response demonstrates good faith conferring, legitimate concerns about overbreadth, and adherence to the requirement that Defendants bear the burden of establishing good cause under Federal Rule of Civil Procedure 26(c). The Court should reject Defendants' argument and deny their motion.

### A. <u>Plaintiff Engaged in Good Faith Negotiation</u>

Plaintiff's response to Defendants' proposed protective order on June 17, 2025, reflects a reasonable and good faith effort to balance confidentiality with the public's right of access.

Plaintiff agreed to protect medical records, tax filings, and personally identifiable information such as home addresses and phone numbers (Doc. 94-1, Ex. C). These categories directly address the sensitive information likely to arise in this employment discrimination and whistleblower case, which involves allegations of misconduct at a detention facility during the COVID-19 pandemic. By proposing targeted protections, Plaintiff demonstrated a willingness to cooperate while ensuring the order aligns with the case's specific needs. In *Farnsworth v. Procter & Gamble Co.*, id at 1547 the Eleventh Circuit in effect affirmed that the opposing party is entitled to challenge the scope of a protective order and propose alternatives, emphasizing the importance of balancing the movant's confidentiality interests against the need for access. Plaintiff's counterproposal aligns with *Farnsworth*'s balancing test, offering tailored protections that address legitimate privacy concerns without unduly restricting public access. Defendants' claim of uncooperativeness ignores Plaintiff's constructive engagement and reasonable alternative.

**B. <u>Plaintiff's Concerns Are Legitimate and Grounded in Eleventh Circuit Precedent</u>**

Defendants mischaracterize Plaintiff's reliance on a Department of Labor brief as fearmongering and a fundamental misunderstanding of their proposed order (Doc. 94-1, at 4). The brief, which criticized an overbroad protective order for lacking individualized justification, reflects Plaintiff's valid concern about preserving public access and ensuring compliance with Eleventh Circuit standards. In *In re Chiquita Brands Int'l, Inc.*, supra at 1250 the Eleventh Circuit faulted the movant for failing to engage with the opposing party's concerns about overbreadth, emphasizing that protective orders must be negotiated in good faith and supported by specific justifications. Plaintiff's reference to the brief underscores her legitimate concern that Defendants' broad categories—such as confidential research, technical, commercial or financial

information and trade secrets (Doc. 94-1, Ex. A)—could encompass nearly all discovery materials without demonstrating a specific nexus to the case's claims.

### C. <u>Defendants Bear the Burden of Establishing Good Cause</u>

Defendants' assertion that Plaintiff's stance forces unnecessary court intervention overlooks their own burden under Rule 26(c) to establish good cause for the protective order. In *In re Alexander Grant & Co. Litigation*, id at 356 the Eleventh Circuit upheld an umbrella protective order but noted that the opposing party's right to challenge confidentiality designations is critical to preventing abuse. The court suggested that such orders must facilitate cooperation while requiring the movant to justify confidentiality on a document-by-document basis when challenged. *Id.* Here, Plaintiff's challenge to the order's breadth is a legitimate exercise of her rights under *Alexander Grant*. She is not obligated to agree to an overly broad order that exceeds the case's requirements, particularly when Defendants' vague claims of competitive disadvantage and undue harm lack specific evidence tying the proposed categories to the employment discrimination and retaliation claims (Doc. 94-1, at 6-7).

## IX. CONCLUSION

For the foregoing reasons, the Defendant's Motion for a Protective Order should be DENIED in its entirety.

Respectfully submitted this 7th day of July, 2025.

*/s/ Thad Guyer*

John P. Batson (Ga. Bar No. 042150)
The Law Office of John P. Batson
P.O. Box 3248
Augusta, GA 30914-3248
(706) 722-8191
jpbbatson@aol.com

Thad M. Guyer (Oregon # 821443)
Pro Hac Vice
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501
thadg@whistleblower.org
(206) 954-1293 (mobile)

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2025 a copy of the foregoing was served on all parties of record via the court's electronic filing system.

*/s/ Thad M. Guyer*