**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| DAWN WOOTEN, : | |
| : | |
| Plaintiff, : | |
| v. : | CASE NO.: 7:22-CV-00148 (WLS) |
| : | |
| LASALLE SOUTHEAST LLC, and : | |
| DAVID PAULK, : | |
| : | |
| Defendants. : | |
| : | |

## ORDER

Defendants LaSalle Southeast LLC and David Paulk move for a protective order allowing the Parties to designate certain discovery materials confidential. (Doc. 94 at 1). Plaintiff Dawn Wooten opposes. After review, the Motion is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

Wooten sued Defendants in December 2022. As alleged, Wooten is a former employee of Defendants, who during the times relevant to this lawsuit, operated Irwin County Detention Center—a private detention center for Immigrations and Customs Enforcement. (Doc. 55 ¶¶ 22, 24, 29). While Wooten worked at ICDC as a nurse, she observed practices that she believed violated federal standards. (*Id.* ¶¶ 39, 46–78, 118). Chiefly, she alleges that ICDC staff failed to take adequate steps to protect detainees and staff from COVID-19, violated detainee rights through improper gynecological care, and prevented detainees from articulating their healthcare concerns through grievance procedures. (*Id.* at 46–66, 67–70, 71–72, 73–76). Wooten disclosed these concerns to ICDC management, as well as to news outlets, Government regulators, and Congress. (*Id.* ¶¶ 14, 30, 50, 52, 52, 82, 91, 97). She alleges that she was (effectively) terminated as a result, in violation of the Whistleblower Protection Act. (*Id.* ¶¶ 4, 102–103, 115–30).[1]

---

[1] Plaintiff also brought a First Amendment Claim. (Doc. 55 ¶¶ 104–13). However, that claim has since been dismissed. (Doc. 71 at 1).

1

This is not the first discovery dispute between Wooten and Defendants. The Court previously allowed limited jurisdictional discovery into former-defendant LaSalle Management Company's relationship to the other LaSalle Corrections entities. (*See* Doc. 71). During this period, Defendants filed two discovery motions. One was an objection to an email Plaintiff's counsel sent broadly outlining the terms of jurisdictional discovery. (*See* Doc. 72). The other was to quash the deposition of a high-level executive. (*See* Doc. 76). Both motions were meritless, and the Court denied them. (*See* Docs. 75, 78).

After more than two years, the Court held a scheduling conference in May 2025. Because Defendants indicated that they would seek a protective order governing the disclosure of certain discovery materials, the Court ordered the Parties to confer about whether a protective order was necessary. If one was necessary, the Parties were ordered to file either a joint proposed protective order or a motion for protective order by June 20, 2025.

That day, Defendants filed their Motion for Protective Order (Doc. 94). To prevent further discovery delays, the Court ordered expedited briefing. Wooten timely responded. (Doc. 96). And Defendants timely replied. (Doc. 99). But upon preliminary review of the Motion, the Court discovered that Defendants had not attached their proposed protective order in their Motion for Protective Order (Doc. 94) but had attached it in their reply (Doc. 99). So the Court gave Plaintiff the opportunity to amend her response. (Doc. 100). Which Plaintiff did. (Doc. 102). And Defendants replied. (Doc. 103). Then, the Court ordered a hearing on the matter. (Doc. 105). The hearing was held on August 28, 2025, and all Parties were present. Now, the Court addresses the Motion for Protective Order.

**II.    STANDARD OF REVIEW**

    **A. Disputed Protective Orders**

Defendants move to enter their Proposed Protective Order. (Doc. 94-1). Wooten opposes. (Doc. 96).

The Eleventh Circuit allows a Court to enter a protective order over a party's objection. "When a party disputes a protective order, the plain language of Rule 26(c) applies—the party seeking the protection must establish good cause for the protection." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1250 (11th Cir. 2020). Therefore, Defendants must establish good cause for the protection. The good cause standard "requires the district court to balance the party's

2

interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). Indeed, "the most critical Rule 26(c) factor" is "balancing the potential harm to the [party seeking the protective order] against the interests of the other parties in the case." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251 (11th Cir. 2020).

The Eleventh Circuit advises district courts to consider "'[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *In re: Chiquita Brands*, 965 F.3d at 1251 (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). However, "these factors are not exhaustive" and "the sole criterion for determining the validity of a protective order is the statutory requirement of 'good cause' . . . [which] generally signifies a sound basis or legitimate need to take judicial action." *Id*; *In re Alexander Grant*, 820 F.2d at 356. Therefore, this Court must evaluate whether Defendant has established good cause by weighing each party's interests in the information and provide a record that includes this Court's findings of fact and good cause determination. *See Chicago Trib. Co.*, 263 F.3d at 1314. As discussed below, the Court finds good cause for the entry of a protective order modified based on the Parties' proposals (Docs. 99-1, 102-1).

### B. Plaintiff's Proposed Standard of Review

Plaintiff states that the Court has an "almost limitless discretion in discovery matters" but then attempts to restrictively cabin how the Court conducts its good cause determination. (Doc. 96 at 5).

First, Plaintiff argues that good cause "requires a particular and specific demonstration of fact" and cites to *Chicago Trib. Co.* (Doc. 96 at 11). 263 F.3d at 1310–11. That opinion does not stand for that conclusion. Plaintiff likely intended to cite to *Chiquita*, 965 F.3d at 1251, where the Eleventh Circuit parenthetically quotes *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). "To establish 'good cause' for a protective order under Federal Rule of Civil Procedure 26(c), the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." However, that quote does not come from the Supreme Court's opinion in *Gulf Oil*. It comes from a footnote in that opinion,

3

where the Court quotes the U.S. Court of Appeals for the District of Columbia Circuit to emphasize how the good cause requirement of Rule 26 relates to Rule 23. *In re Halkin*, 598 F.2d 176, 193 (D.C. Cir. 1979). Still, however, the D.C. Circuit was not creating a rule for Rule 26 good cause determinations. It was quoting a treatise on the matter, 8 Wright & Miller, Federal Practice and Procedure § 2035 at 265 (1970), which used the decisions of a handful of federal district courts and circuit courts of appeal (none of which include the Eleventh Circuit or the Middle District of Georgia) to instruct readers on how courts often handle good cause determinations. The Eleventh Circuit tells us that "dicta is defined as those portions of an opinion that are not necessary to deciding the case then before us." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (quoting *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1243 (11th Cir. 2017)). The Eleventh Circuit is "not required to follow dicta contained in our own precedents." *Id.* (*quoting McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996)).

The Eleventh Circuit in *Chiquita* held "[t]he district court engaged in balancing sufficient to satisfy Rule 26(c), as it weighed the appellants' safety interests against Chiquita's interests in administrative feasibility." *Chiquita*, 965 F.3d at 1251. The Eleventh Circuit so held because the district court weighed the interests at issue in the good cause determination. Whether the proponent of the protective order provided a "particular and specific demonstration of fact" was not necessary to decide the case. Therefore, the parenthetical is at least dicta, which need not be followed, and at most persuasive authority from a scholarly treatise, which this Court may consider.

Second, Plaintiff argues that *Chiquita* stands for the proposition that a finding of good cause to enter a protective order requires the proponent to provide "specific and compelling reasons for confidentiality." (Doc. 96 at 12). The word "compelling" appears nowhere in the *Chiquita* opinion. Indeed, in *Chiquita*, the district court did not find good cause for confidentiality because the proponents of the protective order did not "establish a sufficient nexus between the claimed threats and the disclosure of their identities; the **proffered facts were neither specific nor concrete**, and the appellants gave no other justification for their private fact protections." *Chiquita*, 965 F.3d at 1250–51 (emphasis added). The description of

4

that court's finding was just that: an example of how one court applied the good cause determination. The Court neither endorsed this determination nor held it out as the model; it merely stated that it "cannot find an abuse of discretion in its analysis." *Id.*

Finally, Plaintiff suggests that rather than simply "balancing the potential harm to the [party seeking the protective order] against the interests of the other parties in the case," (*Chiquita*, 965 F.3d at 1251) this Court should apply a "framework for balancing interests in cases involving detention facilities" with "specific factors courts must consider." (Doc. 97 at 12). Plaintiff says this framework comes from *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*. 918 F.3d 1161 (11th Cir. 2019). Plaintiff then lists factors which appear nowhere in that opinion. (Doc. 96 at 13). Additionally, the Court in *Advance Loc. Media* specifically sought to "keep our holding narrow" and discussed a "a judicial record subject to the common law right of access." *Advance Loc. Media*, 918 F.3d at 1168. Contrary to Plaintiff's assertion that "once materials are filed with the court, they become judicial records" (Doc. 96 at 14), the Eleventh Circuit stated "documents . . . filed in discovery . . . only constitute judicial records if they are filed with pretrial motions 'that require judicial resolution of the merits,' and that "[c]ourts generally should not permit public access to discovery materials that are not filed with substantive motions because discovery is 'essentially a private process' meant to 'assist trial preparation.'" *Id.* at 1167 (quoting *Chicago Tribune*, 263 F.3d at 1312 and *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). Accordingly, this Court is not required to apply Plaintiff's suggested factors and proceeds with its review in accordance with Eleventh Circuit precedent.

### III.   GOOD CAUSE ANALYSIS: BALANCING PARTIES' INTERESTS

The Defendants' propose a protective order covering:

> (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identifying information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; (g) personnel or employment records of a person who is not a party to the case; and any and all other proprietary information, including those regarding prison procedures or security, that are not available to the public.

Doc. 99-1 at 2.

5

The Court evaluates each proposed term, starting with the least contested categories and proceeding to the most, focusing on "the most critical Rule 26(c) factor—balancing the potential harm to the [party seeking the protective order] against the interests of the other parties in the case." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251 (11th Cir. 2020)

### A. Information in Which Plaintiff has No Interest

Plaintiff has no interest in medical information concerning any individual, personally identifiable information (PII), and income tax returns. The Plaintiff concedes that they have no interest in medical information, PII, and tax records because both Parties agreed at the August 28, 2025 hearing that they could agree that these three categories of discovery material should be covered by a protective order. Additionally, Plaintiff referred to these three kinds of information as "genuinely sensitive categories," indicating further agreement this kind of material should be covered by a protective order (Doc. 96 at 5). At no point has Plaintiff expressed an interest in these three categories of information. Indeed, as Defendants note, "this is an employment case involving a Plaintiff's alleged termination for complaining about issues within a private detention center, as related to her employment as a nurse there." (Doc. 99 at 6). The tax records of other employees, PII, and medical information of others have no bearing on this case but such documents produced should still benefit from the protection of confidentiality where appropriate.

Nonetheless, Defendants face potential harm from the disclosure of this information. Defendants assert that leaving medical records unprotected would be a "blatant violation of the Health Insurance Portability and Accountability Act." (Doc. 94-1 at 6). Indeed, HIPAA protects "individually identifiable health information" held by Defendants. 45 C.F.R. § 160.103. Additionally, "[w]hen using or disclosing protected health information or when requesting protected health information from another covered entity or business associate, a covered entity or business associate must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 C.F.R. § 164.502(b)(1). Defendants have a legal obligation to protect medical information in their possession. Therefore, the Court finds the category of information "medical information concerning any individual" appropriate for inclusion in a protective order.

Additionally, Defendants face potential harm from the disclosure of PII. PII includes "any information about an individual maintained by an agency, including, but not limited to, education, financial transactions, medical history, and criminal or employment history and information which can be used to distinguish or trace an individual's identity, such as their name, social security number, date and place of birth, mother's maiden name, biometric records, etc., including any other personal information which is linked or linkable to an individual." Office of Personnel Management, Definitions, https://usaperformance.opm.gov/definition.aspx. The potential harm of disclosure is readily apparent. PII, if widely disclosed, can lead to identity theft, fraud, and disclosure of highly personal and sensitive matters which could cause harm to the person whose personal information is disclosed. And Defendants, as the party which would have disclosed the information, could be subject to liability in tort. Therefore, the Court finds the category of information "personally identifiable information" appropriate for inclusion in a protective order.

Defendants face potential harm for the disclosure of tax records. W-2 records contain social security numbers of employees. 1099 forms contain the taxpayer identification numbers of employees. Disclosure of either can lead to theft of employees' tax returns and identity theft. For reasons similar to the above-stated regarding PII, disclosure of tax records poses significant potential harm to Defendants and those whose documents are disclosed. Therefore, the Court finds the category of information "income tax returns (including attached schedules and forms), W-2 forms and 1099 forms" appropriate for inclusion in a protective order.

### B. Information in Which Plaintiff Claims a General Interest

The Court now turns to the remaining categories: "(a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (g) personnel or employment records of a person who is not a party to the case; and any and all other proprietary information, including those regarding prison procedures or security, that are not available to the public." While Plaintiff does not expressly declare an interest in each category, they have sought to prevent protection of as many categories of discovery information as possible to "enable advocates, like the

7

Government Accountability Project [GAP], to share discovery materials with Congress and regulators." (Doc. 96 at 16). Additionally, Plaintiff "Wooten and GAP assert strong First Amendment rights to publish articles and contact Congress about materials received in discovery." (*Id.* at 3). The Court begins its good cause determination for the remaining categories of discovery material by addressing Plaintiff's First Amendment arguments.

The Supreme Court tells us "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). Furthermore, "judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." *Id.* at 34. Additionally, "an individual has no common law right to discovery material because those materials are not judicial records or public documents." *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989).

This means that "[p]ublic disclosure of discovery material is subject to the discretion of the trial court and the federal rules that circumscribe that discretion." *Chicago Trib. Co.*, 263 F.3d at 1310. And that "[w]here discovery materials are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure." *Id.* Therefore, Plaintiff may not use the First Amendment as an interest in the discovery materials. Plaintiff's interest must track with Rule 26(c). The Supreme Court tells us that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co.*, 467 U.S. at 36. Therefore, the Court weighs Plaintiff's interests[2] in discovery material to determine whether a protective order is appropriate for the remaining categories of discovery material and, if so, what degree of protection is required.

First, Plaintiff asserts no specific interest in information prohibited from disclosure by statute. While the proposed protective order (Doc. 99-1) does not specify which discovery material falls under such statutes, the Court finds that Defendants have an interest in

---

[2] Those interests unrelated to Plaintiff's assertions about the First Amendment.

8

complying with the law. Therefore, the Court finds the category of "information prohibited from disclosure by statute" appropriate for inclusion in a protective order.

Second, Plaintiff asserts no specific interest in personnel or employment records of a person who is not a party to the case. Defendants' interest in this information tracks that of the previously-discussed PII and tax records. (*See also* Doc. 94-1 ("Barring Defendants from keeping their other employees' records confidential where appropriate could result in injury to those individuals.")). Broad disclosure of this information creates the possibility for perpetration of fraud and identity theft against Defendants' personnel, which in turn may create tort liability for Defendant. Because this case is a wrongful termination case, Plaintiff has an interest in these materials for their use in this case. But a protective order does not prevent their use in this case. Therefore, the Court finds the category of information "personnel or employment records of a person who is not a party to the case" appropriate for inclusion in a protective order.

Third, Plaintiff asserts no specific interest in research, technical, commercial or financial information that the party has maintained as confidential. However, Plaintiff contests the inclusion of "information that reveals trade secrets." (Doc. 96 at 6). Defendants assert that "disclosure of the proprietary information of [their] business operations would put it at a direct disadvantage in the competitive marketplace in which it operates." (Doc. 94-1 at 6–7). While the interest alleged is vague, the nature of trade secrets and confidential research, technical, commercial, or financial information, can certainly create an economic disadvantage for Defendants. Additionally, technical information regarding a prison facility can create safety concerns if it ends up in the hands of inmates *See In re Sec'y, Fla. Dep't of Corr.*, No. 20-10650-J, 2020 WL 1933170, at *1 (11th Cir. Mar. 30, 2020). Additionally, Plaintiff does not indicate what her interest in this information is, besides the previously-addressed general interest in public disclosure to media and Congress. Plaintiff has given no reasons relevant to the instant case as to why she has an interest in this information. Therefore, the Court finds that the interest balancing weighs in favor of a protective order for this information. However, the Court warns Defendants to strictly adhere to the label "trade secrets" and "research, technical, commercial or financial information *that the party has maintained as confidential.*" Information which is not a true trade secret or which has not been maintained as confidential, shall not be

9

labeled confidential under the protective order. With that in mind, the Court finds the category of information "research, technical, commercial or financial information that the party has maintained as confidential" and "information that reveals trade secrets" appropriate for inclusion in a protective order.

Finally, the Court turns to the highly-contested phrase in the proposed protective order "any and all other proprietary information, including those regarding prison procedures or security, that are not available to the public." The Eleventh Circuit asks district courts to evaluate "the precision with which the [protective] order is drawn." *Chiquita*, 965 F.3d at 1251. The modifier "proprietary" is vague. Defendants provide no suggested definition. The Merriam-Webster definition is unhelpful. Their relevant definition says "used, made, or marketed by one having the exclusive legal right." Merriam-Webster, Proprietary, https://www.merriam-webster.com/dictionary/proprietary. The "exclusive legal right" language connotes patents or trademarks, which are not at issue in this case and do not seem contemplated by Defendants in their motion for protective order. By way of example, a protective order reviewed by the Court of Federal Claims defined proprietary information as information "that contains trade secrets, technical know-how, commercial or financial information, other business data, or any other information that at the time the information is requested is maintained in confidence or in which the party or Supplying Owner maintains a proprietary interest." *Ross-Hime Designs, Inc. v. United States*, 109 Fed. Cl. 725, 728 (2013). But trade secrets are already addressed by the proposed protective order. And "technical know-how, commercial or financial information, other business data" would already be protected as "research, technical, commercial or financial information that the party has maintained as confidential." If the Court were to adopt this example definition, it would be wholly redundant. Because it is unclear to the Court what purpose the "proprietary information" category serves and how its purposes are not already served by the other categories this Court has already accepted, this Court finds the category of information "any and all other proprietary information, including those regarding prison procedures or security, that are not available to the public" inappropriate for inclusion in a protective order.

10

### C. Plaintiff's Arguments Regarding Judicial Records

This Court declines to address Plaintiff's arguments regarding the standard for sealing judicial records (Doc. 96 at 14–16) because discovery materials are not judicial records unless filed with pretrial motions requiring judicial resolution of the merits. *See Advance Loc. Media* at 1167. The proposed protective order concerns discovery materials generally, not any that would constitute judicial records. Therefore Plaintiff's arguments on this matter are immaterial to the Court's decision today or at this stage of the case.

### IV. CONCLUSION

The Court finds good cause for entry of a protective order including all proposed terms, except for "any and all other proprietary information, including those regarding prison procedures or security, that are not available to the public." Therefore, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for Protective Order (Doc. 94). The Court will issue the Protective Order by separate order. In order to assist the Court in that regard, Defendants are Ordered to immediately provide a modifiable version of their proposed Order to the Courtroom Deputy by **Wednesday, September 17, 2025**.

Because the Parties' dispute over the protective order has delayed discovery, the Court **EXTENDS** the discovery deadline from November 17, 2025 by sixty days **to Friday, January 16, 2026**. Accordingly, the following deadlines set forth in the Court's original discovery/scheduling Order (Doc. 92) are altered as follows:

- All dispositive motions must be filed no later than **Tuesday, March 17, 2026**.
- All non-dispositive motions must be filed no later than **Tuesday, March 17, 2026**.
- If necessary, each Party must serve upon other Parties, disclosures relating to expert witnesses, as required by Rule 26(a)(2)(A)-(B) of the Federal rules of Civil Procedure by the following dates: Plaintiff's case-in-chief —**Monday, November 17, 2025**; Defendants' case-in-chief — **Friday, December 19, 2025**; Rebuttal Reports— **Friday, January 2, 2026.**

- Any motion challenging the qualification(s) of any expert witness to offer opinion testimony, raised under *Daubert* or Rules 104(a), 702, and 703 of the Federal Rules of Evidence, must be filed no later than:[3]

    - **Tuesday, March 17, 2026**, if the motion is filed by a party in connection with the party's dispositive motion. However, in the event discovery is extended, all such motions must be filed no later than **thirty (30) days** after the close of discovery;

    - **Tuesday, April 7, 2026**, if the motion is made by a party in response to a dispositive motion. However, in the event discovery is extended, the motion must be filed no later than **twenty-one days** after the dispositive motion deadline; or

    - **fourteen (14) days after notice of the pretrial conference order is entered**, if the motion relates to a trial witness or issue and if necessary the motion will be heard at the pretrial conference.

Based upon the foregoing schedule, this case <u>tentatively</u>[4] should be ready for trial to commence on **Monday, August 3, 2026**, in the **Valdosta Division** of this Court, or as otherwise ordered by the Court.

All other existing deadlines and timeframes set out in the original discovery/scheduling order (Doc. 92) not altered herein remain in force and effect. The Parties are hereby **NOTICED** that no further extension will be granted except to prevent manifest injustice upon timely written motions for good cause shown upon grounds not reasonably foreseeable by the moving Party or Parties.

**SO ORDERED**, this 15th day of September 2025.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATESDISTRICT COURT**

---

[3] *Daubert* motions must be filed as a separate motion and cannot be included or incorporated directly in a dispositive motion or a response to a dispositive motion.

[4] As explained at the initial discovery conference, the actual trial date will be known when the Parties receive the Notice of Pretrial Conference, which might state the proposed trial date listed herein or an earlier or later trial date.