UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

DAWN WOOTEN,

    Plaintiff,

v.                                                              CIVIL ACTION NO. 7:22-cv-00148-WLS

LASALLE MANAGEMENT COMPANY,
L.L.C, LASALLE SOUTHEAST, LLC,
and DAVID PAULK, an individual,

    Defendants.

_____

## LOCAL RULE 56 STATEMENT OF FACTS

Defendants LaSalle Southeast, LLC ("LaSalle") and David Paulk (collectively, "Defendants") respectfully submit this statement of the material facts to which Defendants contend there is no genuine dispute to be tried.

1. Plaintiff began her third and most recent stint of employment at the Irwin County Detention Center (ICDC) in October of 2019. Ex. 1 at 69:10-12.[1]

2. Prior to her most recent stint, Plaintiff worked on PRN status at ICDC in 2016. Ex. 1 at 71:19-72:8, 145:7-19.

3. As of July 2020, Plaintiff was aware of and familiar with the requirements of LaSalle's employee grievance procedure. Ex. 1 at 81:10-82:18; Ex. 1-7.[2]

---

[1] Attached as **Exhibit 1** is a true and correct copy of excerpts from the transcript of the deposition of Plaintiff Dawn Wooten and select exhibits from the deposition.

[2] Attached as **Exhibit 1-7** is a true and correct copy of the LaSalle grievance procedures at the time of Plaintiff's employment.

#111903479v2

4.  Plaintiff alleges that she complained verbally about issues such as blood on the floors of the ICDC medical facility, sour mops, and other related issues, but she did not make these complaints in writing, and could not provide specific details about what complaints were made to whom and when and acknowledged that these issues were *her* responsibility to address. Ex. 1 at 111:3-114:16.

5.  Plaintiff alleges that she reported a lack of COVID-19 testing of detainees in late March or April of 2020, but she was unaware of the precise timing of the alleged complaint and unaware of whether a provider order was required to test detainees for COVID-19. Ex. 1 241:10-244:16.

6.  Plaintiff alleges that she reported shredding of COVID-19 test results by Health Services Administrator Lakeysia Brown after Ms. Brown had already made copies of the records in question. Ex. 1 at 244:17-245:7, 256:9-15.

7.  There are multiple legitimate reasons to shred medical records, including once the record has been digitized, or if a facility had duplicate copies of the same record, and ICDC medical staff regularly shredded records that were captured elsewhere in paper or electronically. Ex. 2[3] at 51:8-52:1.

8.  Plaintiff alleges she reported that detainees were subjected to medical procedures without providing informed consent, but she could not identify a single detainee whose chart she reviewed that lacked informed consent for any procedure, and Plaintiff did not have access to the *hospital* records where procedures were actually performed. Ex. 1 at 275:9-277:13.

---

[3] Attached as **Exhibit 2** is a true and correct copy of excepts of the transcript of the deposition of LaSalle, through its corporate representative, Dr. Pamela Hearn.

#111903479v2

9. Plaintiff was aware of LaSalle's General Rules of Conduct and tardiness, absenteeism, and no-call/no-show policies. Ex. 1 at 160:25-161:19; Ex. 1-16.[4]

10. Plaintiff was familiar with LaSalle's no-call, no-show policy set forth in the employee handbook and standalone no-call, no-show policies, which she acknowledged on three separate occasions. Ex. 1 at 161:20-164:8; Ex. 1-17; Ex. 1-18; Ex. 1-19; Ex. 1-20.[5]

11. Although she denies seeing letters of correction documenting her tardiness, Plaintiff acknowledges LaSalle's contemporaneous time records demonstrating that she was late for her scheduled shifts on June 9, 2020; June 14, 2020; June 17, 2020; and June 18, 2020. *See* Ex. 1 at 165:5-171:6; 1-22; 1-23; 1-24; 1-25; 1-26.[6]

12. On June 22, 2020, Plaintiff stopped going to work for her scheduled shifts because she received a test for COVID-19, a test which ultimately displayed a negative result. Ex. 1 at 120:14-123:1.

13. During the time she was out awaiting her COVID-19 test results, Human Resources Manager Joan Whitley informed Plaintiff that she needed to follow LaSalle's No Call-No Show Policy and call her supervisor every morning to inform her supervisor if she would be absent. Ex. 1 at 128:24-129:24, 133:11-134:7.

---

[4] Attached as **Exhibit 1-16** is a true and correct copy of LaSalle's General Rules of Conduct.

[5] Attached as **Exhibit 1-17** is a true and correct copy of Plaintiff's handbook acknowledgment. Attached as **Exhibit 1-18** is a true and correct copy of the No Call-No Show Policy acknowledged by Plaintiff on October 3, 2019. Attached as **Exhibit 1-19** is a true and correct copy of the No Call-No Show Policy acknowledged by Plaintiff on May 3, 2016. Attached as **Exhibit 1-20** is a true and correct copy of the No Call-No Show Policy acknowledged by Plaintiff on June 11, 2014.

[6] Attached as **Exhibit 1-22** is a true and correct copy of a Letter of Correction regarding Plaintiff's June 9, 2020 tardiness. Attached as **Exhibit 1-23** is a true and correct copy of a Letter of Correction regarding Plaintiff's June 14, 2020 tardiness. Attached as **Exhibit 1-24** is a true and correct copy of a Letter of Correction regarding Plaintiff's June 17, 2020 tardiness. Attached as **Exhibit 1-25** is a true and correct copy of a Letter of Correction regarding Plaintiff's June 18, 2020 tardiness. Attached as **Exhibit 1-26** is a true and correct copy of Plaintiff's timecard report showing late clock-ins on June 9, 14, 17, and 18, 2020.

#111903479v2

14. Plaintiff did not call in or attend work the following week, allegedly because Ms. Brown told her she did not need to in an undocumented conversation. Ex. 1 at 135:25-137:1, 142:1-5, 186:11-193:14; Ex. 1-29; Ex. 1-30; Ex. 1-31; Ex. 1-32.[7]

15. On July 2, 2020, Plaintiff's employment status was changed from full-time to PRN. Ex. 1 at 149:11-13.

16. Warden David Paulk had the ultimate authority to terminate and issue discipline up to termination, and decisions about termination were made in consultation with Regional Director James McCormick. Ex. 3[8] at 23:9-24:10; Ex. 5[9] at 32:1-6.

17. Warden Paulk made the decision to change Plaintiff's status from full-time to PRN, in consultation with Mr. McCormick who agreed with and supported the decision. Ex. 3 at 28:1-16; Ex. 5 at 59:21-60:5; Ex. 6,[10] ¶ 2.

18. Warden Paulk made the decision to change Plaintiff's status from full-time to PRN based on her attendance issues. Ex. 5 at 60:6-61:9; Ex. 6, ¶ 3.

19. Although termination was warranted based on Plaintiff's attendance history, Warden Paulk and Mr. McCormick instead decided to place her on PRN status in hopes of

---

[7] Attached as **Exhibit 1-29** is a true and correct copy of email correspondence between Shanise Bell and Joan Whitley, dated June 24, 2020. Attached as **Exhibit 1-30** is a true and correct copy of email correspondence between Shanise Bell and Joan Whitley, dated June 25, 2020. Attached as **Exhibit 1-31** is a true and correct copy of email correspondence between Joan Whitley and Frank Albright, dated July 1, 2020. Attached as **Exhibit 1-32** is a true and correct copy of email correspondence between Joan Whitley, Lakeysia Brown, and Shanise Bell, dated June 27-28, 2020.

[8] Attached as **Exhibit 3** is a true and correct copy of excepts of the transcript of the deposition of LaSalle, through its corporate representative, James McCormick.

[9] Attached as **Exhibit 5** is a true and correct copy of excerpts of the transcript of the deposition of Warden David Paulk.

[10] Attached as **Exhibit 6** is the Declaration of David Paulk.

#111903479v2

continuing to use her nursing skills and ability to cover shifts. Ex. 3 at 29:12-30:4; Ex. 5 at 61:10-18.

20. At the time Mr. McCormick participated in the decision to change Plaintiff's status from full-time to PRN, he was unaware of any of her alleged complaints. Ex. 4[11] at 17:23-18:5.

21. At the time Warden Paulk made the decision to change Plaintiff's status from full-time to PRN, he was unaware of any of her alleged complaints regarding COVID-19-related procedures or alleged improper medical procedures performed on female detainees. Ex. 5 at 59:9-12, 61:19-22, 65:20-66:9; Ex. 6, ¶¶ 4-8.

22. Due to the necessity of ensuring that nursing shifts were covered in the height of a global pandemic, Warden Paulk would have made the same decision to change Plaintiff's status from full-time to PRN based on her attendance issues even if he *had* known about her alleged complaints. Ex. 6, ¶¶ 9-10.

23. On July 3, 2020, after her change in status from full-time to PRN, Plaintiff submitted a handwritten grievance to LaSalle. Ex. 1 at 117:17-118:5; Ex. 1-11.[12]

24. Plaintiff's July 3, 2020 grievance concerned the change to PRN status but made no mention of any alleged concerns or prior complaints related to COVID-19 policies or procedures at ICDC or related to allegedly unauthorized medical procedures. Ex. 1 at 119:17-120:17, 123:18-25; Ex. 1-11.

---

[11] Attached as **Exhibit 4** is a true and correct copy of excerpts of the transcript of the deposition of James McCormick in his individual capacity.

[12] Attached as **Exhibit 1-11** is a true and correct copy of Plaintiff's handwritten grievance.

#111903479v2

25. Instead, Plaintiff's grievance focused on alleged friendships and familiar relationships between other members of staff and supervision of the nursing unit at ICDC. Ex. 1 at 124:8-125:12; Ex. 1-11; Ex. 2 at 40:10-25, 44:18-45:18.

26. Before her change in status from full-time to PRN, Plaintiff removed three detainees' medical records from ICDC despite knowledge that such actions violated the detainees' HIPAA rights and without permission from the detainees whose medical records she removed from the premises. Ex. 1 at 97:14-99:25, 253:24-255:5.

27. Warden Paulk would have immediately terminated Plaintiff's employment had he learned at the time that she removed detainee medical records from the facility without authorization. Ex. 6, ¶ 11.

28. After LaSalle transitioned Ms. Wooten from a full-time position to a PRN position, she did not apply for any subsequent full-time positions despite seeing openings for full-time positions. Ex. 1 at 42:20-43:7; Ex. 2 at 54:25-55:6.

29. LaSalle does not offer open positions to internal candidates unless those candidates apply for the open positions and complete an interview process. Ex. 2 at 32:8-19, 33:25-34:10.

30. LaSalle repeatedly attempted to schedule Plaintiff for PRN shifts, and Plaintiff repeatedly refused to provide availability or accept the work offered, ultimately leading LaSalle to no longer attempt to schedule her. Ex. 2 at 27:11-29:8, 35:18-36:10.

31. On July 22, 2020, after Plaintiff's transition from full-time to PRN, LaSalle attempted to schedule Plaintiff for nearly full-time shifts throughout late July and early August of 2020. Ex. 1 at 194:13-196:24; Ex. 1-33; Ex. 1-34.[13]

---

[13] Attached as **Exhibit 1-33** is a true and correct copy of email correspondence between Human Resources Manager Joan Whitley and Health Services Administrator Lakeysia  Brown regarding Plaintiff's schedule. Attached

6

32. Plaintiff originally confirmed availability to work on July 24, 25, and 26, 2020, before stating she was unavailable after unrelated modifications to her proposed schedule. Ex. 1 at 200:18-211:20.[14]

33. On August 5, 2020, Ms. Bell emailed Plaintiff asking for her availability for the month of September; Plaintiff did not respond to this email. Ex. 1 at 230:5-24; Ex. 1-40.[15]

34. On August 13, 2020, Ms. Bell emailed Plaintiff offering shifts throughout late August and reminding Plaintiff to provide her availability to work during the month of September. Ex. 1 at 213:21-214:14; Ex. 1-37.[16]

35. On August 14, 2020, Ms. Bell emailed Plaintiff offering shifts available in September, and Plaintiff did not respond to inform Ms. Bell of her availability. Ex. 1 at 217:14-220:10; Ex. 1-38.[17]

36. Throughout her time as a PRN employee, Plaintiff never provided available dates to work in response to LaSalle's repeated requests. Ex. 1 at 225:16-228:21; Ex. 1-39.[18]

---

as **Exhibit 1-34** is a true and correct copy of text message correspondence between Ms. Brown, Director of Nursing Shanise Bell, and Plaintiff.

[14] Plaintiff alleges in the cited testimony a grand conspiracy between Ms. Whitley, Ms. Bell, and Ms. Brown to deny Plaintiff hours LaSalle asked Plaintiff to work, but she has been unable to provide any evidence to corroborate her conspiracy theory. *See* Ex. 1 at 212:2-213:20.

[15] Attached as **Exhibit 1-40** is a true and correct copy of email correspondence from Ms. Bell to Plaintiff dated August 5, 2020.

[16] Attached as **Exhibit 1-37** is a true and correct copy of email correspondence from Ms. Bell to Plaintiff dated August 13, 2020. Plaintiff, once again, alleges a grand conspiracy in which Ms. Bell would state one thing in writing, *i.e.*, the offer of available shifts, before calling Plaintiff or texting her to "retract" the offered shifts. Plaintiff has no evidence or documentation supporting this conspiracy theory and testified that she deleted relevant text messages that would demonstrate the conspiracy. *See* Ex. 1 at 214:15-215:22.

[17] Attached as **Exhibit 1-38** is a true and correct copy of email correspondence from Ms. Bell to Plaintiff dated August 14, 2020.

[18] Attached as **Exhibit 1-39** is a true and correct copy of email correspondence between Ms. Bell and Plaintiff dated August 7, 2020.

#111903479v2

37. Plaintiff never provided available dates to work in October, November, or December of 2020, despite remaining on PRN status. Ex. 1 at 238:23-239:3.

38. On September 8, 2020, Plaintiff executed a verified declaration outlining her alleged complaints against ICDC/Defendants. Ex. 1 at 105:1-106:1; Ex. 1-10.[19]

39. Prior to Plaintiff's September 8, 2020 complaint, LaSalle management had no knowledge of any complaints by Plaintiff related to COVID-19 violations, PPE deficiencies, and/or detainee medical treatment. Ex. 2 at 36:19-37:3.

40. Just after making her September 2020 complaint, for the end of 2020 into 2021, Plaintiff resided in a series of hotels in Atlanta for nine months with her four children. Ex. 1 at 32:6-24; 33:10-23; 34:6-35:1.

41. The drive to the ICDC facility from Atlanta was approximately three hours each way, and Ms. Wooten was living with four children, one of whom is disabled. Ex. 1 at 39:7-16.

42. During her time living in Atlanta, Plaintiff did not apply to any nursing jobs and was living "in hiding." Ex. 1 at 55:9-23.

*{Signature block on next page}*

---

[19] Attached as **Exhibit 1-10** is a true and correct copy of Plaintiff's OIG complaint and verified declaration.

8

Respectfully submitted,

*/s/P.J. Kee*
David J. Forestner (GA Bar No. 269177)
dforestner@joneswalker.com
Deirdre C. McGlinchey (LA Bar No. 24167)
Admitted *\*pro hac*
Jacob J. Pritt (LA Bar No. 38872)
Admitted *\*pro hac*
jpritt@joneswalker.com
PJ Kee (LA Bar No. 34860)
Admitted *\*pro hac*
pkee@joneswalker.com
JONES WALKER LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170-5100
Telephone: 504-582-8000

## **CERTIFICATE OF SERVICE**

I hereby certify that on this June 29, 2026, a true and correct copy of the foregoing has been served by CM/ECF electronic filing.

*/s/P.J. Kee*

9

#111903479v2