30(b)(6) James McCormick
April 21, 2026

**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

VALDOSTA DIVISION


                    Civil Action No. 7:22-cv-00148-WLS


*************************************

DAWN WOOTEN,

                Plaintiff,

v.

LASALLE SOUTHEAST, LLC, and

DAVID PAULK, an individual,

                Defendants.

*************************************




        30(b)(6) DEPOSITION OF:  LASALLE SOUTHEAST, LLC

                BY:  JAMES MCCORMICK

                APPEARING REMOTELY FROM

                New Orleans, Louisiana

                April 22, 2026       a.m.


By Roberta Ebhert

Guardian

APPEARING REMOTELY FROM MARION COUNTY, FLORIDA

30(b)(6) James McCormick
April 21, 2026

Page 2

REMOTE APPEARANCES:

Representing the Plaintiff:

      T.M. GUYER AND AYERS & FRIENDS, PC
      116 Mistletoe Street
      Medford, OR 97501
      BY:  THAD M. GUYER, ESQ.
      202.417.3910   thad@guyerayers.com

Representing the Defendants:

      JONES WALKER LLP
      201 St. Charles Avenue, Suite 5100
      New Orleans, LA 70170
      BY:  P.J. KEE, ESQ.
      504.582.8643   pkee@joneswalker.com


In attendance:

Kristoffer Bonilla:  Louisiana Notary Public
Stephani Ayers, Government Accountability Project
Kristin Berg, Government Accountability Project
Diana Christian, Government Accountability Project
Marianne Fichtel, Government Accountability Project
Jared Guyer, Government Accountability Project
Jacob Pritt, Jones Walker, LLP

30(b)(6) James McCormick
April 21, 2026

Page 23

to either tell you just orally or did you expect that he would put it in writing?

A.    He was free to tell me orally.

Q.    All right.  Thank you.  If Warden Paulk was having problems with any of the LaSalle Southeast staff, what was your expectation as to whether he would inform you of that or not?

A.    Can you more clearly define "problems"?

Q.    Yeah.  Sure.  So I take it -- I mean, if it's some little thing, he doesn't want to bother you.  But if, for example, he learned that some staff member was stealing from the facility, would you expect him to tell you about that?

A.    Yeah. Warden Paulk had disciplinary authority at the facility up to the point of termination.  And any offense or disciplinary infraction that could result in a recommendation for termination, he would contact me and the two of us would consult, talk about it, and come to the best resolution to the issue on our behalf as well as the employee's behalf.

Q.    And you said that was for matters of termination, is that what you said?

A.    Below termination, Warden Paulk had the authority.  He had the authority including termination, but he would include me on any conversations about termination.

30(b)(6) James McCormick
April 21, 2026

Page 24

And we would discuss that and, as I said, make a determination on what was best for the employee and the company.

Q.    Okay.  So let's take, for example, if Warden Paulk decided he was going to demote Nurse Wooten, did you expect he -- that he would discuss that with you?

A.    He did discuss that with me, yes.

Q.    But was that part of your expectation that he would do that?

A.    Yes, sir.

Q.    Okay.  Thank you.  Okay.  11A:  As to the official testimony of the defendant, LaSalle Southeast, with you as his representative, referring still to Topic 2, did you receive any regular written reports from Warden Paulk on compliance issues, staffing concerns or employee performance?  In other words, what I'm asking here, is there some sort of paperwork he was required to fill out every two weeks to apprise you of compliance issues, staffing concerns or employee performance, or was it just as issues arose?

MR. KEE:  Object to form.  You can answer.

A.    Warden Paulk would provide me with the weekly facility operations summary, once a week to -- just to keep me updated and advised.

Q.    Okay.  And I'll skip 11B because I think it's

30(b)(6) James McCormick
April 21, 2026

Page 28

Q.   Okay.  Thanks.  All right.  So we'll move on to 15:  As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 3, who, within the corporation, held final decision-making authority to change Dawn Wooten's status from full-time to PRN, effective July 2nd of 2020?

A.   That's Warden Paulk, in consultation with myself.

Q.   Okay.  Thank you.  Question 16:  As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 3, did you, in your official capacity, approve, review or otherwise participate in the decision to change Dawn Wooten's status from full-time to PRN effective July 2nd of 2020?

A.   Yes, I did, and I agreed with that decision.

Q.   All right.  Thanks.  And then Question 17:  As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 4, what is the corporation's position on whether any corporate-level review or approval occurred before the series of letters of correction issued to Dawn Wooten in June of 2020 or before July 2nd of 2020 reprimand and PRN demotion?

MR. KEE:  Object to form.  You can answer.

30(b)(6) James McCormick
April 21, 2026

Page 29

A.    There was no discussion prior to the reprimand.

Q.    Thank you.  All right.  Well, P.J., if I got it right, then that completes the 30(b)(6) --

MR. KEE:  Yeah.

Q.    -- deposition?

MR. KEE:  Thad, I just want to ask one question --

MR. T. GUYER:  Okay.

MR. KEE:  -- real quick.

EXAMINATION BY:  MR. KEE

Q.    Okay.  You were asked, Mr. McCormick, about your involvement in the decision making or the ultimate decision to have Ms. Wooten change from full-time to PRN.  Can you describe more fully what it was that was told to you, or what the recommendation was originally when you were presented with Warden Paulk's -- what he was bringing to you relating to Dawn Wooten?

A.    Based on the disciplinary infraction and the ensuing investigation, which included her prior counseling sessions with her supervisor, the recommendation was made to Warden Paulk for termination.  And Warden Paulk and I discussed that.  And due to the dynamics of COVID and shortage of nurses and the crisis that everyone was in, we chose to transition that employee over to a PRN status in

30(b)(6) James McCormick
April 21, 2026

Page 30

the hopes that we could gain some use of her nursing skills to cover shifts; no matter what little or how much we could get, it was better than nothing. And we felt it was the best option for her and the company.

MR. KEE: I have no further questions.

MR. T. GUYER: Okay. Thank you. And I have no follow-up on that. All righty. So from this point on, I can dispense with that big, long -- official testimony thing and just kind of, like, talk like real people.

FURTHER EXAMINATION BY: MR. T. GUYER

Q.     **So have you ever met or spoken with Dr. Mahendra Amin?**

MR. KEE: Before we start, I -- and I'm sorry to cut you off Thad, but, logistically, on the transcript, Court Reporter, this will be Mr. McCormick's personal deposition from here on.

THE GUARDIAN: Okay.

MR. KEE: So we'll get two separate transcripts, I think. Right, Thad? I mean, you agree with that?

MR. T. GUYER: Nicely stated. And what a great idea that is, two separate transcripts.

THE GUARDIAN: So, actually, we -- yeah, we didn't have that initially. If you would want to maybe take a five-minute break, we'd have to set up another one for a

30(b)(6) James McCormick
April 21, 2026

Page 32

C E R T I F I C A T E

I, ROBERTA EBHERT, do hereby certify that JAMES MCCORMICK, the witness whose testimony is hereinbefore set forth, was duly sworn remotely on April 22, 2026.

The oath was administered by Kristoffer Bonilla, a Notary Public commissioned in the State of Louisiana.

I further certify that the foregoing transcript is a true and accurate record of the testimony provided, to the best of my knowledge and ability.

I further certify that I am not a relative or employee of any of the parties to this action, nor a relative or employee of counsel for any of the parties, nor am I financially interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 23rd day of April, 2026.

_____
Roberta Ebhert,
Guardian
Certified Deposition
Reporter (CDR)