**EXHIBIT**

**7**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

DAWN WOOTEN,

     *Plaintiff,*

v.                           CIVIL ACTION NO. 7:22-cv-00148-WLS

LASALLE MANAGEMENT COMPANY,
L.L.C, LASALLE SOUTHEAST, LLC,
and DAVID PAULK, an individual,
     *Defendants.*

_____

## PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

### PRELIMINARY STATEMENT

Plaintiff Dawn Wooten ("Ms. Wooten"), by and through her undersigned counsel, hereby responds and objects to Defendants LaSalle Management Company, L.L.C, LaSalle Southeast, LLC, and David Paulk's First Set of Interrogatories as follows:

Plaintiff provides these responses to Defendants' First Set of Interrogatories, pursuant to Federal Rules of Civil Procedure 33 and 26, the Local Rules of the United States District Court for the Middle District of Georgia, this Court's scheduling order, and federal practice standards. These responses are based on reasonable inquiry and will be supplemented as required by Federal Rule of Civil Procedure 26(e).

These responses are made on the basis of information presently available to Plaintiff upon reasonable investigation. Because discovery is incomplete, there may be further facts and/or documents affecting Plaintiff's responses, of which Plaintiff is presently unaware despite reasonable investigation and inquiry. Plaintiff reserves the right to modify its Responses with such relevant information as it may subsequently discover.

Plaintiff's responses are made without prejudice to its using or relying on at trial subsequently discovered information or documents omitted from these responses as a result of good faith oversight, error or mistake. Plaintiff's responses to Defendants' discovery requests are based upon the information currently available to Plaintiff after a diligent inquiry and such responses

1



EXHIBIT

2

Wooten

PENGAD 800-631-6989

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

DAWN WOOTEN,

     *Plaintiff,*

v.                                 CIVIL ACTION NO. 7:22-cv-00148-WLS

LASALLE MANAGEMENT COMPANY,
L.L.C, LASALLE SOUTHEAST, LLC,
and DAVID PAULK, an individual,
     *Defendants*.

_____

### PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

### PRELIMINARY STATEMENT

Plaintiff Dawn Wooten ("Ms. Wooten"), by and through her undersigned counsel, hereby responds and objects to Defendants LaSalle Management Company, L.L.C, LaSalle Southeast, LLC, and David Paulk's First Set of Interrogatories as follows:

Plaintiff provides these responses to Defendants' First Set of Interrogatories, pursuant to Federal Rules of Civil Procedure 33 and 26, the Local Rules of the United States District Court for the Middle District of Georgia, this Court's scheduling order, and federal practice standards. These responses are based on reasonable inquiry and will be supplemented as required by Federal Rule of Civil Procedure 26(e).

These responses are made on the basis of information presently available to Plaintiff upon reasonable investigation. Because discovery is incomplete, there may be further facts and/or documents affecting Plaintiff's responses, of which Plaintiff is presently unaware despite reasonable investigation and inquiry. Plaintiff reserves the right to modify its Responses with such relevant information as it may subsequently discover.

Plaintiff's responses are made without prejudice to its using or relying on at trial subsequently discovered information or documents omitted from these responses as a result of good faith oversight, error or mistake. Plaintiff's responses to Defendants' discovery requests are based upon the information currently available to Plaintiff after a diligent inquiry and such responses

1

should not be construed to necessarily reflect all facts or documents that relate to such discovery requests. These responses therefore should not be deemed and do not constitute a waiver of Plaintiff's right to rely on additional or different facts or information at trial.

The information supplied in these responses is not based solely upon the knowledge of the executing party, but includes knowledge of the party's agents, representatives, and attorneys, unless privileged. The word usage and the sentence structure is that of the attorneys who, in fact, prepared these Responses and said language does not purport to be the exact language of the executing party.

Each objection below is specific to the particular Interrogatory. Where any information is withheld based on privilege, protection, or privacy, a privilege log or explanation is provided as required by federal law and this Court's scheduling order.

Plaintiff reserves the right to amend or supplement these responses if additional non-privileged, responsive information becomes available or as required by Federal Rule of Civil Procedure 26(e).

*Plaintiff, however, has moved at least twice since 2020, and documents are believed to be in various potential locations, including with relatives, and it will take additional time for her to locate them, and supplement these responses.*

## GENERAL OBJECTIONS

Plaintiff hereby incorporates the following General Objections into each specific response below without waiving her right to assert additional specific objections:

**1. Proportionality Objection:** Plaintiff objects to any interrogatory that is overly broad, unduly burdensome, vague, or seeks information that is not relevant to the claims or defenses in this action or proportional to the needs of the case, as set forth in Federal Rule of Civil Procedure 26(b)(1), considering the parties' relative access to information, resources, the importance of issues at stake, and whether the burden outweighs the likely benefit.

**2. Privilege Objection:** Plaintiff objects to interrogatories seeking information protected by attorney-client privilege, work product doctrine, common interest privilege, government cooperation confidentiality, or any other applicable privilege or immunity under federal or state law. Documents or information withheld on privilege grounds will be identified in a privilege log as required by Federal Rule of Civil Procedure 26(b)(5).

**3. Privacy Objection:** Plaintiff objects to interrogatories that impermissibly invade privacy rights protected by the First Amendment, medical privacy rights under HIPAA and other federal privacy statutes, or other constitutional provisions.

2

**4. Whistleblower Protection Objection:** Plaintiff objects to interrogatories seeking information that would compromise ongoing government cooperation, expose confidential sources, or create a chilling effect on protected whistleblowing activity.

**5. Temporal Objection:** Plaintiff objects to interrogatories seeking information from time periods not relevant to the claims and defenses in this action, specifically periods outside the Relevant Period for liability (October 1, 2019 - December 31, 2020) and mitigation (January 1, 2020 - present).

**6. Instructions Objection:** Plaintiff objects to the Instructions to the extent they seek to impose burdens on the Plaintiff that are different than, inconsistent with, or exceed those imposed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Georgia. Plaintiff responds to these Interrogatories to the extent that they are consistent with Plaintiff's rights and obligations under the Rules.

**7. Competency and Admissibility:** Plaintiff these Interrogatories subject to, without intending to waive, and expressly preserving any and all objections as to competency, relevancy, materiality, existence and admissibility of any of the documents and information sought by Defendants.

**8. Overbreadth Objection:** Plaintiff objects to these Interrogatories as unduly burdensome, overbroad, and inherently improper in that they seek an identification of "all facts," "all witnesses," "all evidence," or "all documents" concerning an issue. Courts have recognized that such requests are improper and exceed the scope of permissible discovery under Federal Rule of Civil Procedure 33.

**9. Supplementation:** Plaintiff's responses to these Interrogatories are based on information currently available to her after reasonable inquiry. Plaintiff reserves the right to supplement these responses as additional information becomes available pursuant to Federal Rule of Civil Procedure 26(e).

**10. Possession, Custody, and Control:** Plaintiff's responses are limited to information within her possession, custody, or control after reasonable inquiry. Plaintiff cannot respond regarding information exclusively within Defendants' possession, custody, or control.

**11. No Admission:** No response to any Interrogatory should be deemed an admission of the relevance, materiality, or admissibility of any response or information provided.

**12. No Waiver:** A response to an Interrogatory does not constitute a waiver of any privilege, protection, or immunity.

These General Objections apply to each Interrogatory and, for convenience, are not necessarily repeated in response to each Interrogatory but are incorporated into each response. The assertion

3

of the same, similar, or additional objections or the provision of partial responses to individual Interrogatories does not waive or modify any of the General Objections to any Interrogatory.

Plaintiff reserves the right to amend or supplement these responses in accordance with Federal Rule of Civil Procedure 26(e).

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:** From December 31, 2015 (five years preceding the Alleged Termination) to present, please state the name, address, and telephone number of each of your employer(s) or entities for which you have otherwise received compensation for services or work performed, the time period for which you were employed by or performed work for each, your position, whether you were classified as a fulltime, part-time, or as-needed employee, part-time or PRN, and rates of compensation.

**RESPONSE NO. 1:** Plaintiff objects to the temporal scope of this interrogatory as overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1). Subject to this objection and after reasonable inquiry, Plaintiff responds as follows:

**Employer:** LaSalle Southeast, LLC / Irwin County Detention Center, 132 Cotton Drive, Ocilla, GA 31774, Licensed Practical Nurse (LPN)
**Employment Periods:**
• 2010-2014: Full-time LPN (with intermittent employment elsewhere)
• Oct. 2019 - July 7, 2020: Full-time LPN, 36-40 hours/week
• July 7 - Dec. 31, 2020: PRN status, no assignments despite repeated notices of availability. Though nominally retained after July 2, 2020, Plaintiff received no assignments following protected disclosures and reasonably concluded she was constructively terminated as of Dec. 31, 2020.
**Compensation:** [Withheld for privacy]

**Employer:** Affinity Clinic 2225 Hwy 41N, Tifton, GA 31794 (LPN)
Employment Periods: 2012-2016
**Compensation:** [Withheld for privacy]

**Employer**: Wellpath (2021 to Aug 2024), 12 to 16 per day, 40-50 hours with overtime, work from home as verification nurse with company computer. Corporate Headquarters 6550 Carothers Parkway, Suite 500 Franklin, TN 37067
**Compensation:** [Withheld for privacy]

**Employer**: Southwell, 907 E. 18th Street Suite 260, Tifton, GA 31794
**Employment Periods:** (2024 to Jan. 28, 2025) (not retained after 120 day probationary period).
**Compensation:** [Withheld for privacy]

4

**Employer**: Greenleaf Behavioral Health Hospital, 2209 Pineview Dr, Valdosta,
**Employment Periods:** Started Aug 2025
**Compensation:** [Withheld for privacy]

Plaintiff is compiling additional employment records for this extended period and will supplement under Rule 26(e). Responsive information is withheld only to the extent protected by privilege, work product, privacy, or First Amendment rights. Plaintiff work through various employment and temp agencies for short periods of time.

**INTERROGATORY NO. 2:** Please state whether you have ever been terminated from employment from any job, the name of the company or individual, the dates of employment, your job title, the rate of pay, and describe the circumstances surrounding such termination.

**RESPONSE NO. 2:** Plaintiff objects to this interrogatory to the extent it seeks information outside the relevant period of this litigation. Subject to this objection and after reasonable inquiry, Plaintiff responds as follows:

See job information above in Response No. 1

**INTERROGATORY NO. 3:** Please describe with specificity every incident in which you complained about COVID-19 procedures at ICDC to the Director of Nursing, "Ms. Shanise Bell," as identified in Paragraph 40 of your Second Amended Complaint. In your description, please include the exact date and time when the alleged complaint occurred, the substance of the conversation, the precise response given by that individual, and the outcome of the conversation.

**RESPONSE NO. 3:** Plaintiff objects to this interrogatory to the extent it seeks "exact date and time" of conversations from early 2020, which is unduly burdensome and disproportionate. Subject to this objection and after reasonable inquiry, Plaintiff responds as follows:

- Late Mar./Early Apr. 2020 - Testing Denials: Plaintiff told DON Bell detainees with COVID-19 symptoms were denied testing, contrary to CDC guidance. Bell dismissed the concern, claiming detainees sought attention. No corrective action followed.
- Apr. 2020 - Test Results Shredding: Plaintiff reported to DON Bell that HSA Brown shredded ~45 COVID-19 test results without filing them. Bell acknowledged but took no action; results were missing from charts.
- Late Apr./May 2020 - Cold Medication Protocol: Plaintiff questioned why detainees with fevers were given OTC cold medication instead of tests. In Bell's presence, HSA Brown insisted they "only had colds," and Bell supported her. The practice continued.
- May/Jun. 2020 - PPE Distribution: Plaintiff raised concerns that N-95 masks were withheld from frontline staff. Bell disclaimed responsibility and told Plaintiff not to distribute PPE. When Plaintiff gave masks to nurses with damaged masks, she was reprimanded.

5

- Jun. 2020 - Failure to Inform Staff: Plaintiff complained that staff were not notified of COVID-19 exposures, including an incident where she had contact with three detainees who later tested positive. Bell said she did not want to cause alarm; the practice continued.

**INTERROGATORY NO. 4:** Please describe with specificity every incident in which you complained about COVID-19 procedures or failures to comply with CDC guidelines at ICDC to Health Services Administrator,. "Lakesha Brown or Shanise Bell," of your Second Amended Complaint. In your description, please include the exact date and time when the alleged complaint occurred, the substance of the conversation, the precise response given by that individual, the identity of the witnesses of the communication and the outcome of the conversation.

**RESPONSE NO. 4:** Plaintiff objects to this interrogatory to the extent it seeks "exact date and time" of conversations from early 2020 and as duplicative of Interrogatory No. 3. Subject to these objections and after reasonable inquiry, Plaintiff responds as follows:

- Mid-Mar. 2020 - Testing Denials: Plaintiff told HSA Brown detainees with COVID-19 symptoms needed testing per CDC guidance. Brown dismissed concerns, saying detainees sought attention. Testing continued to be denied. (SAC ¶46)
- Late Mar./Early Apr. 2020 - Exam Room Hygiene: Plaintiff showed Brown blood left on an exam room floor, citing CDC/ICE standards. Brown said staff should clean up after themselves and she would not "babysit." No corrective action followed. (SAC ¶46, 52)
- Mid-Apr. 2020 - Test Results Shredding: Plaintiff saw Brown shred ~45 COVID-19 test results, which she claimed were "copies." Plaintiff later confirmed they were missing from patient files. (SAC ¶65)
- Late Apr./Early May 2020 - PPE Distribution: Plaintiff questioned why frontline staff received only surgical masks while leadership received N-95s. Brown said Warden Paulk had only provided surgical masks and staff must buy more. After HSA Cole intervened, staff received one N-95 each, to be reused indefinitely. (SAC ¶55-57)
- May 2020 - Medical Records Falsification: Plaintiff reported to Brown that staff shredded detainee requests and documented exams not performed. Brown responded "one day they will be caught." The practice continued. (SAC ¶50)

**INTERROGATORY NO. 5:** Please describe with specificity why you believe your Alleged Termination occurred on December 31, 2020. Include specific actions by Defendants which caused you to believe you were terminated from employment, the date of such actions, and the description of these actions.

**RESPONSE NO. 5:** Subject to objections and after reasonable inquiry, Plaintiff states that her constructive discharge determination was based on the following sequence of adverse employment actions:

6

- July 2, 2020 - Demotion: After objecting to a reprimand regarding sick-call reporting, Plaintiff was demoted from full-time to PRN status despite medical notes and assurances from HSA Brown. This immediately reduced her hours and income. (SAC ¶¶92-93)
- July-Sept. 2020 - No Assignments: Plaintiff received no work assignments for 60 days despite continued availability and qualifications. (SAC ¶94)
- Sept. 3, 2020 - Notice of Availability: Plaintiff formally notified Defendants of her availability, including for October shifts. (SAC ¶101)
- Sept. 8, 2020 - OIG Complaint: Plaintiff filed a whistleblower complaint with DHS OIG regarding COVID-19 mismanagement. (SAC ¶¶14, 80, 94)
- Fall 2020 - Posted Openings: Defendants continued posting LPN positions while providing Plaintiff no assignments. (SAC ¶103)
- Sept-Dec. 2020 - Ongoing Disclosures: Plaintiff sent a Sept. 17 letter to Congress and made public disclosures. Defendants still withheld work. (SAC ¶¶83-84, 97-98)
- Oct. 2020 - No Assignments: Despite formal October notice, Plaintiff received none. (SAC ¶101)
- Dec. 31, 2020 - Conclusion of Discharge: After six months without work, despite ongoing postings and her qualifications, Plaintiff reasonably concluded she was constructively discharged. (SAC ¶102)
- Post-Dec. 2020 - Fiction of Employment: Defendants issued letters verifying her "employment" but provided no work or income, supporting the inference of deliberate termination. (SAC ¶¶23, 103)

**INTERROGATORY NO. 6:** Please identify the specific ICE, BRNA, and CDC guidelines you claim were being violated by Defendants, a description of the noncompliance, and in what manner and to whom you reported such failure of compliance.

**RESPONSE NO. 6:** Plaintiff objects that this Interrogatory is overbroad, disproportionate, and seeks legal conclusions regarding "guidelines." Plaintiff also objects that "BRNA" is vague; she understands it to mean Georgia Board of Nursing and national nursing standards. Subject to these objections and after reasonable inquiry, Plaintiff responds as follows:

I. ICE PBNDS

- §4.3 Medical Care: Shredding detainee exam requests and false documentation (HSA Brown, May-July 2020; DON Bell). (SAC ¶50)
- §4.3 Hygiene: Exam rooms unclean, blood left on floors (Brown, Bell). (SAC ¶35, 51-52)
- §4.3 Hygiene Supplies: No soap or menstrual products provided (Brown: "no control"). (SAC ¶53)
- §6.2 Grievances: No assistance for detainees with language barriers; staff who raised concerns reprimanded. (SAC ¶73-76)

7

II. CDC COVID-19 Correctional Guidance

- Testing: Symptomatic detainees denied tests; given OTC meds (Brown, Bell). (SAC ¶46-49)
- Test Results: ~45 shredded by Brown, not in files. (SAC ¶65)
- PPE: N-95s reserved for leadership; frontline staff underprotected (Brown, Cole, Bell). (SAC ¶54-58; Order, 9/10/24, p.6)
- Training: No PPE training provided; Brown said staff "should already know." (SAC ¶59)
- Social Distancing: Staff reprimanded for following CDC guidance (Brown, Cole). (SAC ¶63)
- Isolation: COVID-positive/symptomatic detainees not separated. (Brown, Bell). (SAC ¶63)
- Exposure Notification: Staff not told of detainee positives; Brown: didn't want to "cause alarm." (SAC ¶64)
- Staff Protocols: Symptomatic staff told to work despite CDC isolation rules (Brown; also experienced by Plaintiff). (SAC ¶67-70, 86-87)
- Temperature Screening: Improper use/sanitation of thermometers; Brown disclaimed responsibility. (SAC ¶61-62)

III. Additional Healthcare Standards

- Informed Consent: Women underwent gynecological procedures without informed consent; Plaintiff confirmed via chart reviews. (Reported to Bell; another nurse said "not to touch that." SAC ¶71-72)

External Reporting: Plaintiff reported these violations to DHS OIG (Sept. 8, 2020), DHS CRCL (Sept. 2020), ICE Atlanta Field Office (Sept. 2020), both chambers of Congress (Sept. 17, 2020), and Project South/advocacy organizations (Sept. 2020).

**INTERROGATORY NO. 7:** Please describe all facts which support your statement that Defendant David Paulk "was aware of all the violations and complaints by staff," as alleged in Paragraph 45 of your Second Amended Complaint, and which specific complaints you made of which he was aware.

**RESPONSE NO. 7**: Plaintiff objects to this Interrogatory as overbroad, disproportionate, and potentially chilling to whistleblower activity. Subject to these objections and after reasonable inquiry, Plaintiff responds as follows:

- Chain of Command: Complaints to HSA Brown and DON Bell were required to be documented and forwarded to Warden Paulk; DHS/ICDC policy required written reports discussed at management meetings he attended. (SAC ¶45)

8

- Management Style: Paulk was known as a hands-on administrator who kept informed about facility operations. Brown and Bell did not conceal staff concerns from him. (SAC ¶45)
- Memoranda: Paulk issued memoranda on issues Plaintiff raised, minimizing problems but confirming his awareness. These created a "false appearance of compliance" during inspections. (SAC ¶85)
- PPE Control: Paulk personally controlled N-95 mask distribution, keeping supplies in his office. When HSA Cole requested masks in April 2020, it confirmed Paulk's knowledge of shortages raised by Plaintiff. (SAC ¶57)
- Direct Reprimand (July 2, 2020): Plaintiff confronted Paulk about a reprimand while awaiting COVID-19 test results. Paulk escalated discipline to demotion, reflecting awareness of her prior complaints. (SAC ¶92, 100)
- Retaliatory Actions: Paulk decided to issue a reprimand, demote Plaintiff to PRN, assign no hours, and effectively terminate her employment. These actions show his knowledge of her disclosures. (SAC ¶26; Court Order 9/10/24 at 19)
- HR Confirmation: HR Director Joan Whitley told Plaintiff to route complaints to HSA Brown, ensuring Paulk's awareness. (SAC ¶85)
- Court Recognition: The Court has already held that Plaintiff's allegations permit the inference that Paulk knew of her disclosures. (Order 9/10/24 at 19) (2024 to Jan. 28, 2025) (not retained after 120 probationary period).

Specific complaints Paulk was aware of include: inadequate testing, insufficient PPE, improper sanitation, failure to isolate COVID-positive detainees, shredding/falsification of medical records, lack of informed consent for gynecological procedures, and lack of staff training on COVID-19 protocols.

**INTERROGATORY NO. 8:** Please identify the specific detainees who you allege to have been affected by Defendants' "denying medical care by falsely documenting or reporting exams as performed," what records or other information you used to verify each detainee was subject to this, the substance of what care was denied and in what manner you reported this to HSA Brown, as alleged in Paragraph 50 of your Second Amended Complaint.

**RESPONSE NO. 8:** Plaintiff objects on the grounds that this interrogatory seeks identification of specific immigrant detainees and medical conditions, violating privacy, HIPAA, and confidentiality obligations. Disclosure could expose individuals to harm or retaliation. Plaintiff further objects that the request is disproportionate, as this case concerns whistleblower retaliation, not individual malpractice claims.

Subject to these objections and after reasonable inquiry, Plaintiff responds as follows:

- Observed Pattern (Oct. 2019 - July 2020): Medical requests were denied through shredding and false documentation.

- Plaintiff observed nurses shredding blue medical request forms.
- Compared sick call logs with actual requests and found discrepancies.
- Reviewed charts showing vitals documented for patients not examined.
- Confirmed with detainees that documented exams had not occurred.
- Types of Care Denied: COVID-19 testing, chronic care follow-up, pain evaluations, treatment for skin/infections, medication refills, and mental health assessments.
- System Issues: Paper request forms were often shredded; electronic submissions, harder to eliminate, sometimes remained as records.
- Reports to HSA Brown:
  - May 2020 - Plaintiff reported shredding of medical requests; Brown dismissed concerns, saying staff "will be caught one day."
  - July 2020 - Plaintiff again reported, citing examples of exams documented but never performed. Brown took no corrective action.

Plaintiff can provide specific detainee information she believes she has in various locations, but she has moved at least twice since 2020. Plaintiff believes she may have some copies of documents or medical records of detainee, and will try to find them,

**INTERROGATORY NO. 9:** State all facts in support of your statement that you spoke with Ms. Brown, or any other LaSalle representative, about whether you were required to call in for each missed shift during your COVID-19 screening period, including the method of communications, the contents of the communication, the date and time of the communication, the details of Ms. Brown's response and the witnesses who can confirm these communications.

**RESPONSE NO. 9:** Plaintiff objects that this Interrogatory is overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1). Subject to these objections and after reasonable inquiry, Plaintiff responds:

- June 25, 2020 - Conversation with HSA Brown: Plaintiff informed Brown she had COVID-19 symptoms, was tested June 22, and had doctor's notes excusing her until results arrived. Brown told her daily sick-call reports were unnecessary since management was already informed. (SAC ¶88)
- June 25, 2020 - Call with HR (Joan Whitley): Whitley instructed Plaintiff she must report in "sick" each day, despite knowing she was in quarantine. Plaintiff relayed Brown's contrary instruction; Whitley insisted on daily calls. (SAC ¶88)
- June 25, 2020 - Second Conversation with Brown: Plaintiff reported Whitley's directive. Brown reiterated that daily calls were unnecessary, directly contradicting HR. (SAC ¶88)
- June 29, 2020 - Follow-up with HR: Plaintiff notified Whitley her COVID-19 test was negative and confirmed return for July 1 shift. (SAC ¶89)

- July 2, 2020 - Reprimand: At a disciplinary meeting attended by Deputy Warden Albright, Brown falsely stated she had told Plaintiff to call in daily. This contradicted her prior assurances. (SAC ¶91)
- Supporting Documentation: Plaintiff had provided two doctor's notes (June 22, 2020) excusing her until asymptomatic and test results returned. These notes were not added to her file. (SAC ¶93)

Plaintiff followed her supervisor Brown's explicit instructions. The July 2 reprimand, based on Brown's false statements, was used as a pretext for her demotion to PRN status.

**INTERROGATORY NO. 10:** Please identify all individuals, federal or state agencies, newspapers, radio, and television media, or other third parties excepting any communications with your counsel subject to the attorney client privilege, who you spoke with about the filing and context of your OIG Complaint, including your supplemental complaints, and the contents thereof, of your Second Amended Complaint. Please list the names of all individuals who have knowledge of those facts, including name, physical address and email address, the dates of the communications, the contents of the communications and whether these contents were published.

**RESPONSE NO. 10:** Plaintiff objects that this Interrogatory is overbroad, disproportionate (Fed. R. Civ. P. 26(b)(1)), and seeks information protected by whistleblower confidentiality, government investigative privilege, and First Amendment associational rights. Disclosure of extensive third-party contacts would be unduly burdensome and beyond the claims at issue.

Subject to these objections and after reasonable inquiry, Plaintiff responds:

- **Federal Agencies:**
  - DHS OIG - Initial complaint Sept. 8, 2020; supplemental filings Dec. 12 & Dec. 20, 2022. OIG confirmed exhaustion of remedies on Aug. 14, 2023.
  - DHS CRCL - Received disclosures Sept. 2020.
  - ICE Atlanta Field Office - Received disclosures Sept. 2020.
- **Congressional Communications:**
  - Sept. 17, 2020 letter to both chambers of Congress.
  - Follow-up communications with House Homeland Security and Oversight Committees and members including Reps. Thompson, Maloney, Rice, Raskin, and Senators Merkley and Sinema.
- **Advocacy Organizations:**
  - Project South and allied groups - Collaborated on DHS OIG/CRCL complaints, incl. joint filing Sept. 14, 2020.
- **Media Outlets:**
  - Plaintiff's disclosures reported by major outlets including MSNBC, NPR, CBS, *NY Times*, *Washington Post*, *Guardian*, *LA Times*, *Business Insider*, Fox News, *USA Today*, *WSJ*, *Intercept*, *New Yorker*, *Harpers*, ABC, BBC, CNN, Forbes, among others.

• Plaintiff does not maintain reporter-specific records; publications are publicly available.

**INTERROGATORY NO. 11:** State all facts in support of your statement that you were "prevented by [your] chain of command rules from sharing [your] concerns directly with Warden Paulk" and that Warden Paulk did not address those problems. Specifically, describe how you have personal knowledge that Warden Paulk became aware of the complaints that you allege to have made and identify the specific "memoranda on the issues" that he issued.

**RESPONSE NO. 11:** Plaintiff objects that this Interrogatory is overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1). Subject to these objections and after reasonable inquiry, Plaintiff responds:

- Chain of Command Policy: ICDC required staff to route concerns to supervisors (HSA Brown, HSA Cole, DON Bell) rather than directly to the Warden. HR Director Joan Whitley confirmed in April 2020 that Plaintiff must bring concerns to Brown, assuring they would be passed to Warden Paulk. (SAC ¶85)
- Reinforcement by Supervisors: Brown and Bell repeatedly told Plaintiff bypassing the chain of command would be treated as insubordination. Plaintiff observed other staff disciplined for doing so.
- Reporting Procedures: ICDC policy required supervisors to document and forward staff complaints to Paulk. Brown and Bell told Plaintiff that issues she raised had been or would be discussed with "management" or "leadership," understood to include Paulk. (SAC ¶45)
- Direct Encounter (July 2, 2020): Plaintiff objected directly to Paulk about her reprimand. His familiarity with her concerns and immediate escalation to demotion demonstrated knowledge of her prior complaints. (SAC ¶92, 100)
- Management Meetings: Bell informed Plaintiff her COVID-19 concerns were on agendas of regular management meetings attended by Paulk, Brown, and supervisory staff.
- Memoranda by Paulk (2020):
  • April - PPE Memo: Downplayed shortages despite Plaintiff's complaints.
  • May - Social Distancing Memo: Ostensibly encouraged distancing while staff were reprimanded for doing so.
  • June - Staff Testing Memo: Required daily call-ins while awaiting results, contradicting Brown's instructions and later used in Plaintiff's reprimand.
  Plaintiff does not possess these memoranda; they remain in Defendants' custody and should be produced.

**INTERROGATORY NO. 12:** Detail each and every date and time you observed ICDC medical staff shredding any medical records or denying medical care by falsely documenting or reporting exams as performed that actually had not been performed, how you became aware of such

12

information, the specifics of what medical records were shredded or denial of medical care and the details of each time and date you reported your allegations, as referenced in Paragraph 50 of the Complaint to Lakesha Brown.

**RESPONSE NO. 12:** Plaintiff objects that this Interrogatory is overbroad, disproportionate (Fed. R. Civ. P. 26(b)(1)), and seeks information implicating detainee privacy (HIPAA) and whistleblower-protected disclosures. Providing "each and every date and time" of incidents over a 10-month period would be unduly burdensome and risk compromising ongoing investigations.

Subject to these objections and after reasonable inquiry, Plaintiff responds:

1. Pattern (Oct. 2019-July 2020): Plaintiff observed repeated misconduct at ICDC, including:
   • Shredding of detainee medical request forms (often during night shifts).
   • False charting of examinations, vital signs, and medication administration not actually performed.
   • Shredding of ~45 COVID-19 test results.
2. Representative Incidents:
   • Apr. 2020: Observed nurse shredding blue request forms; reported to HSA Brown (dismissed).
   • Apr-May 2020: Found log entries showing patients seen; detainees confirmed they had not. False vitals documented. Reported to Brown.
   • May 2020: Witnessed nurse entering fictional vitals into charts; reported formally to Brown (no action).
   • May 2020: Saw Brown shred ~45 COVID-19 test results; confirmed missing in files; Brown claimed they were "copies."
   • June 2020: Found med records showing doses given when no meds were distributed; reported to Brown.
   • July 2020: Again saw nurse shredding medical requests; reported to Brown shortly before demotion.
3. Reports to HSA Brown: Plaintiff raised concerns verbally during shifts, in one-on-one meetings (May & July 2020), and in staff meetings. Brown responded dismissively, saying issues were staff's own "license problems" and advising Plaintiff not to concern herself.

Note on Specificity: Dates, numbers, and quotes reflect Plaintiff's best recollection from events over four years ago. These incidents and reporting are reflected in SAC ¶50.

**INTERROGATORY NO. 13:** Please list each and every occasion that you were offered a shift of work at the LaSalle Southeast detainee facility on or after July 2, 2020, the dates and times of the shifts offered, the person offering the shifts and your response to the offer, and your reason for declining the offer indicated.

**RESPONSE NO. 13**: Plaintiff objects that this Interrogatory is overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1). Subject to this objection and after reasonable inquiry, Plaintiff responds:

- Plaintiff received no work assignments after her July 2, 2020 demotion from full-time to PRN status.
- She remained available, formally notified Defendants of her availability on Sept. 3, 2020 (including October shifts), and continued to check for assignments through Dec. 2020.
- During this period, Defendants posted multiple LPN openings, showing continued need for staff with Plaintiff's qualifications.
- Plaintiff was never informed she was suspended, on involuntary leave, or terminated.
- Based on six months without assignments, despite availability and Defendants' continued postings, Plaintiff reasonably concluded she was constructively discharged as of Dec. 31, 2020. (SAC ¶¶92-103)
- This Court has already recognized the plausibility of these allegations, finding Defendants' refusal to assign hours permits the inference of intentional retaliation. (Order, Sept. 10, 2024)

**INTERROGATORY NO. 14:** Detail all facts upon or when you relied or considered to determine on December 31, 2020 that you had been discharged by LaSalle Southeast, where and when you obtained information and when you obtained information on each fact, who gave you this information, you efforts to confirm each such fact was true and accurate and with whom, excluding your legal counsel, you discussed these facts and your determination that you had been discharged by LaSalle Southeast.

**RESPONSE NO. 14:** Plaintiff objects that this Interrogatory is overbroad, disproportionate (Fed. R. Civ. P. 26(b)(1)), compound, and duplicative of prior requests. Plaintiff further objects to the extent it seeks information protected by whistleblower statutes, associational rights, and third-party privacy. Subject to these objections and after reasonable inquiry, Plaintiff responds:

- No Work Assignments (July-Dec. 2020): After her July 2, 2020 demotion to PRN, Plaintiff received no shifts despite continued availability. She notified Defendants in writing on Sept. 3, 2020 of her availability (including October shifts) and inquired with HR in Oct-Dec. 2020. HR confirmed she remained listed as an employee but offered no explanation.

- Ongoing Hiring: During this period, ICDC posted multiple LPN positions (full-time and PRN), confirming continued staffing needs while assigning Plaintiff no work.

- Retaliatory Context: The withholding of assignments followed immediately after Plaintiff's reprimand and demotion and intensified after her Sept. 8, 2020 OIG complaint

14

and media disclosures. Colleagues (names withheld for safety) confirmed ongoing hiring, while advocacy contacts and a financial counselor discussed the economic impact.

- Constructive Discharge Determination: By Dec. 31, 2020, after six months without work despite multiple notifications and continued postings, Plaintiff reasonably concluded she was constructively discharged. (SAC ¶¶92-103).

- Court Recognition: The Court's Sept. 10, 2024 Order found Plaintiff's allegations permit the inference that Defendants deliberately withheld hours in reprisal, while maintaining a nominal employment status.

**INTERROGATORY NO. 15:** Identify all names or identities used by you in electronic media and/or social media, including but not limited to electronic or digital addresses, pseudonyms, avatars, Twitter/"X" account names or handles, GoFundMe accounts, or Facebook and Instagram account names or handles, from January 2020 to present.

**RESPONSE NO. 15:** Plaintiff objects that this Interrogatory is overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1), and to the extent it seeks information implicating First Amendment rights, whistleblower protections, or private communications unrelated to the claims. Subject to these objections and after reasonable inquiry, Plaintiff responds:

- Public/Professional Accounts:
  - Twitter/X: @DawnWootenLPN (public whistleblower account)
  - Facebook: "Dawn Wooten, Whistleblower" (created Sept. 2020)
  - GoFundMe: "Support Dawn Wooten, ICE Whistleblower" (created Sept. 2020 by Project South; not managed by Plaintiff)

Scope: Plaintiff has not used pseudonyms or alternative identities in connection with her employment or disclosures. These are the only accounts relevant to this litigation. Plaintiff declines to identify personal, unrelated accounts as beyond the scope of Rule 26(b)(1).

**INTERROGATORY NO. 16:** Please identify all healthcare providers from whom you have received treatment from 2020 to the present, including their names, addresses, telephone numbers, and the general nature of treatment received.

**RESPONSE NO. 16:** Plaintiff objects that this Interrogatory is overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1), seeks medical history beyond claimed damages, and implicates physician-patient privilege, HIPAA, and confidentiality rights. Plaintiff further objects that the January 1, 2020-present timeframe exceeds the relevant period.

Subject to these objections and after reasonable inquiry, Plaintiff identifies the following providers related to conditions claimed as damages from Defendants' retaliatory conduct:

15

- Dr. Margaret Richardson Nixon - Consulted June 22, 2020 for COVID-19 testing and medical evaluation. Provided test and medical note excusing Plaintiff from work pending results. Directly related to reprimand and July 2, 2020 demotion. (SAC ¶¶86-87, 93)
- Mental Health Provider [Name Redacted] - Consulted beginning Sept. 2020 for anxiety, depression, and stress stemming from demotion, income loss, and whistleblower activities. Provided counseling and supportive therapy.
- Primary Care Provider [Name Redacted] - Consulted beginning Oct. 2020 for stress-related physical symptoms. Provided evaluation and medication related to economic hardship and professional stress caused by Defendants' retaliation.

Plaintiff will provide contact information for these providers. Plaintiff declines to provide information regarding unrelated medical consultations, as they are irrelevant and beyond permissible discovery under Rule 26(b)(1).

**INTERROGATORY NO. 17:** Identify all witnesses, including name, physical address, and telephone number, who may be called to testify regarding any of the facts contained in your Second Amended Complaint (R. 56).

**RESPONSE NO. 17:** Plaintiff objects that this Interrogatory is overbroad, disproportionate (Fed. R. Civ. P. 26(b)(1)), and seeks information protected by the attorney work product doctrine, whistleblower protections, and the First Amendment. Plaintiff further objects that requiring physical addresses and phone numbers for all potential witnesses raises privacy and safety concerns, particularly for current ICDC staff and former detainees.

Subject to these objections and after reasonable inquiry, Plaintiff identifies the following categories of potential witnesses:

- Plaintiff: Dawn Wooten - Address known to Defendants; communications through counsel.
- ICDC/LaSalle Personnel:
  - David Paulk (Warden, relevant period)
  - Lakesha Brown (Health Services Administrator)
  - Shanise Bell (Director of Nursing)
  - Marion Cole (former Health Services Administrator)
  - Frank Albright (Deputy Warden)
  - Joan Whitley (HR Director)
  - Additional nurses/medical staff with knowledge of COVID-19 protocols and medical record practices (names/contact to be provided).
- Government Officials:
  - DHS OIG officials (investigated complaints)
  - DHS CRCL officials (received disclosures)

16

- ICE Atlanta Field Office officials (received disclosures)
  *Contact to be provided.*
- Former Detainees (2019-2020): Individuals who experienced or witnessed conditions described in the SAC. *Identities to be produced.*
- Advocacy Representatives: Project South staff who assisted Plaintiff with whistleblower filings.
- Congressional Recipients: Members of Congress and staff who received Plaintiff's disclosures and conducted investigations. *Contact through official offices.*
- Medical Provider: Dr. Margaret Richardson Nixon - treated Plaintiff in June 2020 (COVID-19 testing/work note). *Contact to be provided..*

**INTERROGATORY NO. 18**: State the full name and address of any and all expert witnesses whom you plan to call to testify at trial, the technical field in which you claim they are an expert, the documents you have forwarded to the expert, and a brief summary of the testimony you expect to elicit at trial.

**RESPONSE NO. 18:** Plaintiff objects that this Interrogatory is premature. Expert witness identification, opinions, and reports are governed by Fed. R. Civ. P. 26(a)(2) and the Court's scheduling order, and the deadline for expert disclosures has not yet passed. Plaintiff has not retained experts as of this response but anticipates doing so consistent with the Court's schedule.

Subject to these objections, Plaintiff anticipates that expert testimony may be required in the following areas (specific experts not yet retained):

- Medical Experts:
  - Standard of care for COVID-19 protocols in detention facilities (2020)
  - Medical record documentation standards
  - Physical and psychological effects of whistleblower retaliation
- Employment/Human Resources Experts:
  - PRN scheduling/assignment practices
  - Constructive discharge in healthcare settings
  - Economic damages from loss of employment
- Whistleblower Protection Experts:
  - Handling of whistleblower complaints in federal contractor settings
  - Patterns of retaliation against whistleblowers

Plaintiff reserves the right to supplement this response in accordance with the scheduling order and Rule 26.

**INTERROGATORY NO. 19:** Identify any and all efforts you have undergone to obtain a new job or earn income since July 2020.

17

**RESPONSE NO. 19:** Plaintiff objects that this Interrogatory is overbroad and disproportionate under Fed. R. Civ. P. 26(b)(1), and to the extent it seeks detailed personal information unnecessary to assess mitigation. Subject to these objections and after reasonable inquiry, Plaintiff responds:

Mitigation Efforts:

- July-Dec. 2020:
  - Checked ICDC scheduling channels after demotion.
  - Formally notified Defendants of availability (Sept. 2020 for October shifts).
  - Applied for LPN positions at nursing homes, hospitals, and outpatient clinics within 50 miles.
  - Registered with staffing agencies and healthcare job boards.
  - Contacted colleagues for leads; attended virtual job fairs.
- Jan-June 2021:
  - Expanded job search radius and considered relocation.
  - Applied for additional healthcare positions, including contract/temporary roles.
  - Accepted part-time home health work at [employer, to be supplemented], with lower pay and hours than ICDC.

- July 2021-Present:
  - Continued applying for nursing positions commensurate with experience.
  - Maintained LPN license, completed continuing education, and pursued career counseling.
  - Explored telehealth/remote nursing opportunities.
  - Worked intermittent home health shifts when available.

Barriers to Re-Employment:

- Plaintiff's whistleblower disclosures caused reputational harm and community ostracism, reducing employment prospects. (See SINCLAIR_0001369)
- Instances include being recognized from media coverage and told "you're the girl on TV" when applying for non-nursing jobs (e.g., McDonald's).
- At Volunteers of America Southeast, an initial job offer was rescinded after staff learned of Plaintiff's whistleblower status.
- In rural Georgia's close-knit healthcare community, employers have specifically referenced her whistleblower role when declining opportunities.

The foregoing responses are made based upon information currently available to Plaintiff after reasonable inquiry. Plaintiff reserves the right to supplement, modify, or correct these responses as additional information becomes available during the course of discovery, as permitted by Federal Rule of Civil Procedure 26(e).

18

These responses are made without waiving any objection to the competency, relevance, materiality, or admissibility of any information that may be provided, and without waiving any right to object to the use of such information at trial or any other proceeding in this matter.

This 28th day of August, 2025.

Respectfully submitted,

*/s/ Dawn Wooten*

_____

DAWN WOOTEN
Plaintiff

## VERIFICATION

I, Dawn Wooten, do hereby verify that I have read the foregoing answers to interrogatories and requests for admissions, and that they are true and correct to the best of my knowledge, based on the information available to me at this time, but I am still in the process of trying to located additional responsive documents.

*/s/ Dawn Wooten*

_____

DAWN WOOTEN

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August 2025, a true and correct copy of the foregoing PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES has been served upon counsel for Defendants via the method(s) indicated below:

**VIA ELECTRONIC MAIL:**

DEIRDRE C. MCGLINCHEY (*Pro Hac Vice*) (T.A.)
MAGDALEN BLESSEY BICKFORD (*Pro Hac Vice*)
ANDREW M. ALBRITTON (*Pro Hac Vice*)
McGLINCHEY STAFFORD, PLLC
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Email: dmcglinchey@mcglinchey.com
Email: mbickford@mcglinchey.com
Email: aalbritton@mcglinchey.com

*Counsel for Defendants LaSalle Southeast, L.L.C., and David Paulk*

*/s/ Thad M. Guyer*

_____

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street
Medford, OR 97501
(206) 941-2869
thad@Guyerayers.com

Attorney for Plaintiff