# EXHIBIT K

Excerpt, Certified 30(b)(6) Deposition of LaSalle Southeast, LLC (Dr. Pamela Hearn) (April 20, 2026)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

Civil Action No. 7:22-cv-00148-WLS

**********************************

DAWN WOOTEN,

Plaintiffs

v.

LASALLE SOUTHEAST, LLC, and DAVID PAULK, an individual,

Defendants.

**********************************

30(b)(6) DEPOSITION OF: LASALLE SOUTHEAST, LLC
BY: DR. PAMELA HEARN, CORPORATE REPRESENTATIVE
APPEARING REMOTELY FROM
New Orleans, Louisiana
April 20, 2026 1:04 p.m.

By Daniel Kramer
Guardian
APPEARING REMOTELY FROM LANCASTER COUNTY, PENNSYLVANIA

within the medical department, which is Bell and Brown.

**Q. Thank you so much.**

A. Okay.

**Q. Seventeen: As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 5, what is the corporation's position on whether the non-assignment of any hours to Ms. Wooten for six consecutive months was a -- oh, I think I just asked that one.**

MR. PRITT: Yeah, I was going to give you an "asked and answered" there, but I didn't want to interrupt you.

MR. T. GUYER: Oh, I would have been so disappointed to get an "ask and answer." I hate those. So just stop me before you have to object, okay?

**Q. All right. Eighteen: As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 6, what is the corporation's position on all full-time and PRN licensed practical nurses, LPN and other nursing positions -- position openings posted, advertised or filled at ICDC from July 2, 2020, through December 31 of 2020?**

A. There were ads for a LPN position, full-time or part-time, and we had applicants for those positions. We filled --

**Q. Okay. Thank you.**

A. Go ahead.
**Q. Okay. Were you -- I'm sorry, I interrupted you again. You said, "We filled"; was that the end of it?**
A. Yes, we filled four nursing positions for the LPN --
**Q. Okay.**
A. -- status.
**Q. Okay. Thank you. So is that to say that in this time period, July 2nd through December 31st of 2020, the nursing staff never reached out to people that they were familiar with or working with and would say, "Hey, would you be interested in some job postings? We'd sure like to have you on board." Is that to say you don't do that kind of recruiting?**
A. We don't offer positions. If someone is interested in a position, they have to apply for the position. We have to have applicants for those positions. We don't just give positions to people, you know, onsite. They have to apply for those positions.
**Q. Okay. Thank you for that. So is that to say, then, that -- I take it that the -- with respect to your Shanise Bell and Lakisha Brown, if they knew that there was a posted position and they liked somebody, it's okay for them to suggest, "Hey, we have posted positions. Maybe you would like to apply." There's nothing wrong with that,**

**right?**

MR. PRITT: And I'll just object to the form here, Thad, as to -- just to get this on the record. Ms. Brown and Ms. Bell, they are no longer employed by LaSalle. So Dr. Hearn was not able to speak to them in preparation for this deposition. So just to the extent, as a 30(b)(6) rep, I don't think she could really speak to their actions or motivations other than what is reflected in the documents. But subject to that, you can answer, Dr. Hearn.

A. I can't say what Shanise Bell or L.A.K. Brown did.

**Q. Okay. Well, let's take you, for example. Certainly, of course, you'll correct me if I'm wrong, that if there's -- if you know good people that you think would be good for a posted position, you -- for example, there's nothing barring you, is there, from giving people a heads up, "Hey, you might want to apply for this position"?**

MR. PRITT: Object to the form: Beyond the scope of the topics. You can answer.

A. As a professional, I recommend nursing staff; physicians make applications to our company sporadically, whether we have a position or not. Because one day we may have a position come up, so that's the way I work, personally.

**Q. Okay. Thank you, Doctor. All righty. Then,**

**19: As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 6, why was an existing, fully credentialed LPN not offered, assigned or considered for any available hours or positions while LaSalle Southeast was actively advertising for LPN positions at ICDC during those same months?**

MR. PRITT: Object to the form. You can answer.

**Q. I take it's the same answer as before.**

A. Correct. Applicants must apply. They go through HR to apply for positions.

**Q. All right. Thank you. All righty. Question 20: As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 6, who were the individuals responsible for those LPN job postings and hiring decisions during July through December 2020?**

A. The job postings are placed by the HR director and the applicants come in to the HR director. The applicants are shared with the DON and/or HSA, and they are interviewed via the DON or HSA. Once an interview process goes forward and the applicant seems to be a good fit and they are offered a position, it goes back to HR to go through the background check and all the security components of what HR has to do to be able to work in a correctional facility.

**Q. Okay. And so just to put names in, in this July through December 2020, who would the names of those individuals be back then?**

A. Joan -- I forgot Joan's last name right now. Joan was the head of HR, and the DON was Shanise Bell and HSA was L.A.K. Brown.

**Q. Okay. And then Joan -- it's okay with me if somebody helps you out.**

MR. T. GUYER: Do you know the answer -- the last name, Jacob?

MR. PRITT: Is that Joan Whitley, that I heard?

THE WITNESS: It is Joan Whitley. I can't believe I could not remember her name, so thank you.

**Q. Okay.**

A. It is Joan Whitley.

**Q. Okay.**

A. It's on e-mails and whatnot.

**Q. All right. That counts as one of your lifelines. Okay. All right. Question 21: As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 6, what is the corporation's official explanation for posting open LPN positions while simultaneously assigning zero hours to an existing trained LPN who remained on payroll as a PRN?**

MR. PRITT: Object to the form. You can answer.

A. The positions -- or the shift positions that would be open would be offered to full-time staff, offered to PRNs. However, the PRNs had no obligation to say "yes" to the positions, and there was no obligation from the medical department to offer every PRN every shift. They're not guaranteed a shift. It may be there are no shifts available. But according to my review of the e-mails, it appeared that Nurse Wooten had no available time where she actually agreed to and showed up to work at a mutually agreed upon time.

**Q. Okay. Question 22: As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 6, were any of the LPN positions posted from July through December 2020 ultimately filled by new hires rather than by reassigning hours to Ms. Wooten?**

A. The applicants were reviewed, and there were new applicants who were hired.

**Q. All right. Thank you. So Question 23A: As to the official testimony of the defendant, LaSalle Southeast, with you as its representative, referring to Topic 7, what is LaSalle Southeast's corporate knowledge of plaintiff's whistleblower disclosures to HSA Lakisha Brown regarding COVID-19 violations, PPE deficiencies and/or detainee medical treatment?**

C E R T I F I C A T E

I, Daniel Kramer, do hereby certify that Pamela Hearn, the witness whose testimony is hereinbefore set forth, was duly sworn remotely on April 20, 2026.

The oath was administered by Wendall Hilker, a Notary Public commissioned in the State of Louisiana.

I further certify that the foregoing transcript is a true and accurate record of the testimony provided, to the best of my knowledge and ability.

I further certify that I am not a relative or employee of any of the parties to this action, nor a relative or employee of counsel for any of the parties, nor am I financially interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of April, 2026.

Daniel S. Kramer
Guardian
AAERT CDR